1
2
3
4
5
6
7    IN THE UNITED STATES DISTRICT COURT

8    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10   KEMA, INC., et al.,                              No. C-09-1587 MMC

11          Plaintiffs,                               **ORDER DENYING DEFENDANTS'
                                                      MOTION TO DISMISS; GRANTING IN**
12      v.                                            **PART AND DENYING IN PART KEMA
                                                      AND RLW'S MOTION TO DISMISS AND**
13   WILLIAM KOPERWHATS, et al.,                      **TO STRIKE; GRANTING PUCKET'S
                                                      MOTION TO DISMISS AND TO STRIKE;**
14          Defendants,                               **GRANTING AXMOR'S MOTION TO
     _____/                DISMISS**
15
     AND RELATED COUNTERCLAIMS.
16   _____/

17
18         Before the Court are (1) plaintiffs KEMA, Inc. ("KEMA") and RLW Analytics, Inc.'s

19   ("RLW") motion to dismiss and to strike defendants William Koperwhats ("Koperwhats") and

20   MiloSlick Scientific's ("MiloSlick") counterclaims, filed May 26, 2009; (2) counterclaim

21   defendant Curt D. Pucket's ("Pucket") motion to dismiss and to strike Koperwhats and

22   MiloSlick's counterclaims, filed June 2, 2009; (3) counterclaim defendant Axmor Software-

23   America, Inc.'s ("Axmor") motion to dismiss Koperwhats and MiloSlick's counterclaims, filed

24   June 12, 2009; and (4) Koperwhats and MiloSlick's motion to dismiss KEMA and RLW's

25   complaint, filed June 15, 2009.  Having read and considered the papers filed in support of

26   and in opposition to the motions, the Court rules as follows.

27                                     **BACKGROUND**

28         The following facts are taken from KEMA and RLW's complaint and Koperwhats'

     and MiloSlick's Answer and Counterclaims ("Counterclaims").

The instant action arises out of a dispute concerning rights to computer software used by utility companies to analyze energy data.  (See Compl. ¶ 9; Counterclaims ¶ 77.) According to KEMA and RLW, the initial version of the software was developed by RLW in the period after 1989 and was identified using the mark Visualize-IT.  (See Compl. ¶ 10.)  In April 1998, Koperwhats began employment at RLW, and according to Koperwhats, from December 1998 until his separation from RLW in December 2001, he developed an "entirely new version" and "additional versions" of such software.[1]  (See Counterclaims ¶¶ 78-79.)  Thereafter, Koperwhats performed additional work on Visualize-IT, for which he was compensated by RLW.  (See Compl. ¶ 11; Counterclaims ¶ 81.)

In 2008, KEMA entered into negotiations with RLW concerning the acquisition of RLW.  (See Compl. ¶ 13.)  According to KEMA and RLW, during these negotiations, Koperwhats "contacted KEMA, claiming ownership of the most recent versions of Visualize-IT."  (See id. ¶ 13.)  On October 13, 2008, Koperwhats and RLW entered into a "Settlement and License Agreement" ("Agreement").  (See Compl. ¶ 14; Counterclaims ¶ 91.)  Under the Agreement, Koperwhats "acknowledge[d] that RLW owns any copyright rights to all versions of Visualize-IT, up to and including Version 2.6.7 of Visualize-IT" and that "RLW owns all rights to the Visualize-IT name and trademark."  (See Counterclaims Ex. 4 ("Agreement") §§ 2.1, 2.2.)  RLW, in turn, "acknowledge[d] that Koperwhats owns any copyright[ ] rights to Versions 3 though 4 of Visualize-IT."  (See Agreement § 3.)  Further, Koperwhats agreed that he would not "market, sell, or distribute any software products under the name or trademark 'Visualize-IT,'" and both parties agreed that they would not "suggest any sponsorship, endorsement or affiliation of its software products with the products of the other party."  (See id. § 4.)  The Agreement further provided:

> 5.1    Koperwhats hereby acknowledges and herein further grants RLW a fully paid-up, non-exclusive, royalty-free and irrevocable license to use internally versions 3 through 4 of Visualize-IT.

> 5.2    Koperwhats hereby acknowledges the license rights to Versions 3

---

[1]The parties dispute the circumstances under which Koperwhats left RLW.  (See Compl. ¶ 11; Counterclaims ¶ 79.)

through 4 of Visualize-IT of the third-party clients identified on Exhibit A hereto to whom RLW has distributed and licensed Versions 3 through 4 of Visualize-IT ("Third Party Clients"). The Third Party Clients['] license rights to Versions 3 through 4 of Visualize-IT shall extend through and including December 31, 2009. In the event that a registration code for Versions 3 through 4 of Visualize-IT identified in Exhibit A changes between now and December 31, 2009, RLW shall provide the new registration code to Koperwhats. In the event that a new registration code for Versions 3 through 4 of Visualize-IT is issued for any unassigned copies referenced in Exhibit A between now and December 31, 2009, RLW shall provide the new registration code to Koperwhats.

