1   LINDA M. MACLEOD, ESQ. [SBN 142023]
    MORGAN, FRANICH, FREDKIN & MARSH
2   99 Almaden Boulevard, Suite 1000
    San Jose, California  95113-1613
3   Telephone:(408) 288-8288
    Facsimile:  (408) 288-8325
4
    Attorneys for Specially Appearing
5   AXMOR SOFTWARE-AMERICA, INC.

6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8

9   KEMA, INC., a Virginia Corporation, and
    RLW ANALYTICS, INC., a California
10  Corporation,                                NO.  C09 01587

11                 Plaintiff,

12  vs.                                         **AXMOR SOFTWARE-AMERICA, INC.'S
                                                NOTICE OF MOTION AND MOTION
13  WILLIAM KOPERWHATS, an individual           TO DISMISS SECOND AMENDED
    and MILOSLICK SCIENTIFIC, a                 COUNTERCLAIM; MEMORANDUM OF
14  California Company,                         POINTS AND AUTHORITIES IN
                                                SUPPORT THEREOF**
15                 Defendants.

16
    WILLIAM KOPERWHATS, an individual
17  and MILOSLICK SCIENTIFIC, a                 Date:      May 28, 2010
    California Company,                         Time:      9:00 a.m.
18                                              Judge:     Hon. Maxine M. Chesney
                   Counterclaim Plaintiffs,     Courtroom: 7, 19th Floor
19
    vs.
20
    KEMA, INC., a Virginia Corporation,
21  RLW ANALYTICS, INC., a California
    Corporation, Axmor Software, and Curt D.
22  Puckett, an individual,

23                 Counterclaim Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . 2

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.  This Court Does Not Have Personal Jurisdiction Over Axmor. . . . . . . . . 5

      1.  Koperwhats Bears the Burden of Proving That The Assertion of Personal Jurisdiction over Axmor Is Consistent with Constitutional Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      2.  Assertion of General Jurisdiction over Axmor Would Be Unconstitutional Because It Does Not Have Extensive or Wide-Ranging Contacts with California. . . . . . . . . . . . . . . . . . . . . . . . . . 6

      3.  Assertion of Specific Jurisdiction Over Axmor Would Be Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

         a.  Axmor Did Not Purposely Avail Itself of the Privilege of Conducting Activities in California or Purposely Direct Any Relevant Conduct Toward California. . . . . . . . . . . . . . . . 8

         b.  Koperwhats Cannot Meet Their Burden of Proving That the Alleged Claims Arise from Axmor's Forum-related Activities . . . . 9

   B.  Koperwhats Fails to State *Any* Claim against Axmor . . . . . . . . . . . . 10

      1.  Standards For A Motion To Dismiss Under Rule 12(b)(6). . . . . . . . 10

      2.  Koperwhats Fails To State A Claim For Copyright Infringement. . . . 10

         a.  Elements Of A Claim For Copyright Infringement. . . . . . . . . . 10

         b.  Koperwhats Has Not - And Cannot - Allege That His Registered Copyright Covers Any Version Of Visualize IT ®. . . . . . . . . . . 11

      3.  Koperwhats Fails To State A Claim For Trade Secret Misappropriation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      4.  Koperwhats Fails To State A Claim For Unfair Competition. . . . . . 15

      5.  The Court Should Strike Koperwhats' Claims For Compensatory Damages And Restitution On The Unfair Competition Claim. . . . . . 16

      6.  This Motion should be Granted Without Leave to Amend. . . . . . . . 17

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Alexander v. DeWitt*, 141 F.2d 573 (9th Cir. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 17

*Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . 10

*Cinebse Software, Inc. v. Media Guaranty Trust, Inc.*, 1998 WL 661465 at *11 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Clegg v. Cult Awareness  Network*, 18 F.3d 752 (9th Cir. 1994) . . . . . . . . . . . . . . . . . 10

*Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) . . . . . . . . . . . . . . . . . 7

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 10

*I.M.S. Inquiry Management Systems v. Berkshire Information Systems, Inc.*, 307 F.Supp.2d 521 (S.D.N.Y 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re: Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113 (N.D. Cal. 2005) . . . . . . . . 16

*Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477 (S.D. Fla. 1990) . . . . . . . . . . . 11

*Kransko Mfg., Inc. v. Mark Witz*, 656 F.2d 1376 (9th Cir. 1981) . . . . . . . . . . . . . . . . . 7

*KVOS, Inc. v. Assoc. Press*, 299 U.S. 269 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Motorola, Inc. v. Fairchild Camera*, 306 F. Supp. 1173 (D.C. Arizona, 1973) . . . . . . . 14

*Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218 (11th Cir 2008) . . . . . . . . 12

*Ott v. Home Sav. & Loan Assn.*, 265 F.2d 643, fn. 2 (9th Cir. Cal. 1958) . . . . . . . . . . . 17

*Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325 (9th Cir. 1985) . . . . . . 8

*Pebble Beach Co. v Caddy*, 453 F.3d 1151 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 8

*Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Republic Int'l Corp. v. Amco Engineers*, 516 F.2d 161 (9th Cir. 1975) . . . . . . . . . . . . . 5

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sarkes Tarzian, Inc. v. Audio Devices*, 166 F. Supp. 250, fn. 71 (S.D. Cal. 1958) . . . . . . 14

1   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797 (9th Cir. 2004) . . . . . . . . . . 5-8

2   *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

3   *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . 6

4   *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812 (5th Cir. 1940) . . . . . . . . . . . . . . 17

5   *Stutz Motor Car v. Reebock*, 909 F. Supp. 1353 (C.D. Cal. 1995) . . . . . . . . . . . . . . . 14

