1   JAMES L. JACOBS, Cal. State Bar No. 158277
    VALERIE M. WAGNER, Cal. State Bar No. 173146
2   GCA LAW PARTNERS LLP
    1891 Landings Drive
3   Mountain View, CA  94043
    Telephone:  (650) 428-3900
4   Facsimile:  (650) 428-3901
    jjacobs@gcalaw.com
5   vwagner@gcalaw.com

6   Attorneys for Plaintiffs and Counter-Defendants
    KEMA, INC., RLW ANALYTICS, INC. and
7   CURT PUCKETT

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  KEMA, INC., a Virginia Corporation, and       No.   C09 01587 MMC
    RLW ANALYTICS, INC., a California
12  Corporation,                                  NOTICE OF MOTION AND MOTION
                                                  TO DISMISS AND MOTION TO
13          Plaintiffs,                           STRIKE SECOND AMENDED
                                                  COUNTERCLAIMS BY KEMA, RLW
14          vs.                                   ANALYTICS, CURT PUCKETT AND
                                                  KEMA USA; MEMORANDUM OF
15  WILLIAM KOPERWHATS and                        POINTS AND AUTHORITIES IN
    MILOSLICK SCIENTIFIC, LLC.                    SUPPORT THEREOF
16
            Defendants.
17                                                Date:  May 28, 2010
                                                  Time:  9:00 a.m.
18                                                Judge:  The Hon. Maxine M. Chesney
                                                  Courtroom:  7, 19th Floor
19  ─────────────────────────────
    WILLIAM KOPERWHATS, an individual,
20
            Counterclaim Plaintiff,
21
            vs.
22
    KEMA, INC., a Virginia Corporation,
23  KEMA, USA, a Pennsylvania Corporation;
    RLW ANALYTICS, INC., a California
24  Corporation, Axmor Software, and Curt D.
    Puckett, an individual
25
            Counterclaim Defendants.
26

27

28

    MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
    CASE NO. C-09 01587 MMC

# TABLE OF CONTENTS

Page No.

NOTICE OF MOTION AND MOTION................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES................................................ 2

I.      INTRODUCTION ............................................................................. 2

II.     PROCEDURAL BACKGROUND ........................................................ 2

III.    LEGAL ARGUMENT ...................................................................... 3

        A.     Standard For A Motion To Dismiss Under Rule 12 (b)(6) ........ 3

        B.     Koperwhats Fails To State A Claim For Copyright Infringement For The Third Time .............................................. 4

              1.    Elements Of A Claim For Copyright Infringement ................................................... 4

              2.    Koperwhats Has Again Failed To Allege That His Registered Copyright Covers Any Version Of Visualize - IT.................................................... 5

              3.    Koperwhats Fails To State A Claim Against KEMA Or KEMA USA For Direct Or Vicarious Copyright Infringement ................................ 10

        C.     Koperwhats Fails To State A Claim For Trade Secret Misappropriation ............................................... 12

        D.     Koperwhats Fails To State a Claim For Breach of Contract Against KEMA, Curt Puckett Or KEMA USA ........................ 13

        E.     Koperwhats Fails To State A Claim for Fraud ......................... 14

              1.    The 'Exhibit A" List Of Licensees ................................ 15

              2.    The June 2008 Statement Regarding The Number Of Users ......................................................... 15

                   a.   Koperwhats Received Contradictory Information ................................................. 16

                   b.   The 2008 Agreement Contains An Integration Clause.................................................... 16

               3.    Puckett's February 2009 Email ...................................... 17

        F.     Koperwhats Fails To State A Claim for Unfair Competition ................................................. 18

G.   The Court Should Strike Koperwhats' Claims For Compensatory Damages On The Unfair Competition Claim ........................................................................ 19

H.   This Court Does Not have Personal Jurisdiction Over Puckett Or KEMA USA .............................................. 20

   1.   Standard For Personal Jurisdiction................................ 20

   2.   Koperwhats Cannot Establish That This Court Has General Jurisdiction Over Puckett Or KEMA USA .................................................. 21

   3.   Koperwhats Cannot Establish That This Court Has Specific Jurisdiction Over Puckett Or KEMA USA .................................................. 22

      a.   Standards For Specific Jurisdiction.......................... 22

      b.   There Is No Specific Jurisdiction Over Puckett ...................................................... 23

      c.   There Is No Specific Jurisdiction Over KEMA USA ......................................... 23

IV.   CONCLUSION .................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page No.</u>

*A&M Records, Inc. Napster, Inc.*
    239 F.3d 1004 (9th Cir. 2001) ..................................................... 11

*Anthony v. Yahoo! Inc.,*
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ...................................... 3

*Ashcroft v. Iqbal,,*
    129 S. Ct. 1937 (2009) ..................................... 3, 4, 14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................ 3, 4

*Boschetto v. Hansing*
    539 F.3d 1011 (9th Cir. 2008) ..................................................... 24

*Brought to Life Music, Inc. v. MCA Records, Inc.*
    2003 U.S. Dist.LEXIS 1967 ..................................................... 11

*Burger King Corp. v. Rudezewicz,*
    471 U.S. 462 (1985) ..................................................... 24

*Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*
    1998 WL 661465 (N.D. Cal. 1998) .......................................... 12

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ..................................................... 4

*Colt Studio, Inc. v. Badpuppy Enter*
    75 F. Supp. 2d 1104 (C.D. Cal. 1999) ...................................... 23

*Cortez v. Purolator Air Filtration Prod. Co.*
    23 Cal. 4th 163 (2000) ..................................................... 19

*Cubbage v. Merchant*
    744 F.2d 665 (9th Cir. 1984) ..................................................... 20

*DaimlerChrysler Services v. Summit Nat'l.*
    2006 U.S. Dist. LEXIS 32049  (E.D. Mich. May 22, 2006) ...................... 9

*Doe v. Unocal Corp.*
    248 F.3d 915 (9th Cir. 2007) ..................................................... 20, 23

*Eclectic Prop. East, LLC v. The Marcus & Millichap Co.*
    2010 U.S. Dist. LEXIS 7381 (N.D. Cal. January 29, 2010) ...................... 14

*Ellison v. Robertson*
    357 F.3d 1072 (9th Cir. 2004) .................................................. 11

*Engalla v. Permanente Med. Group, Inc.*
    15 Cal. 4th 951 (1997) ......................................................... 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
    499 U.S. 340 (1991) .............................................................. 4

*Fields v. Sedgwick  Assoc. Risks, Ltd.*
    796 F.2d 299 (9th Cir. 1986) .................................................. 21

*Flynt Distrib.. Co. v. Harvey*
    734 F.2d 1389 (9th Cir. 1999) ................................................ 13

*Fountain v. Talley*
     104 F. Supp. 2d 1345(M.D. Ala. 2000) ..................................... 11

*FPI Dev., Inc. v. Nakashima*
    231 Cal. App. 3d 367 (1991) ................................................. 13

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc..*
    886 F.2d 1545 (9th Cir. 1989) ................................................ 11

*Gates Learjet Corp. v. Jensen*
    743 F.2d 1325 (9th Cir. 1984) ................................................ 21

*Gordy v. Daily News, L.P.*
    95 F.3d 829 (9th Cir. 1996) .................................................. 23

*Hanson v. Denckla*
    357 U.S. 235 (1958) ............................................................ 21

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*
    328 F.3d 1122 (9th Cir. 2003) ............................................ 24, 25

*Helicopteros Nacionales de Columbia v. Hall*
    466 U.S. 408 (1984) ............................................................ 21

*Hubco Data Prods. Corp. v. Mgmt. Assistance Inc..*
    1983 U.S. Dist. LEXIS 19515  (D.Id. Feb. 3, 1983) ......................... 9

*I.M.S. Inquiry Mgmt. Sys., LTD. v. Berkshire Info Sys., Inc.*
    307 F. Supp. 2d 521 (S.D.N.Y. 2004) .......................................... 4

