United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEMA, INC., et al.,

      Plaintiffs,

 v.

WILLIAM KOPERWHATS, et al.,

      Defendants.

_____/

And related counterclaims.

_____/

No. C-09-1587 MMC

**ORDER GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANTS KEMA USA, INC., KEMA, INC., RLW ANALYTICS, INC., AND CURT PUCKETT'S MOTION TO DISMISS AND TO STRIKE COUNTERCLAIM PLAINTIFF'S SECOND AMENDED ANSWER AND COUNTERCLAIMS; GRANTING COUNTERCLAIM DEFENDANT AXMOR'S MOTION TO DISMISS**

      Before the Court is counterclaim defendant KEMA USA, Inc. ("KEMA USA"), counterclaim defendant KEMA, Inc. ("KEMA"), counterclaim defendant RLW Analytics, Inc. ("RLW"), and counterclaim defendant Curt Puckett's ("Puckett") (collectively "KEMA Defendants") joint Motion to Dismiss and Motion to Strike Second Amended Counterclaims ("KEMA Mot."), filed April 23, 2010.  Counterclaim plaintiff William Koperwhats ("Koperwhats") has filed opposition, to which KEMA Defendants have replied.  Also before the Court is counterclaim defendant Axmor Software-America, Inc.'s ("Axmor") Motion to Dismiss Second Amended Counterclaim ("Axmor Mot."), filed April 23, 2010.  Koperwhats has filed opposition to which Axmor has replied.

      Having read and considered the papers filed in support of and in opposition to the

1  motions, the Court deems the matters appropriate for determination on the parties' written

2  submissions and rules as follows.[1]

3  **BACKGROUND**

4  By the instant pleading, Koperwhats, a software programmer, alleges KEMA

5  Defendants breached a licensing agreement, improperly distributed Koperwhats'

6  proprietary software and source code, and misused the trademark "Visualize-IT."

7  Koperwhats asserts as against KEMA Defendants the following causes of action: Copyright

8  Infringement (First Cause of Action); Violation of California Uniform Trade Secrets Act

9  (Second Cause of Action); Breach of Contract (Third Cause of Action); Intentional Fraud

10  (Fourth Cause of Action); Unfair Competition Under Cal. Bus. & Prof. Code § 17200 (Fifth

11  Cause of Action); and Cancellation of Plaintiffs' Registered Trademark (Sixth Cause of

12  Action).  Koperwhats alleges Axmor improperly copied and misappropriated his proprietary

13  software and source code, and asserts, as against Axmor, his First, Second, and Fifth

14  Causes of Action.

15  By Order filed March 1, 2010, each of Koperwhats' causes of action as alleged in his

16  First amended Answer and Counterclaims ("FACC"), with the exception of his breach of

17  contract claim as alleged against RLW and his claim for cancellation of trademark, was

18  dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (see Order

19  filed Mar. 1, 2010 ("Mar. 1 Order") at 15:19-16:12), and Koperwhats was granted leave to

20  amend (see id.).[2]  On March 26, 2010, Koperwhats filed his Second Amended Answer and

21  Counterclaims ("SACC"), realleging each of his previous counterclaims with the exception

22  of his claim for intentional interference with prospective business advantage (see SACC ¶¶

23  158-262).

24  KEMA Defendants seek as to all KEMA Defendants, pursuant to Rule 12(b)(6),

25  dismissal of each of Koperwhats' counterclaims with the exception of the Third Cause of

26

27  [1] By Order filed May 26, 2010 the Court took the matters under submission.

28  [2] Additionally, Koperwhats' Fourth Affirmative Defense was stricken without leave to amend.  (See Mar. 1 Order at 15:10-11.)

1    Action as alleged against RLW and the Sixth Cause of Action.  Additionally, KEMA USA

2    and Puckett contend the Court lacks personal jurisdiction over them and move for dismissal

3    pursuant to Rule 12(b)(2).  Lastly, KEMA Defendants seek an order striking portions of

4    Koperwhats' prayer for relief.

5         Axmor, by its motion, seeks dismissal of Koperwhats' First, Second, and Fifth

6    Causes of Action pursuant to Rules 12(b)(2) and 12(b0(6).

7                                   **LEGAL STANDARD**

8         **1.    Rule 12(b)(6)**

9         Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

10   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

11   cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

12   1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

13   showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

14   544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by

15   a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

16   Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

17   requires more than labels and conclusions, and a formulaic recitation of the elements of a

18   cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

19        In analyzing a motion to dismiss, a district court must accept as true all material

20   allegations in the complaint, and construe them in the light most favorable to the

21   nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

22   "To survive a motion to dismiss, a complaint must contain sufficient factual material,

23   accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

24   129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations

25   must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S.

26   at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

27   allegation."  See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

28        Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any

                                          3

material beyond the complaint.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896

F.2d 1542, 1555 n.19 (9th Cir. 1990).  Documents whose contents are alleged in the

complaint, and whose authenticity no party questions, but which are not physically attached

to the pleading, however, may be considered.  See Branch v. Tunnell, 14 F.3d 449, 454

(9th Cir. 1994).  In addition, a district court may consider any document "the authenticity of

which is not contested, and upon which the plaintiff's complaint necessarily relies,"

regardless of whether the document is referenced in the complaint.  See Parrino v. FHP,

Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that are

subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279,

1282 (9th Cir. 1986).