(See id. §§ 5.1, 5.2.)

According to KEMA and RLW, the following occurred after the execution of the parties' Agreement. RLW, later in 2008, engaged Axmor to work on Version 5 of Visualize-IT. (See Compl. ¶ 15.) Thereafter, on January 1, 2009, KEMA acquired RLW. (See id. ¶ 16.) Later in January 2009, Kema and RLW learned that Koperwhats' company, MiloSlick, was using the Visualize-IT mark on a website promoting Koperwhats' software, which software initially was called "EnergyVision" and later "EnergyProbe." (See id. ¶ 17.) The mark was not attributed to RLW, and the website "made a number of false and misleading statements" about MiloSlick, the EnergyProbe software, and RLW. (See id.)

According to Koperwhats, the following occurred in February 2009 and thereafter. First, Koperwhats learned that Exhibit A to the parties' Agreement "did not accurately report the existing users [of Visualize-IT] as of the date of the [Agreement]." (See Counterclaims ¶ 97.) Moreover, Koperwhats alleges, RLW had "failed to update the list of users and registration codes," as required by the Agreement. (See id.) On February 11, 2009, Koperwhats requested, by email, that RLW provide an updated list of such registration codes. (See id. ¶ 98 & Ex. 5.) On February 17, 2009, Pucket responded with what Koperwhats characterizes as "a list purporting to be an accurate listing of current users of and registration codes for Visualize-IT." (See id. & Ex. 6.) This list showed what "appeared to be new users in violation of the [Agreement]." (See id. ¶ 99.) One such user was Axmor. (See id. ¶ 103.)

In March 2009, the parties, through correspondence, attempted to resolve the instant dispute. (See Compl. ¶¶ 18-23; Counterclaims ¶¶ 108-118.) Although these

negotiations were unsuccessful, Koperwhats agreed to include a "disclaimer" on the MiloSlick website "about the ownership of the mark Visualize-IT." (<u>See</u> Counterclaims ¶ 113 & Ex. 3; <u>see also</u> Compl. ¶ 21.)

On April 15, 2009, Kema and RLW filed the instant action, alleging claims of trademark infringement under § 32 of the federal Lanham Act, 15 U.S.C. § 1114; unfair competition under § 43 of the Lanham Act, 15 U.S.C. § 1125; false description and designation of origin under § 43 of the Lanham Act; unfair competition under Cal. Bus. & Prof. Code § 17200, <u>et</u> <u>seq.</u>; false advertising under Cal. Bus. & Prof. Code § 17500, <u>et</u> <u>seq.</u>; and common law claims for trade libel/product disparagement and breach of contract, as well as claims for declaratory relief concerning the parties' respective contractual and copyright rights.

On May 1, 2009, Koperwhats and MiloSlick filed their Answer and Counterclaims, alleging claims of copyright infringement under 17 U.S.C. § 101, <u>et</u> <u>seq.</u>; violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1, <u>et</u> <u>seq.</u>; intentional fraud under Cal. Civ. Code § 1709; unfair competition under Cal. Bus. & Prof. Code § 17200, <u>et</u> <u>seq.</u>; and common law claims for breach of contract and intentional interference with prospective economic advantage.

By their motion, Koperwhats and MiloSlick seek dismissal of Kema and RLW's Complaint, on the ground that the Complaint fails to state a claim.

By their respective motions, KEMA and RLW, Pucket, and Axmor (collectively, "Counterclaim Defendants") seek dismissal of Koperwhats' and MiloSlick's counterclaims, on the grounds that MiloSlick lacks standing and that Koperwhats has failed to state a claim. Additionally, Pucket and Axmor contend the Court lacks personal jurisdiction over them, and Axmor contends it was not properly served with process. Lastly, each Counterclaim Defendant seeks an order striking portions of the relief sought by Koperwhats and MiloSlick, and KEMA and RLW seek an order striking Koperwhats and MiloSlick's affirmative defense of trademark misuse.

//

4

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). A court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992). Courts "are not bound to accept as true a legal conclusion couched

as a factual allegation." See Twombly, 127 S. Ct. at 1965 (internal quotation and citation omitted).

**DISCUSSION**

**A.    Koperwhats and MiloSlick's Motion to Dismiss**

Before considering the merits of the arguments made in support of Koperwhats and MiloSlick's motion to dismiss the Complaint, the Court must consider KEMA and RLW's argument that the motion is untimely. Specifically, KEMA and RLW argue, said defendants were required to file their motion before they filed their answer. See Fed. R. Civ. P. 12(b) (providing motion asserting any defense set forth in Rule 12(b) "must be made before pleading if a responsive pleading is allowed"). In response, Koperwhats and MiloSlick argue that the Court should construe their motion as a motion for judgment on the pleadings. See Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (holding, where motion to dismiss filed after answer, "[t]he best approach" is to "treat[ ] the motion to dismiss as a motion for judgment on the pleadings").