6   *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*,
    614 F.2d 1247 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

7
8   *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), cert. denied,
    454 U.S. 1031 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9   *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) . . . . . . . . . . 10

10  *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1550 n.14 (N.D. Cal. 1990) . . 16

11                          STATE CASES

12  *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163 (2000) . . . . . . . . . . . . . . 16

13  *Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134 (2003) . . . . . . . . . . . . . . 16

14                          FEDERAL STATUTES

15  17 U.S.C. §101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16  17 U.S.C. section 408(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17                          STATE STATUTES

18  California Business & Professions Code § 17203 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

19  California Business and Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . 15, 16

20  California Civil Code § 3426.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21  California Civil Code § 3426.1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22  California Civil Code §§ 3426.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

23                          FEDERAL RULES

24  Fed. R. Civ. Proc. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25  Fed. R. Civ. Proc. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

26
27
28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rules of Civil Procedure 12(b)(2), and 12(b)(6), Counterclaim Defendant AXMOR SOFTWARE-AMERICA, INC. ("Axmor") specially appearing through its undersigned attorney, hereby moves this Court for an Order dismissing the Counterclaims of William Koperwhats against it. The motion is made on the grounds that this Court lacks jurisdiction over it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and on the grounds that Koperwhats fails to state any claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Counterclaim-Defendant also moves that the Court strike portions of the counterclaims seeking compensatory damages and restitution for unfair competition on the grounds that the relief sought is contrary to California law.

Axmor's motion is based upon this Notice of Motion, Motion and Memorandum of Points and Authorities in support thereof, the Declarations of Patricia Eure (Doc. 25), Pavel Toponogov (Document 26), James Norris (Document 27 and also Exhibit 17 to SACC), Valerie Wagner (Document 103) and the pleadings, papers and records on file in this action, and such additional argument or evidence as the Court may consider.

Said motion will be held on May 28, 2010, at 9:00 a.m., or as soon thereafter as it may be heard by this Court, in the courtroom of the Honorable Maxine M. Chesney, District Judge of the United States District Court for the Northern District of California, located in Courtroom 7, Nineteenth Floor, 450 Golden Gate Ave., San Francisco, CA 94102.


Dated: April 22, 2010                    MORGAN, FRANICH, FREDKIN & MARSH


                                         By: _____
                                             LINDA M. MACLEOD
                                             Attorneys for Counterclaim Defendant
                                             AXMOR SOFTWARE-AMERICA, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

This is the third motion to dismiss filed by Axmor Software. The Counter-claimant has still failed to adequately address any of the pleading deficiencies cited by the court that existed in the previous Counterclaim. Specifically, Koperwhats has: (1) failed to allege a Copyright for the Software alleged to have been infringed by Axmor; (2) failed to allege anything "secret" with respect to his trade secret claim; and (3) fails to allege any wrongful act that can be the basis for an unfair competition claim. Moreover, the severe personal jurisdictional problems in this case as they apply to Axmor remain unchanged. Consequently, the Court should again dismiss the matter in its entirety against Axmor. Since Koperwhats has had three opportunities to solve its pleading problems, the order should be without leave to amend.

### II.   BACKGROUND.

Axmor Software-America, Inc. was incorporated in Texas in 2003 and its principal place of business is located at 3803 Mount Bonnell Road, Austin, Texas. (Declaration of Patricia Eure, ["Eure Decl."], Doc. 25, ¶2, attached hereto as Attachment A.)[1]   Axmor creates custom software development solutions for its clients. *Id.* at ¶ 3. Axmor engages in general marketing efforts, such as Google's AdWords, through its website which reaches equally into all parts of the world through the world wide web. *Id.* at ¶ 4. Axmor has no marketing effort which specifically targets entities located in California. *Id.* Axmor has no employees located in California and does no software or product development, manufacturing or other work in California. *Id.* at ¶ 5.

Axmor has worked with over 150 clients, but only approximately 10 of those clients were located in California. (Declaration of Pavel Toponogov, ["Toponogov Decl."] Doc 26, ¶2, attached hereto as Attachment B.) The clients located in California were obtained through the efforts or

[1]The declarations of Eure, Norris and Toponogov in support of this motion were filed in support of Axmor's first motion to dismiss for lack of personal jurisdiction, and are attached hereto for the Court's convenience as Attachments A, B, and C to this Motion and Memorandum of Points and Authorities. (The Declaration of Norris is also Exhibit 17 to the SACC.) The Declaration of Wagner was filed in support of RLW and Puckett's motion to dismiss the Second Amended Counterclaim, and is attached hereto as Attachment D.

1  involvement of Gearhead Engineering, Inc., which Axmor engaged as an independent sales contractor

2  to facilitate the sale of Axmor's products to entities in the United States. *Id.* at ¶ 3.  Gearhead

3  Engineering, Inc. is located in California. *Id.* at ¶ 4.  Gearhead Engineering, Inc has a contract with

4  Axmor Software-America, Inc. wherein it has agreed to act as an independent sales representative for

5  Axmor Software-America, Inc. in the United States and Europe.  (Declaration of James Norris, Doc.

6  27, at ¶ 3, attached hereto as Attachment C.)  Gearhead Engineering, Inc. is not at liberty to contract

7  on behalf of Axmor. *Id.*, at ¶ 4.

8  In July, 2008, Thomas Standifur of RLW Analytics, Inc. ("RLW") contacted Mr. Norris of

9  Gearhead Engineering, Inc. regarding the possibility of engaging Axmor to develop new software for

10  RLW. *Id.* at ¶ 5.  Mr. Norris had the initial contact with RLW with regard to the project to develop

11  new software, and later acted as a facilitator in communications between Axmor and RLW, but he did

12  not negotiate the actual terms of the work to be done, execute the agreement or perform any work on

13  developing the software. *Id.* at ¶ 6.  All of Mr. Norris's negotiations and discussions related to the

14  project for RLW were performed by emails, internet chats or telephone calls. *Id.* at ¶ 7.