*In re: Napster, Inc. Copyright Litig.*

354 F. Supp. 2d 1113 (N.D. Cal. 2005) ...................................................... 19

*Int'l Shoe Co. v. Washington*
326 U.S. 310 (1945) ...................................................................................... 21

*Klinger v. Weekly World News, Inc.*
747 F. Supp. 1477 (S.D. Fla. 1990) ............................................................. 4

*Korea Supply Co. v. Lockheed Martin Co.*
29 Cal. 4th 1134 (2003) ......................................................................... 19, 20

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*
2004 U.S. Dist. LEXIS 15668 (S.D.N.Y .August 10,2004) ...................... 7, 9

*Molko v. Holy Spirit Ass'n*
46 Cal. 3d 1092 (1988) ............................................................................... 14

*Oravec v. Sunny Isles Luxury Ventures, L.C.,*
527 F.3d 1218 (2008) ................................................................................... 4

*Otworth v. Southern Pac. Transp. Co.*
166 Cal. App. 3d 452 (1985) ...................................................................... 13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
494 F.3d 788 (9th Cir. 2007) ...................................................................... 11

*Pry Corp. of America v. Leach*
177 Cal. App. 2d 632 (1960) ...................................................................... 13

*Puentes v. Wells Fargo Home Mortgage, Inc.*
160 Cal. App. 4th 638 (2008) ..................................................................... 18

*Reichert v. Gen. Ins. Co. of America*
68 Cal. 2d 822 (1968) ................................................................................. 13

*Rice v. Fox Broad. Co.,*
330 F.3d 1170 (9th Cir. 2003) ...................................................................... 4

*Rollins Burdick Hunter of So. California, Inc. v. Alexander & Alexander Services, Inc.*
205 Cal. App. 3d 1 (1988) ........................................................................... 23

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797 (9th Cir. 2004) ................................................................. 21, 23

*Shearer v. Superior Court*
70 Cal. App. 3d 424 (1977) ........................................................................ 23

*Shute v. Carnival Cruise Lines*
    897 F.2d 377 (9th Cir. 1990) ....................................................................... 21

*SiVault Sys., Inc. v. Hypercom Corp.*
    2007 U.S. Dist. LEXIS 55114 (N.D. Cal. July 18, 2007) ........................... 20

*The DBT Group, Inc. v. FMC Corp..*
    2001 U.S. Dist. LEXIS 14646 (N.D. Il. Sept. 18, 2001) ............................. 9

*The Goodyear Tire & Rubber Company vs. Murphy's Inc.*
    1992 U.S. Dist. LEXIS 13469 (N.D. Cal., July 14, 1992) ........................... 17

*Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*
    614 F.2d 1247 (9th Cir. 1980) ............................................................... 20, 21

*Unix System Lab., Inc. Berkeley Software Design, Inc..*
    1993 U.S. Dist. LEXIS 19505 (D.N.J. March 3, 1993) ............................... 9

*Weisbuch v. County of Los Angeles*
    119 F.3d 778 (9th Cir. 1997) ........................................................................ 4

*Westways World Travel v. AMR Corp.*
    182 F. Supp. 2d 952 (C.D. Cal. 2001) ........................................................ 13

*W. Minning Council v. Watt,*
    643 F.2d 618 (9th Cir.) *cert. denied,* 454 U.S. 1031 (1981) ....................... 4

*Xerox Corp. v. Apple Computer, Inc.*
    734 F. Supp. 1542 (N.D. Cal. 1990) ........................................................... 19

<u>Federal Codes, Rules & Materials</u>                                               <u>Page No.</u>

17 U.S.C.§ 101 ...............................................................................................    7

17 U.S.C.§ 408(d) ..........................................................................................    7

Fed. R. Civ. P. 12(b)(2) .................................................................................    1

Fed. R. Civ. P. 12(b)(6) .................................................................................  1, 3

Copyright Office Circular 8 ...........................................................................    7

<u>California Civil Codes</u>

Cal. Civ. Proc. Code. §410.10 ............................................................... 21

Cal. Civ. Proc. Code. §430.10(g) .......................................................... 13

Cal. Civ. Code. § 1709 ........................................................................... 14

Cal. Bus. Prof. Code. § 17200 ......................................................... 19, 20

Cal. Bus. Prof. Code. § 17203 ............................................................... 18

Cal. Civ. Code. § 3426.1 ........................................................................ 12

Cal. Civ. Code. § 3426.2 ........................................................................ 12

Cal. Civ. Code. § 3426.3 ........................................................................ 12

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 28, 2010, at 9:00 a.m., or as soon thereafter as it may be heard by this Court, in the courtroom of the Honorable Maxine M. Chesney, District Judge of the United States District Court for the Northern District of California, located in Courtroom 7, Nineteenth Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs and Counter-Defendants KEMA, INC. ("KEMA") and RLW ANALYTICS, INC. ("RLW"), and Specially-Appearing Counter-Defendants Curt Puckett ("Puckett") and KEMA USA, Inc. ("KEMA USA") (collectively, "Counter-Defendants") will, and hereby do, move this Court for an order (1) dismissing the Second Amended Counterclaims of William Koperwhats ("Koperwhats") in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) dismissing Koperwhats' Second Amended Counterclaims as to Puckett and KEMA USA pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure; and (3) striking Koperwhats' prayers for compensatory damages and restitution for unfair competition.

Counter-Defendants all seek dismissal of the counterclaims for copyright infringement, trade secret misappropriation, fraud, and unfair competition on the grounds that Koperwhats has failed to state a claim upon which relief may be granted.  KEMA, Puckett and KEMA USA seek dismissal of the counterclaim for breach of contract on the grounds that Koperwhats has failed to state a claim upon which relief may be granted. Puckett and KEMA USA seek dismissal of the entirety of the Second Amended Counterclaims as asserted against them on the grounds that there is no basis for personal jurisdiction.

Counter-Defendants also move that the Court strike portions of the counterclaims seeking compensatory damages and restitution for unfair competition on the grounds that the relief sought is contrary to California law.

Counter-Defendants' motion is based upon this Notice of Motion, Motion and Memorandum of Points and Authorities in support thereof, the Declaration of Curt Puckett

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   (D.I. 22), the Declaration of Charles Madden (D.I. 107), and the pleadings, papers and

2   records on file in this action, and such additional argument or evidence as the Court may

3   consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

4

5   **I.     INTRODUCTION.**

6          Counter-Defendants KEMA, RLW, Puckett and KEMA USA bring the present motion

7   to dismiss and strike the Second Amended Counterclaims on many of the same substantive

8   legal grounds set forth in their previous motions to dismiss.  Koperwhats has not rectified the

9   fundamental problem with his counterclaim for copyright infringement, the fact that his

10   registration does not cover the software he alleges the Counter-Defendants have infringed.

11   Likewise, he has not alleged that he only disclosed his purportedly "trade secret" source code

12   under any obligation to maintain its confidentiality.  Koperwhats has not stated a claim for

13   fraud or for breach of contract against non-signatories KEMA, Puckett and KEMA USA.  As

14   fall these counterclaims, so falls Koperwhats' counterclaim for unfair competition.  Likewise,

15   the relief he seeks on this counterclaim is outside the permissible scope under California law.

16   For these reasons, this Court should dismiss Koperwhats' amended counterclaims against

17   KEMA USA without leave to amend.

18   **II.     PROCEDURAL BACKGROUND.**

19          On April 10, 2009, KEMA and RLW brought suit against Koperwhats and defendant

20   MiloSlick Scientific ("MiloSlick"), asserting nine claims for relief, including two for

21   declaratory relief relating to Defendants' assertions that Plaintiffs had infringed copyrights

22   and breached a 2008 Settlement Agreement.  On May 1, 2009, Defendants filed their

23   Answer and Counterclaims, in which they added Puckett and Axmor Software as counter-

24   defendants.