### 2.  Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."  See Fed. R. Civ. P. 9(b).  Rule 9(b) serves to give defendants adequate

notice to allow them to defend against a charge of fraud and to deter the filing of complaints

as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that

comes from being subject to fraud charges, and to prohibit plaintiffs from "unilaterally

imposing upon the court, the parties, and society enormous social and economic costs

absent some factual basis."  See In re Stac Electronics Sec. Litig., 89 F.3d 1399, 1405 (9th

Cir. 1996) (quoting Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)).

To comply with Rule 9(b), a plaintiff must plead "with particularity" the time and place

of the fraud, the statements made and by whom made, an explanation of why or how such

statements were false or misleading when made, and the role of each defendant in the

alleged fraud.  See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-49 and n.7 (9th Cir.

1994) (en banc); Lancaster Community Hospital v. Antelope Valley Hospital District, 940

F.2d 397, 405 (9th Cir. 1991); see also Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066

(9th Cir. 2004) (holding Rule 9(b) requires a plaintiff to "state the time, place, and specific

content of the false representations as well as the identities of the parties to the

1    misrepresentation").

2         Where the allegations in support of a claim fail to satisfy the heightened pleading

3    requirements of Rule 9(b), the claim is subject to dismissal.  See Vess v. Ciba-Geigy Corp.

4    USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  Dismissal for failure to comply with Rule 9(b)

5    "should ordinarily be without prejudice . . . if it appears at all possible that the plaintiff can

6    correct the defect."  See id. at 1108 (internal quotation and citation omitted).

7                                    **DISCUSSION**

8    **A.    Motion to Dismiss Under Rule 12(b)(6)**

9         The Court will address Koperwhats' first five causes of action in the sequence in

10   which they are asserted in the SACC.

11                   **1.    First Cause of Action (Copyright Infringement)**

12        In his First Cause of Action, Koperwhats alleges KEMA Defendants have

13   "downloaded, sold, licensed, distributed, 'shared,' or have otherwise transferred"

14   Koperwhats' software in a manner infringing his copyright (see SACC ¶ 167) and that

15   Axmor "has copied and used [Koperwhats'] software" in an manner similarly infringing his

16   copyright (see id. ¶ 168).  Koperwhats further alleges "RLW, KEMA, Inc. and KEMA USA's

17   'next generation' of . . . software, developed by Axmor, is substantially similar to and

18   constitutes unauthorized copying of Koperwhats['] [f]ederally registered copyrighted

19   software."  (See id. ¶ 164.)  Additionally, Koperwhats alleges he is in possession of a

20   Copyright Registration Certificate ("Registration Certificate") covering the allegedly infringed

21   copyrighted material and bearing registration number TX 6-920-412.  (See id. ¶ 92 & Ex. 4.)

22

23        Under the Copyright Act, "no civil action for infringement of any copyright in any

24   United States work shall be instituted until preregistration or registration of the copyright

25   claim has been made in accordance with [the Act]."  See 17 U.S.C. § 411(a).  The

26   registration requirement is a necessary element of a copyright infringement claim.

27   See Cosmetic Ideas, Inc. v. IAC/Interactive Corp., 2010 WL 2039170, *2 (9th Cir. 2010).  A

28   copyright plaintiff will not satisfy the registration requirement where the allegedly infringed

                                          5

1  work was published before the date of first publication identified in the registration, unless

2  such registration identifies the registered work as derivative of, or a compilation containing,

3  the allegedly infringed work.  See I.M.S. Inquiry Management Systems v. Berkshire

4  Information Systems, Inc., 307 F. Supp. 2d 521, 527, 529 (S.D.N.Y.) (citing Streetwise

5  Maps, Inc. v. VanDam, Inc., 159 F.3d 739 (2d Cir. 1998) and Well-Made Toy Mfg. Corp. v.

6  Goffa Int'l Corp., 354 F.3d 112, 115-16 (2d Cir. 2003)); see also Well-Made, 354 F.3d at

7  516 (finding registration requirement not satisfied where "the copied work . . . [was] not

8  listed in any copyright registration and the only copied expressive elements . . . [did] not

9  appear in any work whose copyright [had] been registered").

10       Here, the Registration Certificate identifies a work that was completed in 2008 and

11 first published on June 16, 2008; the Registration Certificate does not identify any

12 preexisting work or works.  (See SACC Ex. 4.)  Under the Copyright Act, "publication" is

13 defined as:

14       the distribution of copies . . . of a work to the public by sale or other
         transfer of ownership, or by rental, lease, or lending. The offering to

15       distribute copies . . . to a group of persons for purposes of further
         distribution, public performance, or public display, constitutes publication.