As KEMA and RLW point out, however, a motion for judgment on the pleadings may be brought only "[a]fter the pleadings are closed." See Fed. R. Civ. P. 12(c); see also Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005) (holding, where motion for judgment on the pleadings was brought "before any answer was filed," motion "was procedurally premature and should have been denied"). Where, as here, "in addition to an answer, a counterclaim is pleaded, the pleadings are closed only when the plaintiff serves his reply." See Flora v. Home Fed. Sav. & Loan Ass'n, 685 F.2d 209, 211 n.4 (7th Cir. 1982); see also Doe, 419 F.3d at 1061 (citing Flora; noting "the pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming, as is the case here, that no counterclaim or cross-claim is made"). Here, no such responsive pleading has been filed by any Counterclaim Defendant.

Accordingly, Koperwhats and MiloSlick's motion will be denied without prejudice.

6

**B.      Motions by KEMA and RLW, Pucket, and Axmor**[2]

**1.      Standing of MiloSlick**

Each Counterclaim Defendant argues that Koperwhats and MiloSlick have failed to sufficiently allege that MiloSlick has standing to assert any of the claims brought herein.  In response, Koperwhats and MiloSlick argue that MiloSlick is a proper counterclaimant because KEMA and RLW "named [MiloSlick] as a co-defendant."  (See, e.g., Opp'n to KEMA & RLW's Mot. at 14:23-25.)  In order to have standing, however, a party, "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  See Warth v. Seldin, 422 U.S. 490, 499 (1975).  Here, Koperwhats and MiloSlick do not contend MiloSlick's rights have been injured.

Accordingly, to the extent Counterclaim Defendants seek dismissal of any claims asserted on behalf of MiloSlick, Counterclaim Defendants' motions will be granted.

**2.      Koperwhats' Claims**

The Court next considers Koperwhats' six causes of action, which assert, respectively, claims for copyright infringement, violation of the California Uniform Trade Secrets Act, breach of contract, intentional fraud, unfair competition, and intentional interference with prospective economic advantage.

**a.      First Cause of Action (Copyright infringement)**

Koperwhats, in his First Cause of Action, alleges KEMA, RLW, and Pucket have unlawfully distributed copies of Koperwhats' "energy analysis software," and that Axmor has unlawfully used such software.  (See Counterclaims ¶¶ 122, 124, 125.)  KEMA, RLW, and Pucket argue such claim is subject to dismissal, for the reason that Koperwhats lacks a registered copyright in any such software.  In response, Koperwhats points to his allegation that he "applied for registration of his copyright" (see id. ¶ 89), and asserts that he does, in fact, hold a valid certificate of registration for his software.  As set forth below, Koperwhats'

_____

[2]As many of the arguments made by KEMA and RLW, Pucket, and Axmor are essentially identical, the Court addresses these motions jointly.  Where a specific argument is applicable to fewer than all of said parties, the Court has so noted.

argument is not persuasive.

Under the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [the Act]." See 17 U.S.C. § 411(a). Although the Ninth Circuit has not addressed the issue, numerous courts have held a pending application for registration is insufficient for purposes of compliance with this jurisdictional statute.[3] See, e.g., La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1205 (10th Cir. 2005) (collecting cases; rejecting "the proposition that § 411 confers federal court jurisdiction for an infringement action upon mere submission of a copyright application to the Copyright Office"; holding "the statute requires more: actual registration by the Register of Copyrights"); Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc., 315 F. Supp. 2d 1053, 1056 (C.D. Cal. 2004) (holding "a federal district court lacks subject matter jurisdiction over a copyright claim if the certificate of registration is yet to be issued"); Brush Creek Media, Inc. v. Boujaklian, No. C-02-3491 EDL, 2002 WL 1906620, at *4 (N.D. Cal. Aug. 19, 2002) (holding "the plain language of the statute forecloses copyright suits while a copyright application is pending and before a certificate of registration issues (or is denied)"); Ryan v. Carl Corp., No. C 97-3873 FMS, 1998 WL 320817, at *2 (N.D. Cal. June 15, 1998) (holding "[a] close reading of the Act indicates that registration does not occur until after the Copyright Office issues a Certificate of Registration"); see also Int'l Trade Mgmt., Inc. v. United States, 553 F. Supp. 402, 403 (Cl. Ct. 1982) (Kozinski, C.J.) (holding language of § 411 "is clear" that suit for copyright infringement "is conditioned on obtaining (or being denied) a certificate of registration"; noting this requirement "does not appear to be an oversight or mistake on the part of Congress").

---

[3]Although none of these cases dealt with a plaintiff who commenced suit after the statute was amended in 2005 to encompass "preregistration," Koperwhats does not allege that he preregistered the software at issue herein. See 17 U.S.C. § 408(f) (providing for preregistration of work with application for registration thereafter); 37 C.F.R. § 202.16(c) (establishing procedures for preregistration, including, inter alia, submission of "certification" that work "is being prepared for commercial distribution" and "[r]eview of preregistration information" by Copyright Office).