15  Axmor then subcontracted the software development work for RLW at issue in this matter to

16  Software Technologies LLC, which is located in Novosibirsk, Russia, pursuant to a standing

17  agreement which Axmor had with Software Technologies LLC for this type of work. Eure Dec. at ¶

18  6.  The actual software development work performed for RLW was completed by Software

19  Technologies LLC in Novosibirsk, Russia. *Id.* at ¶ 7.  The work for RLW was completed in April

20  2009.  Toponogov Dec. at ¶ 5.

21  On April 10, 2009, KEMA and RLW brought suit against Koperwhats and MiloSlick asserting

22  nine claims for relief., including two claims relating to assertions that Koperwhats had infringed

23  copyrights and breached a 2008 Settlement Agreement between the parties. On May 1, 2009,

24  Defendants filed their Answer and Counterclaims, in which they attempted to add both Puckett and

25  "Axmor Software" as counter-defendants.   The claims against Axmor were for Copyright

26  Infringement, Trade Secret Misappropriation, Interference with Prospective Business Advantage, and

27  Unfair Competition.

28

Axmor Software-America, Inc.'s Motion to Dismiss
Second Amended Counterclaim
Case No. C09 01587                                    3

All of the Counter-Defendants, including Axmor, brought motions to dismiss the Counterclaims. In a September 9, 2009 Order, this Court granted Axmor's motion to dismiss for failure to state a claim in its entirety with leave to amend. The Court did not reach the issue of personal jurisdiction. (Doc. 76 at 20-21.)

On October 13, 2009, Koperwhats filed a First Amended Answer And Counterclaims To Plaintiffs' Complaint ("FACC"), which slightly amended the claims against Axmor. In January 2010, Axmor filed a second Motion to Dismiss, arguing that the copyright registration for Visualize IT ® Versions 3.3 through 4.3 was still defective, that the alleged source code claimed to be a trade secret was still not "kept a secret," that there was still no illegal act forming the basis of the unfair competition claim, and that Koperwhats still failed to allege specific prospective business relationships that had been interfered with by Axmor. On March 1 and 5, 2010, the Court granted the motion to dismiss in its entirety. It held as follows:

(1) That Koperwhats could have leave to amend to allege a proper copyright registration for Verstions later than 3.3 *only.*

(2) That Koperwhats would *not* have leave to amend the claim for Interference with Prospective Business Advantage.

(3) That Koperwhats could have leave to amend the trade secret misappropriation claim; and

(4) To the extent that Koperwhats could otherwise allege a justiciable illegal act, that he could have leave to amend the Unfair Competition claim.

(5) A ruling on personal jurisdiction arguments was again deferred given the rulings made on the specific causes of action.

See, Exhibit E, Court's Orders regarding Motions to Dismiss, Doc. 122 and 125.

Kopewhats filed a Second Amended Answer and Counter-Claim on March 26, 2010. The only Causes of Action against Axmor are the First Cause of Action (Copyright Infringement), the Second of Action for Trade Secret Misappropriation, and the Fifth Cause of Action for Unfair Competition.

III.   **LEGAL ARGUMENT.**

    A.   **This Court Does Not Have Personal Jurisdiction Over Axmor.**

        1.   **Koperwhats Bears the Burden of Proving That The Assertion of Personal Jurisdiction over Axmor Is Consistent with Constitutional Due Process**.

When jurisdiction is challenged by a non-resident defendant, the plaintiff has the burden of establishing that personal jurisdiction is appropriate. *KVOS, Inc. v. Assoc. Press*, 299 U.S. 269, 278 (1936) (although the defendant is the moving party on a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists); *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). To establish personal jurisdiction, "the plaintiff cannot simply rest on the bare allegations of its complaint" (*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797, 800 (9th Cir. 2004) (*quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)), but must show that the exercise of jurisdiction does not offend principles of due process. *Republic Int'l Corp. v. Amco Engineers*, 516 F.2d 161, 166-67 (9th Cir. 1975). Due process does not exist where the defendant's lack of sufficient contacts with the forum state show that it could not reasonably anticipate being hailed into court there. *Id.*

Due process is not provided if both "general" and "specific" personal jurisdiction are lacking. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). General jurisdiction is lacking if a defendant does not conduct business in the forum in a "continuous and systematic manner." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). If a non-resident defendant's contacts with California do not establish general jurisdiction, the nature and quality of the forum-related activities must be evaluated with regard to the specific claims to determine if specific jurisdiction can be asserted. *Id.* As shown below, neither general or specific jurisdiction over Axmor exists because Axmor (1) does not have substantial, continuous or systematic contacts with California and (2) has not purposely availed itself of the benefits of California law, nor has it purposely directed its activities to California with respect to Koperwhats' claims.

//

//

//

2.   **Assertion of General Jurisdiction over Axmor Would Be Unconstitutional Because It Does Not Have Extensive or Wide-Ranging Contacts with California.**

"General personal jurisdiction" over a non-resident defendant exists <u>only</u> if the plaintiff shows that the defendant has "substantial, continuous and systematic" contacts with the forum state "approximat[ing] physical presence" in the forum. *Glencore Grain Rotterdam*, 284 F.3d at 1123; *Helicopteros*, 466 U.S. at 414. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801; *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1990) ("The level of contact with the forum state necessary to establish general jurisdiction is quite high"). The facts in this case clearly show that Axmor does not have "substantial, continuous and systematic" business contacts with California.