25          The Counter-Defendants brought motions to dismiss the Counterclaims, and the

26   Counter-Defendants also brought motions to strike various claims for relief and the

27   affirmative defense of trademark misuse.  Koperwhats and MiloSlick also brought a motion to

28   dismiss the Complaint.  In a September 9, 2009 Order, this Court denied the Defendants'

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC       2

motion and granted the Counter-Defendants' motions to dismiss except as to breach of contract against RLW.  D.I. 76.

Koperwhats filed his First Amended Answer And Counterclaims on October 13, 2009, naming KEMA USA as an additional counter-defendant.  D.I. 80.  The Counter-Defendants again moved to dismiss on October 29, 2009, and January 12, 2010.  D.I. 84 and 106.  On March 1, 2010, the Court made the issued rulings on the first motion, which it then adopted in its March 5, 2010 ruling regarding KEMA USA and Axmor.

- The counterclaims for copyright infringement, trade secret misappropriation, fraud and unfair competition were dismissed with leave to amend;
- The counterclaim for breach of contract against KEMA, Puckett and KEMA USA was dismissed with leave to amend;
- The counterclaim for intentional interference with prospective business advantage was dismissed without leave to amend;
- The affirmative defense for trademark misuse was dismissed with leave to amend; and
- The motion to strike the prayer for relief on the unfair competition counterclaim was denied as moot.

D.I. 122; see also D.I. 125.  The Court declined to rule on the personal jurisdiction issues raised by Puckett and KEMA USA due to its dismissal of the underlying counterclaims. Koperwhats filed his Second Amended Answer and Counterclaims on March 29, 2009.  D.I. 130.

## III.    LEGAL ARGUMENT.

### A.    Standards For A Motion To Dismiss Under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a challenge to the pleadings in which the moving party asserts that the pleading "fails to state a claim upon which relief can be granted."  Fed. R. Civ. Proc. 12(b)(6).  A complaint may properly be dismissed when it "exhibits a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Anthony v. Yahoo! Inc., 421 F. Supp. 2d 1257, 1260 (N.D. Cal. 2006) (internal quotations omitted).  Although well-pled factual allegations are to be accepted as true on a motion to dismiss, "only a complaint that

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).

Longstanding Ninth Circuit precedent has held that "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994); <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.), <u>cert. denied</u>, 454 U.S. 1031 (1981).  Additionally, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal</u>, 29 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555).  Where specific facts are pled in the complaint that are inconsistent with legal conclusions set forth in the pleading, the complaint is not "saved" by the legal conclusions.  <u>Weisbuch v. County of Los Angeles</u>, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

**B.     Koperwhats Fails To State A Claim For Copyright Infringement For The Third – And Hopefully Final – Time.**

**1.     Elements Of A Claim For Copyright Infringement.**

To prevail on a claim for copyright infringement under the Copyright Act, a party must prove: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" <u>Rice v. Fox Broad. Co.</u>, 330 F.3d 1170, 1174 (9th Cir. 2003) (quoting <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)).  The party must allege:

> "(1) the specific original work that is the subject of the copyright claim; (2) that the plaintiff owns the copyright on the work; (3) that the work in question has been registered in compliance with the statute; and (4) by what acts and during what time the defendant has infringed the copyright."

<u>Klinger v. Weekly World News, Inc.</u>, 747 F. Supp. 1477, 1481 (S.D. Fla. 1990).  Copyright infringement claims fail where "the registered work is not the same as the work which was supposedly infringed."  <u>I.M.S. Inquiry Mgmt. Sys., LTD. v. Berkshire Info. Sys., Inc.</u>, 307 F. Supp. 2d 521, 527 (S.D.N.Y. 2004); <u>Oravec v. Sunny Isles Luxury Ventures, L.C.</u>, 527 F.3d 1218, 1230 (2008).

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

**2.      Koperwhats Has Again Failed To Allege That His Registered Copyright Covers Visualize-IT.**

Even on this third effort, Koperwhats' allegations in the Second Amended Counterclaims concerning what precisely he purports is the subject of his copyright registration are unclear, most likely because he is so carefully trying to thread a needle to avoid dismissal.  Koperwhats first alleges that he "applied for registration of his copyright in the software source program encoded by the source code for ***Version 4.3*** of the energy analysis software referred to by RLW as Visualize-IT®, on June 23, 2008," and refers to the attached registration certificate.  SACC ¶ 92 (emphasis added).  A few paragraphs later, however, Koperwhats backtracks:

> "The ***source code of the EnergyProbe™ program***, from which the deposits for copyright registration were made, is similar to but ***not identical to***, Version 4.3 of Visualize-IT®, developed by Koperwhats."

SACC ¶ 95 (emphasis added).  As compared to the last version of his counterclaims, Koperwhats has not expressly alleged that he submitted source code for Version 3, but for the third time he has acknowledged that the EnergyProbe source code he purported to register with the Copyright Office was ***not*** identical to Version 4.3 of Visualize-IT.

Once the registration certificate itself (SACC, Exh. 4) comes into the mix, it becomes clear that this is more than simple confusion or sloppy pleading.  Certificate of Registration No. TX 6-920-412 purports to cover "EnergyVision" a work ***first published on June 16, 2008***, that does not purport to be derivative of or in any way related to any previously published or registered works.  Therefore, Registration No. TX 6-920-412 cannot relate to Visualize-IT as versions of those programs were published ***prior to*** June 16, 2008 – as Koperwhats himself has alleged:

- "Commencing in December, 1998, Koperwhats, while employed at RLW, conceived and developed an entirely new energy analysis software program, which RLW referred to as 'Visualize-IT® Version 2.0.'"  SACC ¶ 81.

- "In December 2001, Koperwhats resigned from RLW.  At the time of his departure from RLW, Koperwhats had developed additional versions of the Visualize-IT® program that he created, through Version 2.6.7."  SACC ¶ 82.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

- "Commencing in January 2002," RLW hired Koperwhats so "RLW could continue its use of the Visualize-IT® software developed by Koperwhats, subsequent to version 2.6.7, including Versions 3 through 4.3." SACC ¶ 84.

- "RLW provided Versions 3 and 4 under the trademark '"Visualize-IT®.'" SACC ¶ 87.

- "Visualize-IT 3.3 (final) was released this morning." SACC, Exh. 3 (email from Koperwhats to "toms" at RLW dated February 27, 2006).

- "Prior to June 2008, CounterDefendant RLW directed its clients to Koperwhats to obtain versions of Visualize-IT®. Koperwhats provided the software. . . . Koperwhats has not provided any downloads of the Visualize-IT® programs on the Miloslick website to any user since early June 2008." SACC ¶ 89.

By its terms and on the face of the registration certificate attached as Exhibit 4 to the Second Amended Counterclaims, Registration No. TX 6-920-412 pertains to an entirely original software program that was not published until June 16, 2008. Accordingly, Koperwhats has tried to circumvent this fatal problem by now contending, for the first time in this year-long litigation, that neither Visualize-IT nor the software he registered were ever published. See SACC ¶ 93 ("Koperwhats has filed an amendment to his Copyright registration to assert that the software has not been published.") This contention is directly at odds with what Koperwhats told the Copyright Office regarding publication in June 2008, and is contrary to what Koperwhats has told this Court in two previous amendments to his counterclaims.

Apparently the adage that "desperate times call for desperate measures" holds true. Koperwhats' contentions regarding the software he purports to own have changed dramatically not because any of his core underlying allegations have changed, but only because he is trying to cover older software with a copyright registration that on its face covers only an entirely new software program. His effort to fit his square peg of a registration into the round whole of an infringement claim fails for two basic reasons.