16 See 17 U.S.C. § 101.

17

18       By the Court's prior order, Koperwhats' First Cause of Action, as pleaded in his

19 FACC, was dismissed because the Registration Certificate did not appear to cover the

   software alleged to have been copied and because the allegations were, at best,
20
   ambiguous in that regard.  (See Mar. 1, 2010 Order at 5:6-6:4.)  In particular, the FACC
21
   included allegations showing that most, if not all, of the versions of the software at issue
22
   had been published prior to the date of first publication stated in the Registration Certificate,
23
   and, at a minimum, the allegations failed to make clear which version had been deposited
24
   with the Copyright Office.  (See id.)  The Court granted Koperwhats leave to cure the noted
25
   deficiencies.  (See id. at 5:19-6:4.)  As KEMA Defendants and Axmor point out, Koperwhats
26
   has failed to do so.
27
        At the outset, the Court finds unpersuasive Koperwhats' asserted resolution of the
28

6

1   inconsistencies between his description of the software at issue and the software identified

2   in the Registration Certificate.[3]  In particular, Koperwhats' new allegation that he has "filed

3   an amendment to his Copyright registration to assert the software has not been published"

4   (See SACC ¶ 93) is unavailing.  Even if Koperwhats' application for supplementary

5   registration (see Opp'n to KEMA Mot. Ex. 1 (requesting "Date of First Publication" be

6   changed from "June 16, 2008" to "Unpublished")) is approved, such supplemental

7   description remains inconsistent with the description of the software at issue as alleged in

8   the SACC (see, e.g., SACC ¶¶ 88, 89, 93, 161), which allegations, as the Court found in its

9   prior order, set forth facts constituting publication.  Nor do Koperwhats' new allegations

10  further describing the distribution of the software at issue (see, e.g., SACC ¶¶ 90, 93, 161)

11  serve to resolve the inconsistencies noted in the Court's prior order.  Rather, by all such

12  additions to his pleadings, Koperwhats is, in essence, disputing the legal effect of the

13  distribution to RLW and those who obtained licenses through RLW; specifically,

14  Koperwhats contends those distributions do not constitute "publication" within the meaning

15  of the Copyright Act and that he misinterpreted the part of the registration form pertaining to

16  the publication date (See Opp'n to KEMA Mot. Ex. 1 (stating "[t]he software source code

17  has never been published, only the executable has been released to licensed users"); see

18  also Opp'n at 14 (asserting "restricted dissemination is not general publication") (citing Bell

19  Atlantic Business Systems Servs., Inc. v. Hitachi Data Systems Corp. 1995 WL 836331

20  (N.D. Cal 1995)).)

21      The Court agrees with defendants that the SACC continues to plead facts showing

22  the software at issue was published, and, consequently, that such software is different than

23  the software described in both the Registration Certificate and the supplementary

24  registration offered by Koperwhats in connection with his opposition.

25

26      [3] Contrary to Koperwhats' argument, KEMA Defendants and Axmor do not contend
    Koperwhats' Registration Certificate is invalid; rather, they argue the software at issue
27  herein is not covered by the Registration Certificate because such software, as described in
    the SACC, is different than the copyrighted material identified in the Registration Certificate.
28  (See KEMA Mot. at 5:3-9:5; see also Axmor Mot. at 11:8-13:6.)

1        In particular, although Koperwhats alleges "[n]on-demonstration" versions of the

2   software "have never been made available to the public in any form" (see SACC ¶ 93),

3   Koperwhats admits in his allegations that he provided RLW with the subject software, that

4   RLW had discretion to issue licenses for such software, and that Koperwhats permitted

5   RLW to direct its clients to obtain the subject versions of the software from Koperwhats'

6   website.  (See id. ¶¶ 87, 88, 89, 93, 161); see also 17 U.S.C. § 101 (providing publication

7   means "the distribution of copies . . . of a work to the public by sale or other transfer of

8   ownership, or by rental, lease, or lending").  Koperwhats makes no allegation that any

9   restriction was placed on RLW's ability to distribute and license such software.  Cf. Bell

10  Atlantic Business Systems Servs., Inc. v. Hitachi Data Systems Corp., 1995 WL 836331,

11  *5-6 (N.D. Cal. 1995) (finding, under "limited publication doctrine" developed to "mitigate

12  harsh forfeiture effects of an improper publication," triable issue as to publication existed

13  where distribution was subject to written contract terms that restricted access to and usage

14  of software to personnel within three specified companies, and companies had no authority

15  to sell or lease copies).

16       In any event, irrespective of whether Koperwhats can eventually amend his

17  registration and pleadings to allege publication dates, or lack thereof, in a manner that does

18  not automatically exclude the subject software, Koperwhats has failed to cure a significant

19  ambiguity noted in the Court's order dismissing the FACC.   In its order of March 1, 2010,

20  the Court pointed out that the First Cause of Action contained ambiguous and inconsistent

21  statements as to which version of the software was in fact deposited with the Copyright

22  Office.  (See Mar. 1 Order at 5: 18-6:1); see also 37 C.F.R. § 202.20(c)(2)(vii)(A) (providing

23  "[i]n cases where a computer program . . . if unpublished is fixed, or if published is

24  published only in the form of machine-readable copies . . . the deposit shall consist of . . .

25  one copy of identifying portions of the program, reproduced in a form visually perceptible

26  without the aid of a machine or device, either on paper or in microform").