The Court finds the reasoning of these cases persuasive.[4]  In particular, as four of the above-referenced courts noted, pursuant to 17 U.S.C. § 410, registration of a copyright is not automatic upon submission of an application; rather, registration occurs, if ever, only after the completion of examination by the Copyright Office.[5]  See § 410(a) (providing "[w]hen, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration"); see also La Resolana Architects, 416 F.3d at 1201; Loree Rodkin Mgmt. Corp., 315 F. Supp. 2d at 1055; Brush Creek Media, 2002 WL 1906620, at *3; Ryan, 1998 WL 320817, at *2.

Accordingly, Koperwhats may not rely on his allegation that he has "applied for registration of his copyright."  (See Counterclaims ¶ 89.)

As noted, Koperwhats further argues that he does, in fact, hold a valid certificate of registration for his software.  In support of such argument, Koperwhats requests the Court take judicial notice of what he asserts is a copy of such certificate, and which he asserts he received on May 15, 2009.  (See Mot. for Judicial Notice, filed June 15, 2009; see also Opp'n to KEMA & RLW's Mot. Ex. 1 (Certificate of Registration for "Energy Vision").)  KEMA, RLW, and Pucket, however, dispute that the certificate pertains to the software whose copyright is alleged to have been infringed, and given the indefinite nature of Koperwhats' pleading (see, e.g., Counterclaims ¶ 124 (alleging infringement of Koperwhats'

---

[4]To the extent other courts have found to the contrary, the Court finds those decisions were based on either a less extensive or a less convincing analysis.  See, e.g., Apple Barrel Prods., Inc. v. Beard, 730 F.2d 384, 386 (5th Cir. 1984) (holding, under § 411(a), "[o]ne need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application"); Penpower Tech. Ltd. v. S.P.C. Tech., No. 07-3621 SC, 2008 WL 2468486, at *5 (N.D. Cal. June 17, 2008) (holding "the plain language of § 411 permits a plaintiff to initiate a copyright infringement claim before the actual issuance of a registration certificate"; equating application with preregistration); Gable-Leigh, Inc. v. N. Am. Miss, No. CV 01-01019 MMM, 2001 WL 521695, at *4 (C.D. Cal. Apr. 13, 2001) (following Apple Barrel).

[5]Although a civil action may be instituted after registration is refused, provided notice of the action is served on the Register of Copyrights, see § 411(a), Koperwhats does not allege that any such refusal occurred or notice was given.

9

"copyrighted software")), the Court cannot say their position is unreasonable, see Fed. R.

Evid. 201(b) (providing "[a] judicially noticed fact must be one not subject to reasonable

dispute"). Under such circumstances, the Court will not take judicial notice of the

certificate.

Accordingly, to the extent KEMA, RLW, and Pucket seek dismissal of Koperwhats'

First Cause of Action, said parties' motions will be granted.[6] The Court, however, will afford

Koperwhats an opportunity to amend his Counterclaims to cure the above-noted

deficiencies in such cause of action. See, e.g., Zito v. Steeplechase Films, Inc., 267 F.

Supp. 2d 1022, 1025 (N.D. Cal 2003) (holding, where plaintiff does not register copyright

prior to filing complaint, defect "can be cured if the plaintiff registers the copyright and files

an amended complaint including an allegation that the copyright is registered").

### b. Second Cause of Action (Violation of California Uniform Trade Secrets Act)

Koperwhats, in his Second Cause of Action, alleges his software constitutes a trade

secret, and that KEMA, RLW, and Pucket have "stole[n]" and improperly "transferred" such

software to Axmor, which is improperly "using" such software. (See Counterclaims ¶¶ 146-

148.) Further, Koperwhats alleges, KEMA and RLW "improperly sell[ ] or otherwise

distribute[ ] software programs that utilize [Koperwhats'] trade secrets." (See id. ¶ 150.)

Counterclaim Defendants argue Koperwhats' claim is subject to dismissal because

Koperwhats has failed to adequately allege "the disclosure or use of anything 'secret,'" and,

consequently, the claim is preempted by the Copyright Act.[7] (See KEMA & RLW's Mot. at

---

[6]In light of such finding, the Court does not address herein KEMA and RLW's separate argument that Koperwhats has failed to adequately plead his First Cause of Action as against KEMA. Moreover, although Axmor makes no argument in support of dismissal of Koperwhats' First Cause of Action against Axmor, § 411's registration requirement is "jurisdictional," see La Resolana Architects, 416 F.3d at 1200, and, consequently, for the reasons stated above, such cause of action is subject to dismissal against all parties.

[7]Although couched in terms of preemption, this argument is more appropriately characterized as an assertion that the software at issue fails to meet the statutory definition of a "trade secret," as it is undisputed that, if Koperwhats has adequately alleged such a secret, his claim is not preempted. See Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998) (holding, for claim to be preempted under Copyright Act, "the rights

11:1-3; Pucket's Mot. at 13:6-8; Axmor's Mot. at 11:8-10.) As set forth below, the Court agrees that Koperwhats has failed to adequately plead the instant claim.