Axmor is a Texas corporation which has no employees in California. Eure Dec. at ¶¶ 2, 5 (Exh. 1). While Axmor, like virtually every company in the world, maintains a website which is accessible via the world wide web, this website simply provides general information on Axmor's business. *Id.* at ¶ 4. However, nothing in the website is directed specifically to California residents. *Id.* at ¶ 4; *see Schwarzenegger,* 374 F.3d at 801 (Ohio car dealership's website accessible by California residents did not confer general jurisdiction in California).

In addition, the activities undertaken by Axmor's independent sales representative which is located in California, Gearhead Engineering, Inc., cannot be viewed as a basis for concluding that Axmor has a substantial, continuous and systematic presence in California. *See* Norris Dec. at ¶ 3 (Gearhead Engineering, Inc. is an independent sales representative of Axmor)(Exh. 2 attached hereto). As noted in *Glencore Grain Rotterdam*, 284 F.3d at 1125:

> Granted, Shivnath Rai's sales agent is located in the forum, but it is uncontested that this sales agent [] is neither employed by Shivnath Rai nor at liberty to contract on its behalf. Asian Brand's presence, then, does not appreciably magnify Shivnath Rai's California presence under our general jurisdiction analysis.

Similarly, Gearhead Engineering, Inc. is an independent sales agent and is not at liberty to contract on behalf of Axmor. *See* Norris Dec. at ¶¶ 3, 4. Gearhead Engineering, Inc. is merely a contact point

1   for people who become aware of Axmor through its website or otherwise, and Gearhead Engineering,

2   Inc. just happens to be located in California.

3        Finally, the small volume of clients which Axmor has had in California supports the fact that

4   Axmor has not had "substantial, continuous and systematic" business contacts with California

5   sufficient to establish general jurisdiction that would require Axmor to answer in California for any

6   of its activities anywhere in the world. *See* Toponogov Dec. at ¶ 2 (Axmor has worked with over 150

7   clients, but only approximately 10 of those have been located in California)(Exh. 3 attached hereto);

8   *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1253

9   (9th Cir. 1980)("the number of transactions [ ] and the amount of money involved do not reflect the

10  quality or nature of the contracts and, therefore, should not be considered" in assessing a systematic

11  and continuous course of business).

12       For the reasons set forth above, it is clear that this Court lacks general jurisdiction over Axmor.

13       **3.**       **Assertion of Specific Jurisdiction Over Axmor Would Be Unconstitutional.**

14

15       The Court also does not have specific jurisdiction over Axmor. As the Ninth Circuit has held,

16  a plaintiff must prove that a defendant meets all three prongs of the following test to sustain personal

17  jurisdiction:

18      (1)     The non-resident defendant must purposely direct his activities or consummate some

19      transaction with the forum or resident thereof; or perform some act by which he purposely

20      avails himself of the privilege of conducting activities in the forum, thereby invoking the

21      benefits and protections of its laws;

22      (2)     the plaintiff's claim must be one which arises out of or relates to the defendant's

23      forum-related activities; and

24      (3)     the exercise of jurisdiction must comport with fair play and substantial justice (it must

25      be reasonable).

26  *Schwarzenegger*, 374 F.3d at 801; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997);

27  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993); *Kransko Mfg., Inc. v. Mark Witz*, 656 F.2d

28

Axmor Software-America, Inc.'s Motion to Dismiss
Second Amended Counterclaim
Case No. C09 01587       7

1   1376, 1378 (9th Cir. 1981); *Thomas P. Gonzalez Corp.*, 614 F.2d at 1251. Moreover, a plaintiff has

2   the burden of proving the first two elements of this test. *Schwarzenegger*, 374 F.3d at 802. A

3   plaintiff's failure to satisfy *any* of the three prongs of the Ninth Circuit's specific jurisdiction test

4   mandates the dismissal of the claims on jurisdictional grounds. *Pebble Beach Co. v Caddy*, 453 F.3d

5   1151, 1155 (9th Cir. 2006)("If any of the three requirements is not satisfied, jurisdiction in the forum

6   would deprive the defendant of due process of law") (citation omitted); *Pacific Atlantic Trading Co.

7   v. M/V Main Express*, 758 F.2d 1325, 1329 (9th Cir. 1985). Koperwhats cannot satisfy their burden

8   under this test.

9                   a.      **Axmor Did Not Purposely Avail Itself of the Privilege of
                            Conducting Activities in California or Purposely Direct
10                          Any Relevant Conduct Toward California.**

11          Axmor did not "purposely avail" itself of the privilege of conducting activities in California

12   or purposely direct its activities toward California. While "purposeful availment" requires that a

13   defendant "have performed some type of affirmative conduct which allows or promotes the transaction

14   of business with the forum state," in this case Axmor, which is a Texas corporation, itself had no

15   affirmative conduct in California. *Sher*, 911 F.2d at 1362; *Pebble Beach Co.*, 453 F.3d at 1155

16   ("Evidence of availment is typically action taking place in the forum that invokes the benefits and

17   protections of the laws of the forum"). In addition, the actions of Gearhead Engineering, Inc. cannot

18   be used to establish specific jurisdiction over Axmor because Gearhead Engineering, Inc. was merely

19   an independent sales agent for Axmor. *See* Norris Dec. at ¶ 3; *Glencore Grain Rotterdam*, 284 F.3d

20   at 1125 (presence of independent sales agent does not "appreciably magnify" presence of foreign

21   entity in California). Furthermore, while "purposeful availment" usually entails a defendant

22   "executing or performing a contract" in the forum state, in the present case the contract was not

23   negotiated, executed or performed in California. Eure Dec. at ¶ 7; Norris Dec. at ¶ 6; *Schwarzenegger*,

24   374 F.3d at 802.