First, the only existing registration that Koperwhats has provided to support his claim states on its face that it pertains to software published on June 16, 2008. SACC, Exh. 4. Thus, the only registration on which this Court has based its jurisdiction does not presently

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC

6

cover any subject matter that is the basis for Koperwhats' infringement claims.  And contrary to Koperwhats' allegation that he has "filed an amendment," the Copyright Act does not allow for an existing registration to be amended.  Rather, Section 408 provides for "the filing of an application for supplementary registration."  17 U.S.C. § 408(d).  This is ***not an amendment***, as "[t]he information contained in a supplementary registration augments but does not supersede that contained in the earlier registration."  Id.  In fact, the supplementary registration will receive a new registration number and new certificate of registration.  See Copyright Office Circular 8 at 2 (provided for the Court's convenience as Attachment A).  No such supplementary registration has issued and accordingly, Koperwhats' copyright infringement claim fails as based on the existing registration.

Second, Koperwhats' belated contention that the software purportedly infringed was never itself "published" does not stand in the face of the very facts he has alleged in the Second Amended Counterclaims.[1]  Publication is defined in the Copyright Act as

> "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication."

17 U.S.C. § 101.  It is clear from the allegations in the Second Amended Counterclaims, many of which have been pled to this Court in three successive versions of the counterclaims, that Visualize-IT was published in **all** of its relevant versions.

The allegations that appear, and the ones that do not, in Koperwhats' Second Amended Counterclaims show that Visualize-IT was published within the meaning of the Copyright Act long before Koperwhats applied for his registration in June 2008.

---

[1]     Even were Koperwhats ever to prevail in establishing that his copyrighted software has never been published, the victory would be pyrrhic at best as the owner of an unpublished work enjoys no evidentiary presumption of validity.  Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2004 U.S. Dist. LEXIS 15668, *18-19 (S.D.N.Y. August 10, 2004).

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC

- "CounterDefendant RLW provided Versions 3 through 4.3 under the trademark "Visualize-IT®."  SACC ¶ 87.

- RLW customers did not need any registration code to run the software in "demonstration" mode.  Id.

- The Counter-Defendants "license, sell or otherwise distribute software they refer to as 'MBSS' to clients, which employs Visualize-IT® to permit analysis of data."  SACC ¶ 88.

- "Prior to June 2008, . . . RLW directed its clients to Koperwhats to obtain versions of Visualize-IT®," and "Koperwhats provided the software. . . ." SACC ¶ 89.

- Koperwhats later contends that *only* the "non-demonstration" versions of Visualize-IT "have never been made available to the public in any form," effectively acknowledging that at least the demo versions were published. SACC ¶ 93.

- "The software has been used internally by employees of RLW and KEMA, and licensed to their customers."  Id.

- The software was distributed to RLW's "licensed customers, to whom registration codes were issued."  SACC ¶ 161.

- Koperwhats contends that the list of 86 Visualize-IT users in the 2008 Settlement Agreement was under-inclusive, and that there were really even *more* users.  See, e.g., SACC ¶¶ 167, 217-21, 225.

- Nowhere does Koperwhats allege that there were any limitations on RLW's ability to distribute Visualize-IT as it wished prior to the Settlement Agreement in 2008.

- Nowhere does Koperwhats allege that any of the RLW customers who used Visualize-IT agreed to license terms restricting their ability to transfer ownership of their particular copy of Visualize-IT.

- Koperwhats obviously did not know who was using Visualize-IT before negotiating the 2008 Settlement Agreement and does not allege he sought to find out until the dispute with RLW arose that year.

Visualize-IT software was, in fact, published and that this happened long before June 16, 2008.  It therefore remains clear that the copyright registration Koperwhats has does not cover Visualize-IT, and the supplementary registration he is purportedly seeking also could not.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC

8

It is beyond dispute that software that is distributed to "thousands of licensees" is published.  Unix System Lab., Inc. v. Berkeley Software Design, Inc., 1993 U.S. Dist. LEXIS 19505, *35-36 (D. N.J. March 3, 1993).  Koperwhats would presumably not dispute this, and the Copyright Office is brimming with registrations for "published" commercial software.  But software need not be as ubiquitous as Unix to be "published" within the meaning of the Copyright Act.  It is sufficient that the software be marketed and provided to the customers who are willing pay for it.  See DaimlerChrysler Services v. Summit Nat'l, 2006 U.S. Dist. LEXIS 32049, *15-19 (E.D. Mich. May 22, 2006) (rejecting plaintiff's argument that leasing account software was not published because it was "provided only to licensees with limited rights to use").

Courts that have found distribution of copyrighted software to constitute only a "limited" publication for the purposes of the Copyright Act have done so under very different circumstances than the free-wheeling distribution alleged in the Second Amended Counterclaims.  See Hubco Data Prods. Corp. v. Mgmt. Assistance Inc., 1983 U.S. Dist. LEXIS 19515, * 17 (D. Id. Feb. 3, 1983) (software distributed only to owners of specialized computer systems and subject to a "very restrictive" license terms); Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2004 U.S. Dist. LEXIS 15668, *18 (S.D.N.Y. August 10, 2004) (software programs "created for the limited purpose of servicing defendants, and . . . tailored specifically for defendants' specific business needs"); The DBT Group, Inc. v. FMC Corp., 2001 U.S. Dist. LEXIS 14646, * (N.D. Il. Sept. 18, 2001) (restrictive license agreement and notices within the source code stated the work was "unpublished").

As alleged in Koperwhats' Second Amended Counterclaims, RLW distributed Visualize-IT to whomever it wished for years before June 2008.  Koperwhats did not even keep track of who was using the software, and contends now that there have been more than 86 users, none of whom he alleges were subject to any specific license terms before 2008.  As a result, Koperwhats' copyright infringement claim fails.  His existing registration clearly cannot cover the software published prior to June 2008.  And even were he to proffer a supplementary registration purporting to cover "unpublished" software, this registration

would likewise not cover the Visualize-IT program he contends the Counter-Defendants have infringed.

Koperwhats has now had three chances to plead a viable claim for copyright infringement and has failed to do so. This Court should now dismiss this claim with prejudice.

### 3.   Koperwhats Cannot Hold KEMA Or KEMA USA Liable.

In his Second Amended Counterclaims, Koperwhats includes general allegations concerning copyright infringement by KEMA (see, e.g., SACC ¶ 167). Koperwhats further alleges, on information and belief, that "KEMA, Inc. and KEMA, USA were aware of the copyright infringement by CounterclaimDefendants RLW, Puckett, and Axmor, and are responsible for and/or encourage the continuing infringing. . . ." SACC ¶ 136. Koperwhats has not, however, alleged any specific acts by KEMA or KEMA USA that constitute direct copyright infringement. Koperwhats himself admits that RLW has a "fully paid-up, non-exclusive, royalty-free and irrevocable license to use internally Versions 3 through 4 of Visualize-IT." SACC, Exh. 11 at §5.1. And RLW is free under the 2008 Settlement Agreement to assign its license rights. Id. at §12. KEMA and KEMA USA cannot infringe simply because RLW uses the software, and RLW is free to assign them its license in any event.

Likewise, Koperwhats has not alleged that any unauthorized third-party users *received* any copies of the software from RLW or any source *after* KEMA acquired RLW as of January 1, 2009. Koperwhats has alleged that there were unauthorized uses in 2009, but not that they resulted from distribution by KEMA or RLW in 2009. See, e.g., SACC ¶ 123. Even the alleged hiring of Axmor occurred, according to the Second Amended Counterclaims, in July 2008, *before* the acquisition. Id. at ¶ 130.

Bare and factually questionable allegations of corporate relationships with RLW are inadequate to plead a case of direct infringement against KEMA and KEMA USA. See, e.g., Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1554 (9th Cir. 1989) ("parent corporation cannot be held liable for the infringing actions of its subsidiary unless

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC

10

1   there is a substantial and continuing connection between the two with respect to the

2   infringing acts").  Koperwhats has attempted to allege that KEMA and KEMA USA now

3   control RLW (see SACC ¶¶ 138-144, 177), and that RLW has effectively become one with

4   KEMA, but has not alleged that KEMA effectively controlled or was merged with RLW

5   *before 2009*.  Koperwhats has made no specific allegations as to direct infringement by

6   RLW in 2009, after the acquisition, and so has failed to allege a cause of action against

7   KEMA for direct infringement.

8          Koperwhats has likewise failed to state a claim against KEMA and KEMA USA for

9   vicarious copyright infringement.  Parties claiming vicarious infringement must allege a

10  right to supervise and a direct financial interest in the outcome of the infringing activity.  As

11  the Ninth Circuit has held:

12              "To state a claim for vicarious copyright infringement, a plaintiff must
               alleged that the defendant has (1) the right and ability to supervise the
13              infringing conduct and (2) a direct financial interest in the infringing
               activity."
14

15  Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 802 (9th Cir. 2007) (citing Ellison v.