27       Koperwhats' allegations in that regard remain ambiguous and inconsistent.

28  Koperwhats alleges in the SACC that he "applied for registration of his copyright in the

8

1   software program encoded by the source code for Version 4.3" (see SACC ¶ 92), but later

2   alleges "[t]he source code of the . . . program, from which the deposits to the copyright

3   registration were made, is similar to but not identical to, Version 4.3" (see id. ¶ 95)

4   (emphasis added).  The latter allegation is in all material respects identical to the allegation

5   the Court expressly called to Koperwhats' attention in its prior order.[4]  Indeed, the Court did

6   so with the same added emphasis as above. (See Mar. 1 Order at 5:25.)  Moreover,

7   although Koperwhats no longer alleges the version submitted to the Copyright Office

8   "corresponds to" source code for Version 4.3 (compare FACC ¶¶ 94, 159 with SACC ¶¶

9   94, 162), Koperwhats makes precisely that assertion in his opposition (see Opp'n to KEMA

10  Mot. at 16:19, 16:27).  Tellingly, Koperwhats no longer alleges he "submitt[ed]" source code

11  for Version 4.3 to the Copyright Office.  (Compare FACC at 25 & ¶ 159 with SACC at 27.)

12  In short, Koperwhats again fails to allege he registered the source code for Version 4.3

13  rather than for some "similar" software.  Consequently, the claim fails.

14       Further, although Koperwhats, in the penultimate paragraph of his opposition, makes

15  a general request for further leave to amend, Koperwhats makes no offer as to what any

16  such amendment would contain.  More importantly, it is clear that Koperwhats understood

17  the Court's prior order of dismissal as it pertained to his copyright claim and, although, as

18  discussed above, Koperwhats, with further leave, might be able to cure the discrepancies

19  concerning the date of publication, the course of Koperwhats' amendments with respect to

20  the allegations concerning the deposit with the Copyright Office indicate he is unable to

21  successfully amend his allegations with regard to the version in fact deposited.

22  Accordingly, the First Cause of Action will be dismissed without further leave to amend.

23       **2.      Second Cause of Action (Misappropriation of Trade Secrets)**

24       Koperwhats, in his Second Cause of Action, alleges the source code for his software

25  constitutes a trade secret, and that KEMA Defendants have "stole[n]" and improperly

26  "transferred" such source code to Axmor, which is improperly "using" such source code.

27  ───────────────

28       [4] The sole difference is that Koperwhats, in his FACC, made this allegation as to
    "Versions 3 through 4.3."  (See FACC ¶ 95.)

1   (See SACC ¶¶ 197-200.)  Further, Koperwhats alleges, KEMA Defendants and Axmor

2   "improperly used, copied, sold or otherwise distributed software programs that utilize

3   [Koperwhats'] trade secrets."  (See id. ¶ 201.)

4        By the Court's prior order, Koperwhats' Second Cause of Action was dismissed for

5   failure to adequately allege the elements of a trade secret claim.  (See Mar. 1 Order at 6:5-

6   8:16.)  Under California Civil Code § 3426.1, a "trade secret" must (1) "[d]erive[ ]

7   independent economic value, actual or potential, from not being generally known to the

8   public or to other persons who can obtain economic value from its disclosure or use" and

9   (2) be "the subject of efforts that are reasonable under the circumstances to maintain its

10  secrecy."  See Cal. Civ. Code § 3426.1(d)(1), (2); see also Religious Tech. Ctr. v. Netcom

11  On-Line Comm'n Servs., 923 F. Supp. 1231, 1253 (N.D. Cal. 1995) (holding "[r]easonable

12  efforts can include advising employees of the existence of a trade secret, limiting access to

13  information on a 'need to know basis,' requiring employees to sign confidentiality

14  agreements, and keeping secret documents under lock") (internal quotation and citations

15  omitted).  In his FACC, Koperwhats admitted by his allegations that he provided the source

16  code for Version 3.3 of his software to RLW without any confidentiality agreement or other

17  restriction; consequently, the Court found Koperwhats had failed to plead the allegedly

18  misappropriated software was the subject of reasonable efforts to maintain its secrecy.

19  (See Mar. 1 Order at 8:1-8:16.)

20       In his SACC, Koperwhats realleges his trade secret claim without material alteration

21  other than to allege that "[t]he source code and the executable software are not available to

22  users without a registration code with a license" (see SACC ¶ 193), that KEMA Defendants

23  "have asserted that the source code for Versions 3.3 provided by Koperwhats was

24  destroyed" (see id. ¶ 194), and that KEMA Defendants "did not distribute or publish the

25  code" (see id.).

26       KEMA Defendants and Axmor argue Koperwhats' claim is subject to dismissal

27  because Koperwhats has failed to adequately allege the disclosure of his source code "was

28  made pursuant to any confidentiality obligations" (see KEMA Mot. at 12:22-13:4) and that

1   Koperwhats' factual allegations contradict his "conclusory" assertion that he took

2   reasonable steps to maintain its secrecy (see Axmor Mot. at 13:25-14:2).  Koperwhats, in

3   response, argues "[t]he presence or absence of nondisclosure agreements is not

4   dispositive of . . . whether Koperwhats made efforts to protect the secrecy of the source

5   code" (see Opp'n to KEMA Mot. at 19:10-11) and that "questions of whether a trade secret

6   is a secret are questions of fact properly left to the trier of fact" (see Opp'n to Axmor Mot. at

7   17:24-25).  Although Koperwhats' contentions are correct as general statements of the law,

8   his reliance thereon is unavailing given his failure to allege he took any efforts to maintain

9   the secrecy of the subject source code.

10          Indeed, as in his earlier pleading, Koperwhats essentially pleads he provided RLW

11   with the source code for Version 3.3 without restriction.  (See SACC ¶ 194 & Ex. 3); see

12   also Cinebase Software, Inc. v. Media Guaranty Trust, Inc., 1998 WL 661465 at *11 (N.D.