Under California Civil Code § 3426.1, a "trade secret" must (1) "[d]erive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and must be (2) "subject to efforts that are reasonable under the circumstances to maintain its secrecy." See Cal. Civ. Code § 3426.1(d)(1)-(2).

Counterclaim Defendants argue this statutory definition cannot be met here because Koperwhats has disclosed the software at issue without attempting to maintain its secrecy. In support of such argument, Counterclaim Defendants point to Koperwhats' allegation that he submitted the source code for Version 4.3 of Visualize-IT to the Copyright Office (see Counterclaims ¶ 89), which submission was publicly accessible, see 37 C.F.R. § 201.2(b)(3) (providing "[i]nformation contained in Copyright Office in-process files may be obtained by anyone upon payment of applicable fees and request to the Information and Records Division"). In response, Koperwhats asserts that his submission was "accompanied by a notice that it contains trade secrets" (see Opp'n to KEMA and RLW's Mot. at 18:14-16), which "notice" is attached to Koperwhats' opposition to KEMA and RLW's motion (see id. Ex 1 at unnumbered 2).

As KEMA, RLW, and Pucket point out, however, the above-referenced "notice" is in fact an email to a Copyright Office employee, and is dated May 5, 2009 (see id.), i.e., almost 10 months after Koperwhats applied for registration of his copyright (see Counterclaims ¶ 89 (alleging application was made on June 23, 2008)). Moreover, Koperwhats has not argued, let alone alleged any facts to suggest, that his submission was redacted in any way or that he otherwise complied with the procedure set forth in the

that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act") (quoting 17 U.S.C. § 301(a)); Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (holding, where action "for disclosure and exploitation of trade secrets require[s] a status of secrecy, not required for copyright," action is not preempted; finding action under California Uniform Trade Secrets Act requires such secrecy) (internal quotation and citation omitted).

applicable regulation for the submission of a computer program containing trade secret material.  See 37 C.F.R. § 202.20(c)(2)(vii)(A)(2) (providing for "block[ing]-out" of "trade secret material" in submission of computer program).  Under such circumstances, Koperwhats' trade secrets claim fails.[8]  See In re Providian Credit Card Cases, 96 Cal. App. 4th 292, 304 (2002) (holding "[p]ublic disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret"; noting "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished") (internal quotation and citation omitted); see also DVD Copy Control Ass'n, Inc. v. Bunner, 31 Cal. 4th 864, 901 (2003) (Moreno, J., concurring) (noting, where information posted on Internet, "a plaintiff carries the burden of showing that the trade secret remains a trade secret despite the Internet posting").

Accordingly, to the extent Counterclaim Defendants seek dismissal of Koperwhats' Second Cause of Action, Counterclaim Defendants' motions will be granted.  The Court, however, will afford Koperwhats an opportunity to amend his Counterclaims to cure the above-noted deficiencies in such cause of action.

### c.    Third Cause of Action (Breach of Contract)

Koperwhats, in his Third Cause of Action, alleges KEMA, RLW, and Pucket have breached the above-referenced Agreement between Koperwhats and RLW.[9]  KEMA, RLW, and Pucket, relying on Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632 (1960), argue that Koperwhats' Third Cause of Action is subject to dismissal because Koperwhats has not performed his obligations under the Agreement.  Said parties further argue that the instant claim, as alleged against KEMA and Pucket, is subject to dismissal for the additional reason that neither was a party to the Agreement.

//

---

[8]In light of such finding, the Court does not address herein Counterclaim Defendants' additional arguments in support of dismissal of Koperwhats' Second Cause of Action.

[9]Koperwhats' Third Cause of Action is not alleged as against Axmor.

KEMA, RLW, and Pucket's reliance on Pry is unavailing. Although Pry held that "a party complaining of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations," see id. at 639, the Pry court was dealing with findings of fact made after a bench trial, see id. at 639-40 (referring to "testi[mony]" of witnesses and "findings" of fact). Here, Koperwhats has alleged he "performed all of his obligations" under the Agreement. (See Counterclaims ¶ 160.) KEMA, RLW, and Pucket have failed to cite any authority suggesting anything more in that regard is required at this stage of the proceedings.

The Court agrees with KEMA, RLW, and Pucket, however, that Koperwhats has failed to state a claim for breach of contract against either KEMA or Pucket. Koperwhats argues that both KEMA and Pucket are beneficiaries under the Agreement and that Pucket "authorized, directed, and participated" in the alleged breach thereof. (See Opp'n to Pucket's Mot. at 19:9-10.) In support of such argument, Koperwhats relies on Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725 (9th Cir. 1999) and Flynt Distrib. Co. v. Harvey, 734 F.2d 1389 (9th Cir. 1984). Those cases, however, are distinguishable. In particular, Coastal Abstract Service involved the issue of a corporate officer or director's liability for "torts," see Coastal Abstract Serv., 173 F.3d at 734, and Flynt Distributing involved the issue of whether a corporation was the "alter ego" of its shareholders for purposes of the exercise of personal jurisdiction, see Flynt Distrib., 734 F.2d at 1393. A breach of contract claim, however, is not a tort, and although Koperwhats has alleged KEMA is the "acquirer" of RLW (see Counterclaims ¶ 158), such allegation is insufficient to allege that either KEMA or Pucket is the "alter ego" of RLW, see Flynt Distrib., 734 F.2d at 1393 (holding, "[t]o apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice"); see also Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001) (noting "general rule" that "a subsidiary and the parent are separate entities"; further noting first prong of applicable test "has alternatively been

13

stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former") (internal quotation and citation omitted).