25          Axmor also had no "purposeful direction" in California. To establish "purposeful direction,"

26   Koperwhats must show that Axmor committed an intentional act that was expressly aimed at the

27   forum state and which caused harm in that state. *Id.* Even if it were assumed (which Axmor denies)

28

1   that it entered into a contract with RLW in California, such conduct was not the cause of the harm

2   alleged by Koperwhats.   The harm was the alleged copyright violation and alleged trademark

3   violation. However, neither of these occurred in, or were aimed at, California. *See* Eure Dec. at ¶ 7

4   (actual work under agreement with RLW was performed in Russia).  Even more importantly, neither

5   of these alleged acts was even committed by Axmor.  Because Axmor had subcontracted the work

6   under the contract with RLW to Software Technologies LLC, it was that entity which would have

7   committed any such actions in working with the software codes at issue in Russia. *Id.* at ¶ 6.[2]

8          Because Koperwhats cannot demonstrate that Axmor's conduct satisfies the first prong of the

9   Ninth Circuit's specific jurisdiction test, the claims against Axmor must be dismissed.

                         **b.      Koperwhats Cannot Meet Their Burden of Proving That
10                                 the Alleged Claims Arise from Axmor's Forum-related
11                                 Activities.**

12         Koperwhats also cannot meet the second prong with respect to Axmor because his claims do

13  not arise out of or result from Axmor's California activities. The claims in this matter are a copyright

14  violation and a trade secret violation related to Koperwhats' software.  However, even assuming

15  Axmor entered into a contract with RLW in California to develop new software, which is denied, the

16  contract actions are separate from any alleged copyright or trade secret violation, either of which

17  would stand by itself as a violation of law irrespective of any contract.  Moreover, as Koperwhats

18  allege, RLW was never authorized to provide Axmor with any of the material.  SACC¶¶ 112, 132.

19  Therefore, Axmor did not obtain the alleged access to the copyrighted material or trade secrets

20  pursuant to its contract with RLW, but instead by the separate and, allegedly, illegal actions of RLW.

21  Thus, while the alleged harm may have been coexistent with the performance of the contract, the

22  alleged copyright and trademark violations were not caused by or the result of the terms of the contract

23  between Axmor and RLW.

24

25  _____

26  [2]  While there is no evidence that Axmor communicated with anyone actually located in California
    related to this matter, even if it had, "[the] use of mails, telephone or other international
    communications simply do not qualify as purposeful activity invoking the benefits and protection
27  of the state." *Thomas P. Gonzalez Corp.*, 614 F.2d at 1251.

28

1   The Ninth Circuit has adopted a "but for" test to determine whether a claim arises out of or is
2   related to a non-resident defendant's contacts with the forum. *Glencore Grain Rotterdam*, 284 F.3d
3   at 1123; *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). That is, the plaintiff must show that
4   the alleged damage would not have happened "but for" Axmor's forum-related activity. *Id.* Here, the
5   alleged claims against Axmor do not meet this test.

6       **B.    Koperwhats Fails to State *Any* Claim against Axmor.**

7           **1.    Standards For A Motion To Dismiss Under Rule 12(b)(6).**

8           A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a challenge
9   to the pleadings in which the moving party asserts that the pleading "fails to state a claim upon which
10  relief can be granted." Fed. R. Civ. Proc. 12(b)(6). A complaint may properly be dismissed when it
11  "exhibits a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable
12  legal theory." Anthony v. Yahoo! Inc., 421 F. Supp. 2d 1257, 1260 (N.D. Cal. 2006) (internal
13  quotations omitted). Although well-pled factual allegations are to be accepted as true on a motion to
14  dismiss, "the court is not required to accept legal conclusions cast in the form of factual allegations
15  if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness
16  Network 18 F.3d 752, 754-55 (9th Cir. 1994); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th
17  Cir.), cert. denied, 454 U.S. 1031 (1981). Additionally, the court need not accept conclusory
18  allegations, legal characterizations, unreasonable inferences, and unwarranted deductions of fact when
19  considering a motion to dismiss. Schwartzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Proc.
20  Before Trial, ¶ 9:221 (The Rutter Group 2008) (citations omitted). Where specific facts are pled in
21  the complaint that are inconsistent with legal conclusions set forth in the pleading, the complaint is
22  not "saved" by the legal conclusions. Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n.1 (9th
23  Cir. 1997).

24          **2. Koperwhats Fails To State A Claim For Copyright Infringement.**

25              **a.    Elements Of A Claim For Copyright Infringement.**

26          To prevail on a claim for copyright infringement under the Copyright Act, a party must prove:
27  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

28

1   original." <u>Rice v. Fox Broad. Co.</u>, 330 F.3d 1170, 1174 (9th Cir. 2003) (<u>quoting Feist Publ'ns, Inc. v.</u>

2   <u>Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)). The party must allege:

> "(1) the specific original work that is the subject of the copyright claim; (2) that the
> plaintiff owns the copyright on the work; (3) that the work in question has been
> registered in compliance with the statute; and (4) by what acts and during what time
> the defendant has infringed the copyright."

5   <u>Klinger v. Weekly World News, Inc.</u>, 747 F. Supp. 1477, 1481 (S.D. Fla. 1990).