16  Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004) and A&M Records, Inc. v. Naptster, Inc.,

17  239 F.3d 1004, 1022 (9th Cir. 2001)).  The Second Amended Counterclaims contain no

18  meaningful alter ego allegations, beyond the thin allegations such as those in Paragraph 134.

19  Although pleading on "information and belief" may be sufficient for some claims, claims for

20  copyright infringement must be pled with specificity.  See, e.g., Fountain v. Talley, 104 F.

21  Supp. 2d 1345, 1355 (M.D. Ala. 2000); Brought to Life Music, Inc. v. MCA Records, Inc.,

22  2003 U.S. Dist. LEXIS 1967 at *3 (S.D.N.Y. Feb. 11, 2003).  And again, Koperwhats has

23  not alleged any control of RLW by KEMA prior to 2009.  Accordingly, Koperwhats' claim

24  for vicarious infringement against KEMA also fails.

25          **C.     Koperwhats Fails To State A Claim For Trade Secret Misappropriation.**

26          California's Uniform Trade Secrets Act ("UTSA") provides remedies for

27  misappropriation of trade secrets.  See California Civil Code §§ 3426.2 and 3426.3.  A

28  "trade secret" is "information,  . . . that:  (1) Derives independent economic value, actual or

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   potential, from not being generally known to the public or to other persons who can obtain

2   economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable

3   under the circumstances to maintain its secrecy."  California Civil Code § 3426.1(d).  The

4   UTSA defines "misappropriation" in relevant part as "Disclosure or use of a trade secret of

5   another without express or implied consent by a person who . . . (B) At the time of disclosure

6   or use, knew or had reason to know that his or her knowledge of the trade secret was . . .

7   (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its

8   use . . . ."  California Civil Code § 3426.1(b).

9           In this Court's March 1, 2010 Order dismissing the First Amended Counterclaims,

10  the Court discounted the significance of Koperwhats' submission of Version 4.3 source code

11  with his copyright application as the trade secret claim is based on Version 3 code.  See

12  7:28-8:3.  In the Second Amended Counterclaims, however, Koperwhats seeks to obfuscate

13  the distinction between the various versions by seeming to claim that all were unpublished

14  so that his copyright can cover them all.  Accordingly, the arguments raised in the Counter-

15  Defendants' previous motions concerning the code submitted to the Copyright Office still

16  warrant consideration.  See D.I. 84 at 11-12.

17          But as this Court noted in its last Order, the more significant issue is that a failure to

18  secure non-disclosure agreements covering the remaining source code is fatal to a trade

19  secret claim.  Id. at 8:3-13, citing Cinebase Software, Inc. v. Media Guaranty Trust, Inc.,

20  1998 WL 661465, *11 (N.D. Cal. 1998).  The difficult truth for Koperwhats with respect to

21  this claim is that he never sought nor obtained any non-disclosure agreement from RLW, any

22  of the other Counter-Defendants, or any of the Visualize-IT customers.  Even in his third

23  attempt to state a trade secret claim, Koperwhats alleges that he provided RLW with "source

24  code of Versions 3 through 4," and attaches a transmission email as Exhibit 3.  SACC ¶ 90,

25  Exh. 3.  There is no allegation and no indication in the attached email that this disclosure of

26  source code was made pursuant to any confidentiality obligations.  Koperwhat has not and

27  cannot allege that he had a non-disclosure agreement with RLW because he clearly states

28  that "[t]here was no agreement, oral or written, with respect to the relationship between the

1   parties until Koperwhats ceased providing services in 2008"  SACC ¶ 84.  And the only

2   agreement between the parties that Koperwhats alleges is the October 2008 Settlement

3   Agreement, which itself contains no non-disclosure provisions or mention of any such

4   previous obligations.  Id., Exh. 11.

5          The Court has generously allowed Koperwhats to amend his trade secret claim twice,

6   and the time has now come for the Court to dismiss this claim with prejudice.

7          **D.      Koperwhats Fails To State A Claim For Breach Of Contract Against**

8                   **KEMA, Curt Puckett Or KEMA USA.**

9          To state a claim for breach of contract, a plaintiff must allege the following essential

10  elements:  (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

11  defendant's breach, and (4) the resulting damages to plaintiff."  Westways World Travel v.

12  AMR Corp., 182 F. Supp. 2d 952, 963 (C.D. Cal. 2001) (quoting Reichert v. Gen. Ins. Co. of

13  America, 68 Cal. 2d 822, 830 (1968)).  If the action is based on an alleged breach of a

14  written contract, the terms must be set out verbatim in the body of the complaint, or a copy

15  of the written contract must be attached to the complaint and incorporated by reference.  FPI

16  Dev., Inc. v. Nakashima, 231 Cal. App. 3d 367, 383 (1991); Otworth v. Southern Pac.

17  Transp. Co., 166 Cal. App. 3d 452, 458-59 (1985); see also CAL. CIV. PROC. CODE

18  §430.10(g).  In addition, to state a claim, Plaintiff must show that he has fulfilled his

19  obligations and complied with any and all conditions and agreements of the supposed

20  contract.  Pry Corp. of America v. Leach, 177 Cal. App. 2d 632, 639-40 (1960).

21         This Court has twice held that Koperwhats must provide allegations establishing an

22  "alter ego" relationship with RLW to state a claim for breach of contract against either

23  KEMA or Puckett.  D.I. 76 at 13:21-26, and D.I. 122 at 8:18-10:3 (both citing Flynt Distrib.

24  Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1999).  Although Koperwhats' Second

25  Amended Counterclaims attempt to plead additional "facts" regarding a purported alter ego

26  relationship, it is clear that these are still nothing more than bare recitations of factors from

27  the case law.  See SACC ¶ 139.  There is no indication in the pleadings as to how

28  Koperwhats could possibly know any of the conclusory facts alleged.  When "[n]o facts – as

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC                                                                                13

opposed to conclusory assertions – have been pleaded to support the alter ego theory," the attempt to impose liability fails. Eclectic Prop. East, LLC v. The Marcus & Millichap Co., 2010 U.S. Dist. LEXIS 7381, * (N.D. Cal. January 29, 2010); see also Iqbal, 129 S. Ct. at 1950 (determining whether a claim is "plausible" "requires the reviewing court to draw on its judicial experience and common sense").

Koperwhats cannot plead breach of contract against any Counter-Defendant other than RLW. Therefore, the Court should now dismiss with prejudice the breach of contract claim as asserted against KEMA, Puckett and KEMA USA.

**E.      Koperwhats Fails To State A Claim For Fraud.**

To state a claim for fraud under California Civil Code section 1709, a claimant must allege: "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997) (internal quotation marks omitted); see also  Molko v. Holy Spirit Ass'n., 46 Cal. 3d 1092, 1108 (1988).    As in his original counterclaims and his amended counterclaims, Koperwhats focuses on Exhibit A to the 2008 Settlement and License Agreement ("Agreement") as the primary "statement" that forms the basis for his second amended fraud counterclaim.  On two prior occasions – in its September 10, 2009 Order (D.I. 76) and in its March 1, 2010 Order (D.I. 122) -- this Court rejected Koperwhats' fraud counterclaim on the ground that,  contrary to  Koperwhats' allegations, Exhibit A to the Agreement ***does not*** contain a list of all entities to which RLW had distributed Versions 3 through 4 of Visualize-IT and, on the independent bases, that Koperwhats failed to adequately allege reliance on any of the other statements he identified outside of the Agreement, or that he had suffered any loss or damage" as a result of such reliance.  D.I. 122 at 10.  As the Court has now twice explained, the Agreement "merely grants a license to use such software [Versions 3 though 4 of Visualize-It]" to those third parties – nowhere does it contain any representation, warranty or agreement that the list reflects third party recipients

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1  of Visualize-It.  Thus, Exhibit A cannot serve as a source of a fraudulent statement upon

2  which to base this cause of action.