13   Cal. 1998) (finding plaintiff's "failure to secure nondisclosure agreements from technical

14   personnel" not reasonable); cf. Religious Tech. Ctr, 923 F. Supp. at 1253 (finding efforts

15   reasonable where plaintiff protected secret by "use of locked cabinets, safes, logging and

16   identification of the materials, availability of the materials at only a handful of sites

17   worldwide, electronic sensors attached to documents, locked briefcases for transporting

18   works, alarms, photo identifications, security personnel, and confidentiality agreements for

19   all of those given access to the materials"); Morlife, Inc. v. Perry, 56 Cal.App.4th 1514,

20   1523 (1997) (finding efforts reasonable where employer stored confidential information on

21   computer with restricted access, included confidentiality provision in employment contract

22   with employee, and included express statement in employee handbook prohibiting

23   employees from using or disclosing subject confidential information).

24          In sum, Koperwhats has failed to cure the deficiencies noted in the Court's prior

25   order.  Although, as noted above, Koperwhats makes a general request for further leave to

26   amend, nothing in Koperwhats' opposition to the instant motions suggests his ability to

27   successfully cure the above-noted deficiencies.  Moreover, the record herein reflects his

28   inability to do so.  In particular, in his opposition to dismissal of the instant claim as alleged

in the FACC, Koperwhats argued there was an "understanding [the source code] was to be kept confidentially." (See Opp'n, filed Nov. 13, 2009, at 14:3-4.) The Court acknowledged that assertion and afforded Koperwhats an opportunity to plead such understanding (See Mar. 1 Order at 8:11-18 (noting FACC's lack of factual allegations consistent with contention in opposition and granting leave to amend).) No such "understanding" has been pleaded in the SACC, nor, as discussed above, have any other facts been pleaded to support a finding that reasonable efforts were made to maintain the secrecy of the subject source code.

Accordingly, the Second Cause of Action will be dismissed without further leave to amend.

### 3.    Third Cause of Action (Breach of Contract)

In his Third Cause of Action, Koperwhats alleges KEMA, KEMA USA, RLW, and Puckett have breached the Settlement and License Agreement (hereafter, "Agreement") entered October 13, 2008 between Koperwhats and RLW. Koperwhats, however, again fails to adequately allege that any party other than RLW was a signatory to said Agreement or an alter ego of any signatory thereto. (See Mar. 1 Order at 8-10.)

As discussed in the Court's prior order (see id.), a plaintiff seeking to hold an individual defendant liable under the alter ego doctrine must show "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individual[ ] no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." See Flynt Distributing Co., Inc. v. Harvey, 734 F.2d 1389, 1393 (1984). Where a parent and subsidiary relationship exists, the first prong of such test "has alternatively been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." See Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001) (noting "general rule" that "a subsidiary and the parent are separate entities"). Factors relevant to a determination of alter ego include (1) commingling of funds and other assets of the two entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership in the

two entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) appointment of identical directors and officers.  See Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 538-39 (2000) (citing cases).  "No one characteristic governs"; rather, "courts must look at all the circumstances to determine whether the doctrine should be applied."  See id. at 539. "Mere ownership of all the stock and control and management of a corporation . . . is not of itself sufficient to cause the courts to disregard the corporate entity."  See Meadows v. Emett & Chandler, 99 Cal.App.2d 496, 498-99 (1950).

Here, Koperwhats alleges, in conclusory fashion, that KEMA USA, KEMA, RLW and Puckett are alter egos of each other because (1) KEMA USA, KEMA, and RLW have "commingled funds and assets," (2) there is "identical equitable ownership" in KEMA USA, RLW, and KEMA, (3) identical directors and officers have been appointed by KEMA USA, KEMA and RLW, (4) KEMA "took over and controls, directs and approves the operations and employs former personnel of RLW" (5) RLW is a "mere shell or conduit" for KEMA and KEMA USA is a "mere shell or conduit" for KEMA, (6) KEMA USA "controls and is responsible for the operations and activities of KEMA," (7) RLW is "inadequately capitalized to operate as an entity separate from KEMA" and KEMA "is inadequately capitalized to operate as an entity separate from KEMA USA," and (8) the corporate records of KEMA USA, KEMA and RLW are "not segregated."  (See SACC at ¶¶ 139, 211.)

Koperwhats "conclusory recitation of the above elements of alter ego liability are insufficient to plead alter ego liability under [Rule 8(a)]".  See Lovesy v. Armed Forces Benefit Assoc., 2008 WL 4856350, *5 (N.D. Cal. 2008); see also Iqbal, 129 S.Ct. at 1949; Neilson v. Union Bank of California, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim[;] [r]ather, a plaintiff must allege specifically both elements of alter ego liability, as well as facts supporting each.")  Thus, in order to plead alter ego liability, Koperwhats must allege facts supporting the above-referenced allegations.  See Neilson, 290 F.Supp.2d at 1116.