Accordingly, to the extent KEMA, RLW, and Pucket seek dismissal of Koperwhats' Third Cause of Action as alleged against KEMA and Pucket, said parties' motions will be granted, and to the extent KEMA and RLW seek dismissal of Koperwhats' Third Cause of Action as alleged against RLW, said parties' motions will be denied. The Court, however, will afford Koperwhats an opportunity to amend his Counterclaims to cure the above-noted deficiencies in such cause of action.

### d. Fourth Cause of Action (Intentional Fraud)

Koperwhats, in his Fourth Cause of Action, alleges Exhibit A to Koperwhats and RLW's Agreement as well as the February 17, 2009 email from Pucket to Koperwhats "intentionally concealed accurate and complete user identification and registration codes." (See Counterclaims ¶ 163.) Further, Koperwhats alleges, he was induced to and did rely on these documents by "refrain[ing] from litigation and additional payments, which may have affected RLW's acquisition by KEMA." (See id.) KEMA, RLW, and Pucket argue, inter alia, that Exhibit A is not an actionable representation, and that Koperwhats' allegations show he did not rely to his detriment on the February 17, 2009 email.[10] As set forth below, the Court agrees that Koperwhats has failed to adequately plead the instant claim.

At the outset, the Court notes that, under California law, "the elements of fraud . . . are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." See Engalla v. Permanente Med. Group, 15 Cal. 4th 951, 974 (1997) (internal quotation and citation omitted). The Court next turns to the two documents on which Koperwhats relies.

---

[10]Koperwhats' Fourth Cause of Action is not alleged as against Axmor.

i.      **Exhibit A**

Contrary to Koperwhats' argument, Koperwhats and RLW's Agreement does not provide that Exhibit A thereto contains a list of all the entities to which RLW had distributed Versions 3 through 4 of Visualize-IT; rather, the Agreement grants a license to use such software to the specific entities listed in the exhibit.  (See Agreement § 5.2.)  As KEMA and RLW point out, to the extent the Agreement, by failing to grant a license to any entity not listed in Exhibit A, may have prohibited RLW from distributing the software to any such unlisted entity, the Agreement may form the basis for Koperwhats' breach of contract claim against RLW (see KEMA & RLW's Reply at 9 n.6).  It does not follow, however, that Exhibit A was false or misleading; at best, the exhibit provides a contractual limitation on the entities to which RLW could distribute the software at issue.

ii.      **February 17, 2009 Email**

Contrary to Koperwhats' argument, Koperwhats has failed to adequately allege reliance.  In particular, Koperwhats' conclusory allegation that he "refrain[ed] from litigation" (see Counterclaims ¶ 164) is unsupported by any facts describing the claims Koperwhats would have brought in the absence of the conduct at issue, or the reasons why the above-referenced email deterred Koperwhats from filing such claims.  Moreover, as Pucket points out, Koperwhats alleges that, on March 5, 2009, approximately two weeks after the transmission of the email, Koperwhats' counsel sent counsel for KEMA a cease and desist letter demanding, among other things, "an accurate listing of all users" of the software at issue (see Counterclaims ¶ 110), thereby suggesting that Koperwhats did not in fact believe the information he received from Pucket was accurate.

Nor has Koperwhats adequately alleged that he incurred any loss or damage as a result of any reliance on the February 17, 2009 email.  In particular, Koperwhats does not explain how he was harmed by any delay in filing suit, and to the extent Koperwhats attempts to rely on allegations that he lost customers or suffered infringement of his copyright (see, e.g., Opp'n to Pucket's Mot. at 21:28-22:4; Counterclaims ¶ 169), Koperwhats does not allege any connection between such loss of customers or such

1    infringement and his reliance on the email at issue.

2         Accordingly, to the extent KEMA, RLW, and Pucket seek dismissal of Koperwhats'

3    Fourth Cause of Action, said parties' motions will be granted.  The Court, however, will

4    afford Koperwhats an opportunity to amend his Counterclaims to cure the above-noted

5    deficiencies in such cause of action.