6                    **b.      Koperwhats Has Not - And Cannot - Allege That His Registered
7                              Copyright Covers Any Version Of Visualize IT ®.**

8           In its Orders granting the Counterclaim Defendants' Motions to Dismiss to the FACC, the

9   Court noted that the First Cause of Action failed in so far as it was based on Visualize IT ® Software

10  Versions 3.3 or earlier since (1) the Copyright Registration Certificate for the Visualize IT ® software

11  alleged to be infringed by Counter-Defendants states that it was first published on June 18, 2009 and

12  was not reliant on any prior work or works; and (2) the FACC affirmatively alleged that Visualize IT

13  ® Versions 3.3 and earlier had in fact been published prior to Plaintiff's Copyright Registration. The

14  Court also noted that Koperwhats' Counterclaim was ambiguous as to whether or not the Copyright

15  Registration actually included Visualize IT ® versions 4.0 and/or 4.3, and thus gave Koperwhats leave

16  to amend to allege a Copyright Registration for Visualize IT ® for Versions 4.0 or higher.  Doc. 122.

17          The SACC still fails to correct the problems raised by his prior pleadings.  First, Koperwhats

18  initially appears to alleges that he has a Copyright Registration for Version 4.3 of the Visualize IT ®

19  software.  He states that he applied for a registration "in the software program encoded by the source

20  code for Version 4.3." SACC, ¶92.[3]  However later, he states that the source code of the []program,

21  from which the deposits for copyright registration were made, *is similar to but not identical to*

22  Version 4.3 of Visualize IT ® developed by Koperwhats.  SACC, ¶ 95.  Thus, the very definition of

23  what has been Copyrighted is contradictory.

24          Even more telling, however, is the registration certificate attached as Exhibit 4 to the Second

25  Amended Complaint.  That Certificate clearly states that the Energy Vision Software sought to be

26

27          [3]Thus, Koperwhats does not claim that Version 4.0 has been registered with the Copyright
    Office.

28

1  registered was *first published on June 16, 2008 and not derivative of any prior work.*  SACC, ¶160,

2  and Exhibit 4; Wagner Decl., .Doc. 103.  Koperwhats alleges that he created all Versions of 4.0

3  through 4.3 of Visualize IT ® for RLW and that he did not cease providing services to RLW until

4  2008. SACC, ¶84  He alleges that prior to June 2008, RLW provided Versions 3 and 4 of Visualize-

5  IT ® (SACC, ¶87) and that Koperwhats, on behalf of RLW, sold all versions of the Visualize-IT ®

6  software to RLW's customers.  SACC, ¶89.  In paragraph 87 of his SACC, Koperwhats alleges that

7  demonstration versions of the Visualize IT ® software did not need a registration code (implying that

8  anyone could obtain demonstration versions of the software.)   Moreover, in he alleges that "[a]ll

9  versions of the software have been available [] to select users to whom a registration code has been

10 provided. The software has been used internally by employees of RLW and KEMA, and licensed to

11 their customers." SACC, ¶¶92, 161. These allegations are fatal to his claim that Axmor has infringed

12 on a registered copyright of Koperwhats.   As stated by the court, "in the context of copyright

13 registration 'publication' is defined as 'the distribution of copies of a work to the publicly <u>by sale or</u>

14 <u>other transfer of ownership</u>, or by rental, lease or lending."  <u>See</u> 17  U.S.C. §101.   Here, while

15 Koperwhats states–for the first time after one year and two prior pleadings–that he has amended his

16 Registration to assert that his software "has not been published"[4] the allegations that Version 4.0 and

17 4.3 of Visualize IT ® <u>has been sold</u> prior while he was at RLW and to June 2008 directly contradicts

18 this claim. As a result, this court lacks jurisdiction over this copyright claim because the allegedly

19 infringed work was published before the date of first publication identified in the registration, and does

20 not identify the registered work as derivative of, or a compilation containing, the allegedly infringed

21 work. <u>I.M.S. Inquiry Management Systems v. Berkshire Information Systems, Inc.</u> 307 F.Supp.2d

22 521, 527, 529 (S.D.N.Y 2004) and cases cited therein; <u>Oravec v. Sunny Isles Luxury Ventures, L.C.</u>,

23 527 F.3d 1218 (11th Cir 2008).  By virtue of the very allegations in the SACC discussed above,

24

25     [4]Aside from the fact that the only actual registration before the court disputes any notion of
publication of the Energy Vision Software, the Copyright Act does not allow for an existing registration

26 to be amended. Rather, section 408 provides for "the filing of an application for supplementary
registration" 17 U.S.C. section 408(d). "The information contained in a supplementary registration

27 augments but does not supersede the information contained the earlier registration." Id. In any event no
such supplementary registration has been alleged in or submitted with this pleading.

28

1   Versions 4.0 and 4.3 of Visualize-IT ® existed and were distributed in a manner constituting

2   publication *prior to June 16, 2008*. Since the application and registration certificate for Koperwhats'

3   EnergyVision do not identify any previously- existing material included in the software at issue, the

4   registration cannot, as a matter of law, cover the versions of Visualize-IT ® that Koperwhats alleges

5   the Counter-Defendants copied without authorization. Accordingly, this Court should dismiss

6   Koperwhats' claim for copyright, infringement without leave to amend.

7        **3.     Koperwhats Fails To State A Claim For Trade Secret Misappropriation.**

8        California's Uniform Trade Secrets Act ("UTSA") provides remedies for misappropriation of

9   trade secrets. See California Civil Code §§ 3426.2 and 3426.3. A "trade secret" is "information, ...

10   that: (1) Derives independent economic value, actual or potential, from not being generally known to

11   the public or to other persons who can obtain economic value from its disclosure or use; *and* (2) Is

12   the subject of efforts that are reasonable under the circumstances to maintain its secrecy." California

13   Civil Code § 3426.1(d). The UTSA defines "misappropriation" in relevant part as "Disclosure or use

14   of a trade secret of another without express or implied consent by a person who. . . (B) At the time of

15   disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was. . . (ii)

16   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ."