3       Notwithstanding the Court's prior rulings, in his third bite at the apple, Koperwhats

4  continues to adhere to the fiction that the Agreement says something other than what it

5  actually says, as he seeks to save his fraud cause of action by recasting it as a "fraud in the

6  inducement" claim.  For the same reasons that the Court previously articulated, Koperwhats

7  base his fraud claim on a term of the Agreement.  Moreover, the other alleged statements

8  which Koperwhats identifies as a basis for the fraud cannot support his claim.

9              **1.    The "Exhibit A" List Of Licensees.**

10       In support of this new "spin" on his old theory,  Koperwhats relies on an

11 interpretation of the Agreement that this Court has already twice rejected -- that Exhibit A to

12 the Agreement was intended to be a ***representation*** of the third party users of Visualize-IT

13 rather a term of the Agreement.  See SACC ¶¶ 107, 115, 117, 219, 222 and 225.  The Court

14 need not look any further than its prior Orders to expose the fallacy of his argument.  The

15 Agreement does not provide that Exhibit A contains a list of recipients of Visualize-IT; it is

16 a term of an agreement rather than a representation of fact.  D.I. 122 at 10.  No matter how

17 many times Koperwhats alleges that this is not so, this will not change.  As such,

18 Koperwhats' fraud counterclaim should now be dismissed with prejudice.

19          **2.      The June 2008 Statement Regarding The Number Of Users.**

20       Koperwhats also alleges that a June 2008 representation by Puckett that "RLW had

21 only '34 active licenses' of Versions 3 through 4 of the Visualize-IT® software" was "an

22 intentional misrepresentation by Puckett of the then-existing client users of the software,

23 intended to induce reliance on an inaccurate number of users so that Koperwhats would enter

24 a settlement with RLW, and accept a lower amount of compensation in such settlement."

25 SACC ¶ 217.  The June 2008 representation by. Puckett, however, cannot serve as the basis

26 for a fraud claim for a number of reasons.

27

28

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;     15
CASE NO. C-09-1587 MMC

### a.     Koperwhats Received Contradictory Information.

Koperwhats' own allegations demonstrate that he could not rely upon the June 8 statement of the number of users because he received other information that there were ***more*** than 34 users.  See SACC, Exhibit 10 at 2 (June 10, 2008 e-mail from. Puckett indicating the existence of 28 additional users who received free licenses).  Indeed, Koperwhats has further alleged his as of October 2008, he understood there were ***86*** users.  SACC, ¶ 108.

Koperwhats also attaches as an exhibit to his Second Amended Counterclaims an October 9, 2008 email from his counsel to RLW's counsel that Koperwhats was "not happy with the actual numbers on Exhibit A."  SACC, Exh. 22 at 5.  Koperwhats' counsel goes so far as to note in this email that RLW had previously  "represented to my client that there were far fewer clients using the technology" and, that as of that point in time in the negotiation (September 2008), "[t]here isn't much of [trust] on either side, correct?"  Id. at 4.

In short, Koperwhats has acknowledged that he was advised and understood that there were more than 34 before entering into the Agreement.  He also cannot benefit from the inference that he was relying upon RLW's earlier statement at the same time he acknowledges that he did not trust RLW.

### b.     The 2008 Agreement Contains An Integration Clause.

Even if Koperwhats could overcome the "reliance" hurdle, he cannot overcome the plain language of the Agreement, which bars Koperwhats from relying upon earlier statements.  Section 17 of the Agreement contains a merger and integration clause:

> This Settlement Agreement constitutes a single, integrated written contract expressing the entire agreement of [sic] relative to the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party hereto, except as specifically set forth therein.  All prior discussions and negotiations, whether written or oral, have been and are merged and integrated into, ***and are superseded by***, such integrated written agreement.

SACC, Exh. 11, § 17 (emphasis added).  As previously noted (and as twice determined by the Court), the Agreement does not contain any representations as to the number of licensed.  Nor are there any representations elsewhere in the Agreement.  The integration clause of §

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

17 effectively bars Koperwhats' claim.[2]  See, e.g., The Goodyear Tire & Rubber Company

vs. Murphy's Inc., 1992 U.S. Dist. LEXIS 13469 (N.D. Cal., July 14, 1992) (enforcing

integrated agreement as the final, complete and exclusive agreement of the parties).

### 3.     Puckett's February 2009 Email.

Even though it was previously rejected in the Court's September 10, 2009 and March

1, 2010 Orders (D.I 76 at 15:13-16:1 and D.I. 122 at 11:22-12:23), Koperwhats rehashes his

prior argument that the user information provided by Puckett via email in February 2009, in

response to Koperwhats' request for an update about new registration information,

constitutes an additional misrepresentation.  SACC ¶ 118, Exh. 14.  Koperwhats has again

failed to allege facts to support his contention that he reasonably relied upon this

communication or that he has suffered any loss or damages as a result.

Instead, Koperwhats alleges that he sent his February 11, 2009 email "because RLW

had not complied with its obligations under the 2008 Settlement Agreement. . . ."  SACC ¶

126.  He alleges that upon reviewing Puckett's February 17 response, he "determined that

the list of clients and their registered users was not the same as the list provided in Exhibit A

of the 2008 Settlement Agreement. . . ."  Id. at ¶ 127.  He then proceeded to undertake an

elaborate analysis involving Apache web access logs and IP addresses specifically

"[b]ecause of the discrepancies between Puckett's response and Exhibit A. . . ."  Id. at ¶¶

128.  Koperwhats then had his counsel promptly start to demand further information,

followed by a "cease and demand letter to KEMA, Inc.'s counsel on March 5, 2009. . . ."  Id.

at ¶¶ 146-148.  So it is more clear than ever that Koperwhats in no way relied on any aspect

of Puckett's February 17, 2009 email.

Indeed, the most that Koperwhats alleges with respect to the February 17 email is

that he deferred legal action (SACC ¶ 235) until he was sued first.  But he does not allege

facts which demonstrate how that resulted in any damage to him, nor how the email deterred

---

[2]     The Agreement also contains a **release** from Koperwhats to RLW and its related parties for all claims that may have existed as of the date of the Agreement, including known and unknown claims.  So even if Koperwhats could have relied on the June statement, he effectively released that claim by entering into the Agreement.  SACC, Exh. 11, §§ 6-7.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   him from filing a preemptive lawsuit.  In fact, it was his own counsel's cease and desist letter

2   in the weeks following receipt of Puckett's February 17 email that firmly established the

3   basis for a controversy with KEMA and RLW.  His counsel surely knew that this letter

4   would set up a declaratory relief claim filed by KEMA and RLW, even if Koperwhats

5   himself did not.

6        The time has come to take Koperwhats' feeble fraud claim off the table and allow the

7   parties and court to focus on the only real counterclaim, breach of contract against RLW.

8        **F.        Koperwhats Fails To State A Claim For Unfair Competition.**

9        Koperwhats' unfair competition counterclaim under California Business and

10  Professions Code section 17200 is premised entirely on his counterclaims for copyright

11  infringement, trade secret misappropriation, fraud and breach of contract, as well as a

12  contorted theory of trademark misuse.  See SACC ¶¶ 242, 243, 245.  As this Court has now

13  held twice, the unfair competition counterclaim fails if these underlying counterclaims fail.