1    The factual allegations pleaded in Koperwhats' SACC, however, are the same as

2  those pleaded in Koperwhats' FACC, i.e., that (1) KEMA USA is the sole shareholder in

3  KEMA and RLW, (2) RLW's website bears the KEMA logo, describes KEMA's operations,

4  and features a KEMA press release, (3) Puckett is the Senior Vice President in the

5  Sustainable Market Strategies Group for KEMA and no longer holds any position at RLW,

6  (4) other former employees of RLW are now employed by KEMA, (5) RLW, KEMA, KEMA

7  USA and Puckett are represented by the same counsel in this litigation, and (6) KEMA

8  advertises and sells RLW products on its website.  (See id. at ¶¶ 66, 140-44.)

9    As discussed in the Court's prior order, such factual allegations are insufficient to

10 plead an alter ego relationship and/or that "fraud or injustice" would result if the corporate

11 structure were disregarded.  See Flynt 734 F.2d at 1393.  As noted above, Koperwhats has

12 not alleged facts demonstrating, for example, that RLW or KEMA is undercapitalized, see

13 Minton v. Cavaney, 56 Cal.2d 576, 580 (1961), or that efforts have been made by KEMA

14 USA to strip KEMA or RLW of assets in order to avoid liability, see Las Palmas Associates

15 v. Las Palmas Center Assoc, 235 Cal.App.3d 1220, 1251 (1991) The SACC includes no

16 other factual allegations sufficient to plead the liability of any defendant other than RLW for

17 breach of the Agreement, nor does Koperwhats identify any such allegations that he would

18 include if afforded further leave to amend.

19    Accordingly, the Third Cause of Action, to the extent it is alleged against KEMA

20 USA, KEMA and Puckett, will be dismissed without further leave to amend.

21           **4.      Fourth Cause of Action (Intentional Fraud)**

22    Koperwhats, in his Fourth Cause of Action, alleges Exhibit A to Koperwhats and

23 RLW's October 13, 2008 Agreement as well as a February 17, 2009 email from Puckett to

24 Koperwhats "intentionally concealed accurate and complete user identification and

25 registration codes."  (See SACC ¶ 225.)  Koperwhats also alleges Puckett falsely informed

26 Koperwhats in June 2008 "that RLW had only '34 active licenses' of the software."  (See id.

27 ¶ 102.)

28    The elements of fraud, under California law, are: "(a) misrepresentation (false

14

representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter');

(c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

damage." See Engalla v. Permanente Med. Group, 15 Cal. 4th 951, 974 (1997) (internal

quotation and citation omitted).

In the Court's March 1, 2010 Order, the Court dismissed Koperwhats' Fourth Cause

of Action to the extent it was based on the Agreement and Exhibit A thereto, for the reason

that, contrary to Koperwhats' allegation, neither the Agreement nor Exhibit A includes any

statement "that Exhibit A contains a list of all the entities to which RLW had distributed

Versions 3 through 4 of Visualize-It." (See Mar. 1 Order at 11:8-23; see also SACC Ex. 11

at § 5.2, Ex. A.)   Additionally, the Court dismissed the Fourth Cause of Action to the extent

it was based on the above-referenced email, for the reason that Koperwhats had not

adequately alleged he had relied on any representation made in such email or that he

suffered "any loss or damage as a result of any reliance."  (See Mar. 1 Order at 11:24-

12:23.)

KEMA Defendants contend the Fourth Cause of Action remains deficient, for the

reasons that (1) the Agreement contains an integration clause, (2) Koperwhats still has not

identified a fraudulent statement contained in either the Agreement or Exhibit A thereto,

(3) Koperwhats has not added any new allegations to show he relied to his detriment on the

February 17, 2009 email, and (4) Koperwhats could not reasonably have relied on

Puckett's June 2008 representation because he received contradictory information

thereafter and prior to signing the Agreement.

The Court addresses KEMA Defendants' arguments in turn.

### a.  Integration Clause

KEMA Defendants argue Koperwhats could not rely on any representations not

contained within the Agreement because Section 17 of the Agreement contains an

integration clause and release.  As Koperwhats points out, however, parole evidence of a

fraudulent representation is admissible notwithstanding the contract's inclusion of an

integration clause or release.  See Hartman v. Shell Oil Co., 68 Cal.App.3d 240, 251 (1977)

(holding "[p]arol evidence is always admissible to prove fraud, including circumstances where a purportedly fraudulently induced contract contains relevant exculpatory language, or integration clauses"; noting "[t]he parol evidence rule is not intended to be a shield for fraud").

Consequently, Koperwhats may rely on statements made outside of the Agreement or Exhibit A thereto.

### b. Fraudulent Statement:  2008 Agreement and Exhibit A

As additional support for his Fourth Cause of Action, Koperwhats has attached as Exhibit 24 to the SACC, correspondence exchanged between counsel for Koperwhats and counsel for RLW prior to the date on which the Agreement was executed.  In the course of said correspondence, counsel for RLW provided Koperwhats' counsel with a draft of Exhibit A, which document, Koperwhats alleges, was stated to be a list of all existing clients/users of the subject software.  (See SACC ¶ 106, Ex. 24 at 4, 5.)  In particular, upon receipt of an earlier draft of such list, Koperwhats' counsel requested additional information, specifically, the registration codes for the licenses, and stated such information was needed in order that Koperwhats "have some manner of confirming the CURRENT LICENSES/ REGISTRATIONS now so, in one year [Koperwhats] can verify that in addition to no new clients, RLW has terminated all registrations."  (See id. Ex. 24 at 5 (emphasis in original).) In reply thereto, RLW's counsel provided a further revised Exhibit A, which purported to "include[ ] the registration code information [Koperwhats' counsel] requested."  (See id.) Such correspondence, when read together with Exhibit A, arguably constituted a representation by RLW that such exhibit reflected a complete list of then currently registered users of the subject software.