6                    **e.    Fifth Cause of Action (Unfair Competition)**

7         Koperwhats, in his Fifth Cause of Action, alleges Counterclaim Defendants have

8    violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et

9    seq., by committing the alleged violations of law set forth in Koperwhats' First through

10   Fourth Causes of Action.  (See Counterclaims ¶ 173; Opp'n to KEMA & RLW's Mot. at

11   20:12-26; Opp'n to Pucket's Mot. at 20:1-10; Opp'n to Axmor's Mot. at 17:12-23); see also

12   Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (2007) (holding "[u]nder its

13   'unlawful' prong, the UCL borrows violations of other laws . . . and makes those unlawful

14   practices actionable under the UCL").  As discussed above, the Court has found all such

15   causes of action are subject to dismissal, with the exception of Koperwhats' Third Cause of

16   Action (Breach of Contract) as alleged against RLW.  A breach of contract, however, can

17   form the basis of a claim under the UCL only if the breach "also constitutes conduct that is

18   unlawful, unfair, or fraudulent."  See Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal.

19   App. 4th 638, 645 (2008) (internal quotation and citation omitted); see also Nat'l Rural

20   Telecomms. Cooperative v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074-75 (C.D. Cal.

21   2003) (dismissing UCL claim based on alleged breach of contract where breach was not

22   alleged to violate any statute).  Here, for the reasons set forth above, Koperwhats has

23   failed to allege any conduct that is "unlawful, unfair, or fraudulent" independent of the

24   alleged breach of contract.

25        Accordingly, to the extent Counterclaim Defendants seek dismissal of Koperwhats'

26   Fifth Cause of Action, Counterclaim Defendants' motions will be granted.  The Court,

27   however, will afford Koperwhats an opportunity to amend his Counterclaims to cure the

28   above-noted deficiencies in such cause of action.

####     f.     **Sixth Cause of Action (Intentional Interference with Prospective Economic Advantage)**

Koperwhats, in his Sixth Cause of Action, alleges Counterclaim Defendants "dissuaded potential customers from purchasing software from [Koperwhats], interfering with [his] prospective economic advantage with these potential customers." (See Counterclaims ¶ 186.)  Counterclaim Defendants argue, inter alia, that such claim is subject to dismissal on the ground that Koperwhats has failed to identify any existing business relationship with which any Counterclaim Defendant allegedly interfered.  The Court agrees.  In particular, the tort of intentional interference with prospective economic advantage "applies to interference with existing noncontractual relations which hold the promise of future economic advantage."  See Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 524, 528 (1996) (finding plaintiff failed to state claim; rejecting argument that tort of intentional interference protected plaintiff's "relationship with the entire market of all possible but yet unidentified buyers for its property") (emphasis in original). "In other words, it protects the expectation that the relationship will eventually yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise."  Id. at 524.  Here, Koperwhats has failed to identify any existing economic relationship with which any Counterclaim Defendant allegedly interfered.[11]

Accordingly, to the extent Counterclaim Defendants seek dismissal of Koperwhats' Sixth Cause of Action, Counterclaim Defendants' motions will be granted.  The Court, however, will afford Koperwhats an opportunity to amend his Counterclaims to cure the above-noted deficiencies in such cause of action.

###     3.     **Additional Arguments of Pucket and Axmor**

As noted, both Pucket and Axmor also have moved to dismiss Koperwhats' claims against them for lack of personal jurisdiction, and Axmor has further moved to dismiss for

---

[11]In light of such finding, the Court does not address herein Counterclaim Defendants' additional arguments in support of dismissal of Koperwhats' Sixth Cause of Action.

insufficient service of process. Because the Court, as discussed above, has found all of Koperwhats' claims against said parties are subject to dismissal, the Court does not address herein the merits of these additional arguments.

### 4. Relief Sought

As noted, Counterclaim Defendants seek an order striking portions of the relief sought by Koperwhats.[12] As the Court has found all of Koperwhats' claims are subject to dismissal, with the exception of Koperwhats' Third Cause of Action (Breach of Contract) as alleged against RLW, the Court only addresses herein KEMA and RLW's request for an order striking Koperwhats' claim for punitive damages on such cause of action.

The law in California is clear that "punitive damages may not be awarded for breach of contract." See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 392 (2008); Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28, 61 (1999) ("'In the absence of an independent tort, punitive damages may not be awarded for breach of contract, even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious.'") (quoting Applied Equip. Corp. v. Litton Saudi Arabia, Ltd., 7 Cal. 4th 503, 516 (1994)). Koperwhats, relying on Brockway v. Heilman, 250 Cal. App. 2d 807 (1967) and Miller v. Nat'l Am. Life Ins. Co., 54 Cal. App. 3d 331, 336 (1976), argues such damages nonetheless are available here. Those cases, however, do not support an award of punitive damages based solely on a breach of contract. See Brockway, 250 Cal. App. 2d at 813 (noting defendants "were guilty of fraud," thereby "justif[ying] the award of exemplary damages"); Miller, 54 Cal. App. 3d at 336-37 ("The court below correctly instructed that, in order to award punitive damages, the jury would have to first find for respondent on the fraud cause of action; a finding for respondent on the breach of contract cause alone would only support compensatory damages.").