17   California Civil Code § 3426.1(b).

18        In its March, 2010 Orders, this Court dismissed Koperwhats' trade secret claim on the grounds

19   that even assuming Koperwhats submitted only a portion of the source code for 4.3 to the Copyright

20   Office, the alleged trade secret was the source code for 3.3, which had been affirmatively alleged to

21   be disclosed to RLW without a non-disclosure agreement. "[T]he failure to secure non-disclosure

22   agreements from others in possession of any remaining portions [of the alleged trade secret] is fatal

23   to a trade secret claim." citing Cinebse Software, Inc. v. Media Guaranty Trust, Inc. 1998 WL 661465

24   at *11 (N.D. Cal. 1998).  Doc. 122, at 7:28-8:6.

25        Koperwhats' new pleading does not correct the problems noted by the Court. While he alleges,

26   in a conclusory fashion, that he has taken reasonable steps to maintain the secrecy of all source code

27   encoding Versions 2 through 4o of the energy analysis software referred to as Visualize-IT, including

28

1   refraining from "publishing" the software or source code[5], his more specific allegations trump this

2   vague allegation.  For example, he alleges that the **source code and** the executable software are not

3   available to users without a registration code with a license (implying that they both are available to

4   users with a registration code and a license.)  SACC, ¶193.  He further alleges that he created all of

5   the source code for Versions 2.0 through 4.3 of Visualize IT ® in exchange for payment from RLW

6   until 2008, **with no agreement with RLW, oral or written**.  SACC, ¶ 84.  (Emphasis added.)  He also

7   alleges that he periodically provided source code of Versions 3 through 4[6] to RLW to maintain a back-

8   up copy of the source code.  SACC, ¶90, See, also, Exhibit 3 (e-mail to toms@rlw.com enclosing the

9   source code for Version 3.3.)

10        These allegations make clear that Koperwhats disclosed the source codes for all versions of

11   the software to RLW without any agreement, oral or written, limiting its disclosure or use.  Nor has

12   he argued, let alone alleged, any facts to show such an agreement.  Cinebse Software, Inc. supra 1998

13   WL 661465 at *11 (N.D. Cal. 1998); Stutz Motor Car v.  Reebock, 909 F. Supp. 1353, 1358 (C.D.

14   Cal. 1995)("In light of this requirement of secrecy, it is clear that an unprotected disclosure of the

15   holder's secret terminates the existence of the trade secret. [citations omitted.]"); Sarkes Tarzian, Inc.

16   v. Audio Devices, 166 F. Supp. 250, 273, fn. 71 (S.D. Cal. 1958); Motorola, Inc. v. Fairchild Camera,

17   306 F. Supp. 1173 (D.C. Arizona, 1973).  The Court specifically gave Koperwhats leave to amend to

18   cure this deficiency and has failed to do so and this Court should now dismiss this claim with

19   prejudice.

20        Alternatively, Koperwhats alleges that the source code must have been provided to RLW first

21   and *then* provided to Axmor.[7]  (SACC, ¶¶132 [Axmor downloaded "Version 3.3. of Visualize-IT",

22        [5]Koperwhats confusingly asserts that none of the software was "published" apparently so he can
23   save his Copyright claim as to all versions of the software.  If such is the case, then Axmor's prior
     arguments regarding the submissions/disclosures made to the Copyright Office apply equally here.  See,
24   Doc. 104, p. 14-15.
        [6]"Version 4" includes all versions with the prefix '4' including Version 4.3."  SACC, ¶166 at
25   28:10.
        [7]This allegation, of course, complete contradicts the new allegations that Axmor did *not* receive
26   the source code.  SACC, ¶183.  Axmor, "allegedly was not provided with source code for the software"
     and certainly not the source code for versions 4.0 through 4.3.  SACC, ¶183.  To the extent that the court
27   determines that the SACC alleges that Axmor did not use or disclose the source code, it is not liable for
     misappropriation.
28

1   three year old program for which Koperwhats had stored the source code at RLW"], 168 ["Indeed,

2   RLW, Puckett or KEMA, Inc. and/or KEMA, USA, must have provided Koperwhats' copyrighted

3   software and/or source code to Axmor."] and 198 ["CounterDefendants RLW, Puckett, and KEMA,

4   Inc. and KEMA, USA, stole CounterPlaintiff Koperwhats' trade secrets . . . and transferred them to

5   a third party, Counter Defendant Axmor..."].) Yet, there is absolutely no factual allegation whatsoever

6   that any source code that was thereafter provided to *Axmor* pursuant to any confidentiality obligations

7   or duties to Koperwhats.  Indeed, other than a conclusory allegation that Axmor "stole" the trade

8   secret, and "improperly used" it (FACC, ¶ 199) there is no allegation in the FACC that RLW provided

9   the source code to Axmor with notification of Koperwhat's claim that it was secret or that Axmor

10   knew of Koperwhat's claim that the source code was secret.

11      Thus, as in his original counterclaim, Koperwhats' amended counterclaim for trade secret

12   misappropriation fails because has not, and cannot, allege the use or disclosure by the

13   Counter-Defendants of anything secret. Accordingly, this Court should now dismiss this counterclaim

14   with prejudice.

15      **4.      Koperwhats Fails To State A Claim For Unfair Competition.**

16      Koperwhats' unfair competition counterclaim under California Business and Professions Code

17   section 17200 against Axmor is premised on is premised on his amended counterclaims for copyright

18   infringement, and trade secret misappropriation.  See SACC, ¶247.