14  D.I. 76 at 16:7-24; D.I. 122 at 12:25-13:17.  Moreover, breach of contract can form the basis

15  for an unfair competition claim "only if the breach 'also constitutes conduct that is unlawful,

16  unfair, or fraudulent.'"  D.I. 76 at 13:7-9 (quoting <u>Puentes v. Wells Fargo Home Mortgage,

17  Inc.</u>, 160 Cal. App. 4th 638, 645 (2008); internal quotation and citation omitted).

18  Koperwhats' Second Amended Counterclaims for copyright infringement, trade secret

19  misappropriation, fraud and breach of contract have all failed – again – as set forth above.

20       Moreover, Koperwhats' nonsensical allegations in Paragraphs 252 and 253 that

21  Counter-Defendants have committed "unfair business practices by applying their trademark

22  'Visualize-IT®' . . . on Versions 3 and 4 of the software that are copyrighted and owned by"

23  Koperwhats is inconsistent with the related allegations in the Second Amended

24  Counterclaims.  See SACC ¶ 89 ("no version of Visualize-IT® is currently available on the

25  internet website <u>www.kema.com</u>"), Exh. 7 (purported printout of KEMA webpage regarding

26  Visualize-IT mentions no versions and does not make software available for download).

27  Likewise, Koperwhats' new contention in Paragraph 253 that the Counter-Defendants have

28  employed unfair business practices "in asserting a claim for trademark infringement of an

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   invalid and unenforceable mark" is clearly extinguished by the most basic principles of the

2   litigation privilege.  Cal. Civ. Code § 47(b).

3       As Koperwhats cannot state any theory of relief under California Business and

4   Professions Code section 17200, *et seq.*, this Court should now dismiss this claim without

5   leave to amend.

6       **G.    The Court Should Strike Koperwhats' Claims For Compensatory**
        **Damages On The Unfair Competition Counterclaim.**

7

8       In addition to injunctive relief, Koperwhats seeks "restitution" for "injury to its [sic]

9   business, good will and property."  SACC ¶¶ 257; <u>see also</u> Prayer 10.  He also purports to

10  seek "actual compensatory damages" for purported unfair competition.  Prayer 8.  This Court

11  should strike the portions of the Second Amended Counterclaims seeking compensatory

12  damages for unfair competition, as well as relief in the form of "restitution," because

13  Koperwhats is seeking damages that are unavailable for this cause of action.  A claim for

14  statutory unfair competition can result only in the relief specified by California Business &

15  Professions Code section 17203, which provides for injunction or restitution.  <u>See also</u>

16  <u>Cortez v. Purolator Air Filtration Prod. Co.</u>, 23 Cal. 4th 163, 179-80 (2000); <u>Korea Supply</u>

17  <u>Co. v. Lockheed Martin Co.</u>, 29 Cal. 4th 1134, 1144, 131 Cal.Rptr.2d 29 (2003) (remedies are

18  "limited" and do not provide for damages, only injunctive relief and restitution).  Clearly,

19  this Court must strike Koperwhats' prayer for compensatory damages on his unfair

20  competition counterclaim

21      To the extent Koperwhats nominally seeks "restitution," such relief is not available

22  because he is not seeking the return of money that was obtained by means of alleged unfair

23  competition.  <u>See, e.g.</u>, <u>In re: Napster, Inc. Copyright Litig.</u>, 354 F. Supp. 2d 1113, 1126-27

24  (N.D. Cal. 2005).  It has long been established that "[d]amages are not available to private

25  plaintiffs under the California unfair competition statute."  <u>Xerox Corp. v. Apple Computer,</u>

26  <u>Inc.</u>, 734 F. Supp. 1542, 1550 n.14 (N.D. Cal. 1990).  The California Supreme Court clarified

27  that, pursuant to California Business & Professions Code section 17200 <u>et seq.</u>, "an

28  individual may recover profits unfairly obtained to the extent that these profits represent

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   monies given to the defendant or benefits in which the plaintiff has an ownership interest."

2   Id. at 1148.

3          Koperwhats alleges in his Second Amended Counterclaims that the Counter-

4   Defendants "have obtained . . . revenues and business goodwill and opportunities, for which

5   CounterPlaintiff should rightfully have been compensated."  SACC ¶ 254.  This is not unjust

6   enrichment – but rather commercial conduct that Koperwhats contends has caused him lost

7   opportunities.  Thus, Koperwhats is trying to re-style a demand for damages as one for

8   restitution.

9          The court in Korea Supply further noted that an action pursuant to California

10   Business & Professions Code section 17200 et seq. is not an "all-purpose substitute for a tort

11   or contract action" but rather is a process for preventing "ongoing or threatened acts of

12   unfair competition."  Korea Supply, 29 Cal. App. 4th at 42-43.  Clearly, Koperwhats' prayer

13   for "actual compensatory damages for . . . unfair competition" should be stricken from the

14   Second Amended Counterclaims.  Likewise, to the extent he seeks "restitution," he is

15   actually seeking damages in an attempt to force failed copyright, fraud and breach of

16   contract counterclaims into a claim for unfair competition under section 17200.

17   Accordingly, this Court should strike the prayer for restitution as well.

18          **H.**      **There Is No Personal Jurisdiction Over Puckett Or KEMA USA.**

19               **1.**      **Standards For Personal Jurisdiction.**

20          In this action, Koperwhats bears the burden of establishing that this Court has

21   personal jurisdiction over Counter-Defendants Puckett and KEMA USA.  See, e.g., Cubbage

22   v. Merchant, 744 F.2d 665, 667 (9th Cir. 1984), cert. denied, 470 U.S. 1005 (1985); Doe v.

23   Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2007); SiVault Sys., Inc. v. Hypercom Corp., 2007

24   U.S. Dist. LEXIS 55114 at *4 (N.D. Cal. July 18, 2007).  Personal jurisdiction in federal

25   courts is determined by reference to the law of the state in which the court sits.  Thos. P.

26   Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1250 (9th

27   Cir. 1980).  California's "long arm jurisdiction" statute provides that a "court of this state

28   may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC

20

of the United States."  Cal. Code Civ. Proc. § 410.10.  "For a court to exercise personal

jurisdiction over a nonresident defendant, that defendant must have at least 'minimum

contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend

traditional notices of fair play and substantial justice.'"  Schwarzenegger v. Fred Martin

Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326

U.S. 310, 316 (1945)).

The United States Supreme Court has emphasized that only the defendant's

purposeful activities in the forum state, and not those of the plaintiff, can justify the exercise

of personal jurisdiction.  Hanson v. Denckla, 357 U.S.  235, 253 (1958).  General

jurisdiction exists where the defendant has "'substantial' or 'continuous and systematic'

contacts with the forum state," which is a "fairly high standard to meet."  Fields v. Sedgwick

Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986) (internal citations omitted).  If a

defendant's activities in a forum are not extensive enough to subject that defendant to

general jurisdiction, the court will analyze the existence of specific jurisdiction in light of the

defendant's activities with respect to the causes of action at issue.  See Thos. P. Gonzalez

Corp., 614 F.2d at 1247.

**2.      Koperwhats Cannot Establish That This Court Has General Jurisdiction Over Puckett Or KEMA USA.**

Koperwhats has no way of establishing general jurisdiction over either Puckett or

KEMA USA.  In the Ninth Circuit, "the level of contact with the forum state necessary to

establish general jurisdiction is quite high."  Shute v. Carnival Cruise Lines, 897 F.2d 377,

380 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991).  Occasional activities or

visits to the forum state are insufficient.  See, e.g., Helicopteros Nacionales de Columbia v.