The above-referenced allegations, when coupled with Koperwhats' allegations that (1) Exhibit A was inaccurate at the time of the Agreement (see SACC ¶¶ 123-134), (2) RLW "knew at the time it provided the list for Exhibit A that it was not an accurate list" (see id. ¶ 220), (3) RLW "intended to induce Koperwhats to rely on this false list to obtain a settlement" (see id. ¶ 221), and (4) Koperwhats "relied on . . . Exhibit A . . . to settle . . . and

16

1    execute the [Agreement], and to accept a compensation of only $30,000, based on the

2    number of client users identified in Exhibit A" (see id. ¶ 222, Ex. 24 at 5), are sufficient to

3    plead a claim for fraud as to RLW.[5]

4         Consequently, to the extent Koperwhats' fraud claim is based on RLW's

5    representations that Exhibit A was a complete list of current users of the subject software,

6    KEMA Defendants' motion to dismiss will be denied to the extent such claim is brought

7    against RLW and granted to the extent it is brought against Puckett, KEMA and KEMA

8    USA.

9                        **c.    February 17, 2009 Email**

10        As KEMA Defendants point out, Koperwhats, in his SACC, has not alleged any new

11   facts to support his contention that he relied on the February 17, 2009 email from Puckett

12   or that he suffered any loss or damage as a result of any reliance.  (See Mar. 1 Order at

13   15:14-16:2.)  In his opposition, Koperwhats does not argue to the contrary, and instead

14   argues reliance is a question of fact "inappropriate for resolution at this stage."  (See Opp'n

15   to KEMA Mot. at 22:2-6.)

16        As discussed in the Court's two prior orders (see Mar. 1 Order at 11:25-12:18;

17   Sept. 10 Order at 15:14-16:2), Koperwhats' ambiguous allegations with respect to reliance

18   are insufficient to plead a claim of fraud.  In particular, Koperwhats' pleading still contains

19   no factual allegation as to the nature of any lawsuit Koperwhats would have filed in the

20   absence of the conduct at issue, see Iqbal, 129 S. Ct. at 1949 ("holding [t]o survive a

21   motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to

22   state a claim to relief that is plausible on its face") (internal quotation and citation omitted),

23   nor has Koperwhats alleged how the above-referenced email deterred Koperwhats from

24   filing any such lawsuit, particularly given Koperwhats' allegation that, on March 5, 2009,

25   _____

26        [5]  The SACC contains no allegation that the alleged misrepresentation contained in
     the above-referenced email exchange was made by Puckett or by anyone other than
27   counsel for RLW, and, as discussed above in connection with Koperwhats' Third Cause of
     Action, Koperwhats has made no showing that any defendant named herein can be held
28   liable as an alter ego of RLW.

1   approximately two weeks after the transmission of the email, Koperwhats' counsel sent

2   counsel for KEMA a cease and desist letter demanding "an accurate listing of all users" of

3   the software at issue.  (See SACC ¶¶ 146-48; Mar. 1 Order at 11-12.)

4        Further, as noted in the Court's March 1 Order, Koperwhats' allegation that his

5   reliance on the email caused him to "forego[ ] . . . compensation for continued use of his

6   copyrighted software," (see SACC ¶ 235), likewise remains ambiguous (see id. at 12:16-

7   18).

8        Consequently, to the extent Koperwhats' fraud claim is based on representations

9   made in the February 17, 2009 email, KEMA Defendants are entitled to dismissal, and no

10  further leave to amend will be granted.

11                    **d.  June 2008 Statement by Puckett**

12       In his SACC, Koperwhats, for the first time, alleges he relied on a June 2008

13  statement made by Puckett that "RLW had only '34 active licenses' of the software in June

14  2008."  (See SACC ¶¶ 102, 217.)  As KEMA Defendants point out, however, Koperwhats,

15  by his other factual allegations, has pleaded a lack of reliance on any such representation

16  at the time he entered into the Agreement.  In particular, Koperwhats alleges he received,

17  prior to signing the Agreement, updated information from RLW as to the number of active

18  licenses; specifically, Koperwhats admits by his allegations that he refused to sign the

19  Agreement "until the number and identity of clients . . . was provided . . . in Exhibit A" (see

20  SACC ¶ 108), which "listed and identified 20 clients and their allegedly registered 86 users"

21  (see SACC ¶ 108, Ex. 24 at 5).

22       Consequently, to the extent Koperwhats' fraud claim is based on representations

23  made by Puckett in the alleged June 2008 statement, KEMA Defendants' are entitled to

24  dismissal.  Further, because Koperwhats' own allegations preclude a viable allegation of

25  reliance, leave to amend will not be granted.

26                    **e.  Conclusion as to Fraud Claims**

27       To the extent KEMA Defendants seek dismissal of Koperwhats' Fourth Cause of

28  Action as alleged against RLW and based on representations made by RLW that Exhibit A

                                    18

was a complete list of the current users of the subject software, the motion will be denied;

in all other respects the motion will be granted.