---

[12]Specifically, all Counterclaim Defendants seek an order striking Koperwhats' prayer for monetary damages on his UCL claim, and KEMA, RLW, and Pucket further seek an order striking Koperwhats' prayer for statutory damages, punitive damages, and attorneys' fees on Koperwhats' copyright infringement claim, as well as for punitive damages on his breach of contract claim.

1    Accordingly, to the extent KEMA and RLW seek an order striking Koperwhats'

2    prayer for punitive damages on Koperwhats' Third Cause of Action (Breach of Contract),

3    KEMA and RLW's motion will be granted.

4            **5.    Affirmative Defense of Trademark Misuse**

5            As noted, KEMA and RLW further seek an order striking Koperwhats' affirmative

6    defense of trademark misuse.  In response, Koperwhats asserts he has sufficiently pleaded

7    "the facts of [KEMA and RLW's] mismarking of software owned by Koperwhats    . . . , and

8    unclean hands, by acts, including [the claims alleged in Koperwhats' Counterclaims]."  (See

9    Opp'n to KEMA & RLW's Mot. at 25:7-10.)  By such argument, Koperwhats appears to be

10   equating the defenses of trademark misuse and unclean hands and, indeed, the cases on

11   which Koperwhats relies concern the defense of unclean hands, rather than trademark

12   misuse, see Worden & Co. v. Cal. Fig Syrup Co., 187 U.S. 516, 528 (1903)[13]; Jarrow

13   Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 841 (9th Cir. 2002); Japan Telecomm.,

14   Inc. v. Japan Telecomm. Am., Inc., 287 F.3d 866, 870 (9th Cir. 2002), or do not deal with

15   the merits of either such defense, see Kendall-Jackson Winery, Ltd. v. E. & J. Gallo

16   Winery, 150 F.3d 1042 (9th Cir. 1998); Levi Strauss & Co. v. Abercrombie & Fitch Trading

17   Co., No. C 07-03752 JSW, 2008 WL 4614660 (N.D. Cal. Oct. 16, 2008).  Consequently, to

18   the extent trademark misuse ever exists as a separate affirmative defense, see, e.g.,

19   Northwestern Corp. v. Gabriel Mfg. Co., 48 U.S.P.Q. 2d 1902, 1909 (N.D. Ill. 1998) (noting

20   "because of trademark misuse's fragmented case history, the Court is reticent to even

21   acknowledge the defense's existence"), in this case, under Koperwhats' theory, it is

22   duplicative of Koperwhats' separately-pleaded defense of unclean hands (see

23   Counterclaims ¶ 60 (unclean hands); id. ¶ 62 (trademark misuse)).

24

25          [13]Although Worden did not use the term "unclean hands," the Ninth Circuit has
     understood the case as dealing with that defense.  See Worden, 187 U.S. at 528 (holding,
26   when trademark owner seeks injunction "to restrain the defendant from injuring his property
     by making false representations to the public, it is essential that the plaintiff should not . . .
27   be himself guilty of any false representation"); Japan Telecomm., 287 F.3d at 870 (quoting
     above-referenced portion of Worden in describing application of defense of "unclean
28   hands" to claim of trademark infringement).

Accordingly, to the extent KEMA and RLW seek an order striking Koperwhats' affirmative defense of trademark misuse, KEMA & RLW's motion will be granted.

**CONCLUSION**

For the reasons stated above:

1. Koperwhats and MiloSlick's motion to dismiss is hereby DENIED without prejudice.

2. KEMA and RLW's motion to dismiss and to strike is hereby GRANTED in part and DENIED in part, Pucket's motion to dismiss and to strike is hereby GRANTED, and Axmor's motion to dismiss is hereby GRANTED, as follows:

    a. To the extent said parties seek dismissal of any claim brought on behalf of MiloSlick, the motions are hereby GRANTED, and such claims are hereby DISMISSED.

    b. To the extent said parties seek dismissal of Koperwhats' First, Second, Fourth, Fifth, and Sixth Causes of Action, the motions are hereby GRANTED, and such claims are hereby DISMISSED.

    c. To the extent KEMA, RLW, and Pucket seek dismissal of Koperwhats' Third Cause of Action as alleged against KEMA and Pucket, their motions are hereby GRANTED, and such claims are hereby DISMISSED.

    d. To the extent KEMA and RLW seek dismissal of Koperwhats' Third Cause of Action as alleged against RLW, their motion is hereby DENIED.

    e. To the extent KEMA and RLW seek an order striking Koperwhats' prayer for punitive damages on Koperwhats' Third Cause of Action, KEMA and RLW's motion is hereby GRANTED.

    f. To the extent KEMA and RLW seek an order striking Koperwhats' affirmative defense of trademark misuse, KEMA and RLW's motion is hereby GRANTED.

//
//
//
//

3.  To the extent Koperwhats may be able to cure the noted deficiencies in his First through Sixth Causes of Action, the Court will afford Koperwhats an opportunity to amend his Counterclaims.  Any such amended counterclaims shall be filed no later than October 9, 2009.

**IT IS SO ORDERED.**

Dated:  September 10, 2009

_____
MAXINE M. CHESNEY
United States District Judge