19      As this Court noted in its orders of March 1 and 5, 2010, the unfair competition counterclaim

20   fails if these underlying counterclaims fail. Doc. 122, at 12:-25-12:19.  Koperwhats' amended

21   counterclaims for copyright infringement and trade secret misappropriation all fail - again - as set forth

22   above.

23      As Koperwhats clearly cannot amend his counterclaims to state any theory of relief under

24   California Business and Professions Code section 17200, *et seq.*, this Court should also dismiss this

25   claim with prejudice.

26   //

27

28

5.    **The Court Should Strike Koperwhats' Claims For Compensatory Damages And Restitution On The Unfair Competition Claim.**

In addition to injunctive relief, Koperwhats seeks "restitution" for "injury to its [sic] business, good will and property." FACC ¶ 257; see also Prayer 8-10. This Court should strike the portions of the amended counterclaims seeking compensatory damages for unfair competition, as well as relief in the form of "restitution," because Koperwhats is seeking damages that are unavailable for this cause of action. A cause of action for statutory unfair competition can result only in the relief specified by California Business & Professions Code section 17203, which provides for injunction or restitution. See also Cortez v. Purolator Air Filtration Prod. Co., 23 Cal. 4th 163, 179-80 (2000); Korea Supply Co. v. Lockheed Martin Co., 29 Cal. 4th 1134, 1144, 131 Cal.Rptr.2d 29 (2003) (remedies are "limited" and do not provide for damages, only injunctive relief and restitution). Clearly, this Court must strike Koperwhats' prayer for compensatory damages on his unfair competition counterclaim.

To the extent Koperwhats seek restitution, such relief is not available because he is not seeking the return of money that was obtained by means of alleged unfair competition. See, e.g., In re: Napster, Inc. Copyright Litig., 354 F. Supp. 2d 1113, 1126-27 (N.D. Cal. 2005). It has long been established that "[d]amages are not available to private plaintiffs under the California unfair competition statute." Xerox Corp. v. Apple Computer, Inc., 734 F. Supp. 1542, 1550 n.14 (N.D. Cal. 1990). The California Supreme Court clarified that, pursuant to California Business & Professions Code section 17200 et seq., "an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." Id. at 1148.

Koperwhats alleges in his amended counterclaims that the Counter-Defendants "have obtained. . . revenues and business goodwill and opportunities, for which CounterPlaintiff should rightfully have been compensated." SACC ¶ 254. . This is not unjust enrichment - but rather commercial transactions in which Koperwhats claims he should have a share. Thus, Koperwhats is trying to re-style a demand for damages as one for restitution.

The court in Korea Supply further noted that an action pursuant to California Business & Professions Code section 17200 et seq. is not an "all-purpose substitute for a tort or contract action" but rather is a process for preventing "ongoing or threatened acts of unfair competition." Korea

1   Supply, 29 Cal. App. 4th at 42-43. Clearly, Koperwhats' prayer for "actual compensatory damages for.

2   . . unfair competition" should be stricken from the amended counterclaims. Likewise, to the extent he

3   seeks "restitution," he is actually seeking damages in an attempt to force failed copyright, fraud and

4   breach of contract counterclaims into a claim for unfair competition under section 17200. Accordingly,

5   this Court should strike the prayer for restitution as well.

### 6.   This Motion should be Granted Without Leave to Amend.

7   Five factors are used to assess the propriety of leave to amend: (1) bad faith; (2) undue delay;

8   (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously

9   amended his complaint. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). Moreover,

10   "a district court's discretion to deny leave to amend is particularly broad where plaintiff has previously

11   amended the complaint. Id. Here, the majority of factors are in favor of denying a motion for leave

12   to amend as to Axmor.

13   First, it would be futile to amend. For example, Koperwhat's Copyright Registration trumps

14   any ability to "plead around" the fact that Koperwhat simply does not have a copyright for the works

15   he alleges Counter Defendant's improperly used. Moreover, Koperwhats has not, and can not, plead

16   around the fact that he provided the source code to RLW under no obligation that it be kept secret.

17   Indeed, cases are clear that  exhibits to a pleading cannot be overcome by the inconsistent

18   characterization of them in the complaint. Alexander v. DeWitt 141 F.2d 573, 575 (9th Cir. 1944)

19   Simmons v. Peavy-Welsh Lumber Co. 113 F.2d 812 (5th Cir. 1940), cited with approval in Ott v.

20   Home Sav. & Loan Assn. (9th Cir. Cal. 1958) 265 F.2d 643, fn. 2. And, having no Copyright or trade

21   secret claim, his unfair competition claim necessarily fails. Second, he's already been granted leave

22   to amend, with specific outlines of his deficiencies by the Court, Koperwhats has nevertheless failed

23   to adequately amend the FACC to state any claim against Axmor. His failure to adequately amend

24   to address the Court's concerns itself reveals that any further opportunities to amend would be futile.

25   The other factors also weigh in favor of Axmo. Koperwhat has been given ample opportunity

26   –over the course of a year– to  get his pleading right. It is unfair to Axmor–an innocent, out-of state

27   party-- to continue to be dragged into, and paying attorney's fees for, the defense of what is essentially

28   a dispute between Koperwhats and RLW/KEMA. The Court should grant the motion without leave

to amend.

## IV. CONCLUSION.

For the reasons set forth above, this Court should dismiss Koperwhats' Second Amended Counterclaim against Axmor without leave to amend, and/or strike the damages allegations as they relate to the unfair competition claim as set forth above without leave to amend.

Dated: April 23, 2010

MORGAN, FRANICH, FREDKIN & MARSH

By: _____
LINDA M. MACLEOD
Attorneys for Counterclaim Defendant
AXMOR SOFTWARE-AMERICA, INC.