Hall, 466 U.S. 408, 410-11 (1984) (insufficient contact with forum state despite sales

negotiations, equipment purchase and training of personnel in the forum); Gates Learjet

Corp. v. Jensen, 743 F.2d 1325, 1330-31 (9th Cir. 1984) (no general jurisdiction over

defendant who visited and made purchases in forum state, solicited a contract and had

extensive communications there); Schwarzenegger, 374 F.3d at 301 (purchases of cars

1    imported by California entities, retaining California-based marketing company, and hiring

2    California sales training were insufficient to establish general jurisdiction).

3         Koperwhats cannot meet the standards for general jurisdiction with respect to

4    Puckett, who is a Michigan resident and has been so continuously since approximately 1991.

5    D.I. 22, Puckett Decl. ¶ 4.[3]  He has never resided in California or had his place of business

6    there.  <u>Id</u>. at ¶ 7.  He owns no property in California and has no personal business operations

7    in this state beyond those of his employer, KEMA.  <u>Id</u>.  In fact, he comes to California only a

8    handful of times each year.  <u>Id</u>. at ¶ 8.  This simply does not constitute the high level of

9    contact required for general jurisdiction.

10        Similarly, Koperwhats cannot establish the existence of general jurisdiction over

11   KEMA USA.  KEMA USA is a Delaware corporation headquartered in Pennsylvania, and it

12   has no employees, property or business activities in California.  D.I. 107, Madden Decl. at ¶¶

13   2, 4.  In fact, KEMA USA is simply a holding company whose only assets are the stock of its

14   subsidiaries, some cash and debt holdings.  <u>Id</u>. ¶ 3.  Its subsidiaries, some of who do business

15   in California, are completely separate corporations with their own boards, management and

16   record-keeping.  <u>Id</u>. at ¶ 5.  KEMA USA has no control over its subsidiaries' internal affairs

17   or daily operations.  <u>Id</u>.  Accordingly, there is no basis whatsoever for general jurisdiction

18   over KEMA USA in this action.

### 3. Koperwhats Cannot Establish That This Court Has Specific Jurisdiction Over Puckett Or KEMA USA.

#### a. Standards for Specific Jurisdiction.

22        Koperwhats also cannot establish specific jurisdiction over Puckett and KEMA USA.

23   The Ninth Circuit has set forth a three-part test to evaluate the nature and quality of a

24   defendant's contacts in order to determine the availability of specific jurisdiction:

25        (1)  The nonresident defendant must do some act or consummate some

---

[3]     The declarations of Mr. Puckett and Mr. Madden were filed in support of the
previous motions to dismiss for lack of personal jurisdiction, and are provided again for the
Court's convenience as Attachments B and C hereto.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;

(2) Plaintiff's claim must be one which arises out of or results from the defendant's forum-related activities;

(3) Exercise of jurisdiction must be reasonable.

Unocal, 248 F.3d. at 923 (citing Gordy v. Daily News, L.P., 95 F.3d 829, 831-32 (9th Cir. 1996)). If a claimant meets the burden on the first two factors, the burden shifts to the defendant to show that the exercise of jurisdiction is unreasonable. Schwarzenegger, 374 F.3d at 802.

### b. There Is No Specific Jurisdiction Over Puckett.

Koperwhats cannot show that Puckett has purposefully availed himself of the privilege of conducting activities in California beyond his past affiliation with a California corporation. Puckett did visit California periodically in connection with his responsibilities at RLW, but those contacts were sparing at best and he has no personal business relations in this state. D.I. 22, Puckett Decl. ¶¶ 7-8.

Koperwhats may argue that Puckett's status as an officer of RLW, a California corporation, automatically confers personal jurisdiction upon a California-based court. This is untrue as a matter of law. See, e.g., Rollins Burdick Hunter of So. California, Inc. v. Alexander & Alexander Services, Inc., 205 Cal. App. 3d 1, 8 (1988) (no personal jurisdiction over CEO with office and residence in other states, no residence or other property in California, and only periodic visits to the state); Colt Studio, Inc. v. Badpuppy Enter., 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) ("For jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for the purposes of establishing the minimum contacts as to the individuals;" citing Shearer v. Superior Court, 70 Cal. App. 3d 424, 430 (1977)).

In other words, to subject Puckett to personal jurisdiction, the Court must look at the specific conduct alleged to determine if his contacts with California are sufficient. A simple examination of the allegations of the Second Amended Counterclaims and the Puckett

1   Declaration indicate that there can be no specific jurisdiction for this individual.

2   Koperwhats' counterclaims pertain to Puckett's conduct with respect to Koperwhats, the

3   Visualize-IT software and the 2008 Settlement Agreement.  Puckett's personal dealings with

4   Koperwhats primarily took place during a time when Koperwhats was residing in New

5   Jersey, and Puckett has not met with Koperwhats in California since at least late 2001.  D.I.

6   22, Puckett Decl. ¶ 9.  Puckett has not visited California on business relating to the

7   Visualize-IT software.  Id. at ¶ 8.  And Puckett had no personal communications with

8   Koperwhats concerning the negotiation of the 2008 Settlement Agreement.  Id. at ¶ 10; See

9   also SACC, Exhs. 24-25 (negotiations between the parties' respective counsel).

10          The only remaining basis for specific jurisdiction over Puckett is his email

11  communication with Koperwhats, which by itself is insufficient to establish personal

12  jurisdiction.  See Boschetto v. Hansing, 539 F.3d 1011, 1023 n.6 (9th Cir. 2008) (concurring

13  opinion by Judge Rymer, citing Burger King Corp. v. Rudezewicz, 471 U.S. 462, 474

14  (1985)) ("Even if Hansing knew Boschetto was in California when he sent the . . . email, the

15  email was not sufficient to subject him to personal jurisdiction there.  It established only a

16  limited contact, and Hansing sent it because Boschetto won the auction, not because he was

17  in California.").

18          Although the foregoing is dispositive, it is also clear that it would be unreasonable to

19  subject Puckett to litigation in California.  In considering the reasonableness of subjecting a

20  defendant to the jurisdiction of a court in a distant forum, courts consider a variety of factors:

21              "(1) the extent of the defendant's purposeful interjection into the
22              forum state's affairs; (2) the burden on the defendant of defending in
                the forum; (3) the extent of conflict with the sovereignty of the
23              defendant's state; (4) the forum state's interest in adjudicating the
                dispute;" (5) the most efficient judicial resolution of the controversy;
24              (6) the importance of the forum to the plaintiff's interest in convenient
                and effective relief; and (7) the existence of an alternative forum."
25

26  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir.

27  2003).  Were the Court even to reach this analysis, these factors weigh strongly against

28  personal jurisdiction over Puckett.  Puckett has not interjected himself into the affairs of

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC                                                                      24

California; the burden of litigation in a distant forum would be considerable for an individual; California's interest is no greater than that of the state where Puckett resides; this action can be efficiently resolved without Puckett's involvement as a party; and, even if Koperwhats truly needs to pursue relief against Puckett in order to vindicate his rights, there is an alternate forum available in Michigan.

### c.     There Is No Specific Jurisdiction Over KEMA USA.

Koperwhats cannot show that KEMA USA has purposefully availed itself of the privilege of conducting activities in California because KEMA USA has no business activities, property or employees in California.  Likewise, Koperwhats alleges no specific forum-related activities by KEMA USA that give rise to his claims, and appears to have named KEMA USA as a new counter-defendant only as part of a misguided and legally confused effort to hold KEMA responsible for alleged misconduct by RLW.

As with Puckett, it would be unreasonable to subject KEMA USA to litigation in California as the Harris Rutsky factors again weigh strongly against personal jurisdiction. KEMA USA has not interjected itself into the affairs of California; the burden of litigation in a distant forum would be considerable; California's interest is no greater than that of the states where KEMA USA is incorporated or headquartered; this action can be efficiently resolved without KEMA USA's involvement as a party; and, even if Koperwhats truly needs to pursue relief against KEMA USA in order to vindicate his rights, there are alternate forums in other states.

## IV.     CONCLUSION.

For the reasons set forth above, this Court should grant the present motion in its entirety.

Dated:  April 23, 2010                    GCA LAW PARTNERS LLP

By: /s/ Valerie M. Wagner
_____
Valerie M. Wagner

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS AND STRIKE SECOND AMENDED COUNTERCLAIMS;
CASE NO. C-09-1587 MMC

25