### 5.    Fifth Cause of Action (Unfair Competition)

In his Fifth Cause of Action, Koperwhats alleges KEMA Defendants and Axmor

violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, <u>et</u>

<u>seq.</u>, by committing the alleged violations set forth in Koperwhats' First through Fourth

Causes of Action (<u>see</u> SACC ¶¶ 242-43, 245-47).  Consequently, the Fifth Cause of Action

is derivative of Koperwhats' other claims.  <u>See</u> <u>Berryman v. Merit Prop. Mgmt.</u>, 152 Cal.

App. 4th 1544, 1554 (2007) (holding "[u]nder its 'unlawful' prong, the UCL borrows

violations of other laws . . . and makes those unlawful practices actionable under the UCL").


In the Court's prior order, Koperwhats' UCL claim was dismissed on the ground that

Koperwhats had failed to adequately plead any conduct that could serve as a predicate for

such claim.  (<u>See</u> Mar. 1 Order at 13:7-22).   As discussed above, however, Koperwhats, in

his SACC, has adequately pleaded a fraud claim against RLW.

Accordingly, KEMA Defendants' motion to dismiss the Fifth Cause of Action will be

denied to the extent such cause of action is based on Koperwhats' surviving fraud claim

against RLW, and in all other respects both motions will be granted.

### B.    Motions to Dismiss Under Rule 12(b)(2)

Because the Court, as discussed above, has found all of Koperwhats' claims against

KEMA USA, Puckett and Axmor are subject to dismissal under Rule 12(b)(6), the Court

does not address herein the merits of those parties' arguments in support of dismissal

under Rule 12(b)(2).

### C.    Motions to Strike Prayer for Compensatory Damages/Restitution

KEMA Defendants and Axmor seek an order striking Koperwhats' prayer for

damages to the extent Koperwhats seeks compensatory damages and "restitution" on his

UCL claim.

In particular, KEMA Defendants and Axmor argue, compensatory damages are not

1    recoverable under the UCL.  (See SACC ¶¶ 254, 257, Prayer 8.) The Court agrees.

2    See Korea Supply Co. v. Lockheed Martin Co., 29 Cal.4th 1134, 1144 (2003) (holding

3    remedies available under UCL are "limited" and only provide for injunctive relief and

4    restitution).  Consequently, Koperwhats' prayer for compensatory damages will be stricken

5    to the extent it is based on Koperwhats' UCL claim.

6         Further, KEMA Defendants and Axmor argue, Koperwhats' prayer for "restitution"

7    must be stricken as by such prayer Koperwhats is not seeking to recover "'monies given to

8    the defendant or benefits in which the plaintiff has an ownership interest.'"  (See KEMA

9    Mot. at 19:21-20:2; Axmor Mot. at 16:17-20) (citing Korea Supply, 29 Cal.4th at 1148).)

10   The Court again agrees.  Specifically, Koperwhats alleges he is entitled to restitution

11   because KEMA Defendants and Axmor "have obtained . . . revenues and business goodwill

12   and opportunities, without providing adequate compensation to [Koperwhats], in return for a

13   license to use Koperwhats' intellectual property, which was essential to the acquisition of

14   [KEMA Defendants'] gains" (SACC ¶ 254) and because Koperwhats has "suffered and will

15   continue to suffer injury to [his] business, goodwill and property for which [he] is entitled to

16   restitution" (id. ¶ 257).  As the California Supreme Court has noted, however,

17   "[c]ompensation for a lost business opportunity is a measure of damages and not

18   restitution,"  Korea Supply, 29 Cal.4th at 1150-51 (internal quotation and citation omitted),

19   and the "nonrestitutionary disgorgement remedy," see id., sought by Koperwhats herein "is

20   not permitted under the UCL," see id.  Consequently, Koperwhats' prayer for restitution will

21   be stricken to the extent it is based on his UCL claim.

22        Accordingly, to the extent Koperwhats' prayer for damages and restitution is based

23   on Koperwhats' UCL claim, the motions to strike the prayer will be granted.

## CONCLUSION

24   For the reasons stated above:

25

26   1. The motions to dismiss filed by KEMA Defendants and Axmor are hereby

27   GRANTED in part and DENIED in part as follows:

28        a.  With respect to Koperwhats' First Cause of Action (Copyright Infringement)

and Second Cause of Action(Misappropriation of Trade Secrets), the motions are GRANTED.

        b.  With respect to Koperwhats' Third Cause of Action (Breach of Contract) as alleged against KEMA USA, KEMA and Puckett, KEMA Defendants' motion is GRANTED.

        c.  With respect to Koperwhats' Fourth Cause of Action (Fraud) as alleged against RLW and based on RLW's alleged misrepresentations as to Exhibit A to the Agreement, KEMA Defendants' motion is DENIED; in all other respects, KEMA Defendants' motion is GRANTED.

        d.  With respect to Koperwhats' Fifth Cause of Action (Unfair Competition), KEMA Defendants' motion is DENIED to the extent said Cause of Action is alleged against RLW and based on the Fourth Cause of Action; in all other respects the motions are GRANTED.

     2.  With respect to Koperwhats' prayer for damages on his Fifth Cause of Action, the motions to strike are hereby GRANTED.

     **IT IS SO ORDERED.**

Dated: September 1, 2010

MAXINE M. CHESNEY
United States District Judge