**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEMA, INC., et al.,

    Plaintiffs,

  v.

WILLIAM KOPERWHATS, et al.,

    Defendants.
_____/

And related counterclaims.
_____/

No. C 09-1587 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS WILLIAM KOPERWHATS AND MILOSLICK SCIENTIFIC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

    Before the Court is defendants William Koperwhats' ("Koperwhats") and MiloSlick Scientific's ("MiloSlick") motion, filed April 27, 2010, to dismiss the First Amended Complaint ("FAC") of plaintiffs KEMA, Inc. ("KEMA") and RLW Analytics, Inc. ("RLW").[1] Plaintiffs have filed opposition, to which defendants have replied. The Court, having read and considered the papers submitted in support of and in opposition to the motion, hereby rules as follows.

**BACKGROUND**

    By order filed March 30, 2010, the Court granted plaintiffs' motion for leave to file

---

[1] As plaintiffs correctly note, defendants' motion was not timely filed. Defendants' motion to dismiss plaintiffs' original complaint likewise was untimely. (See Order Denying Defendants' Motion to Dismiss, filed September 10, 2009, at 6.) Nevertheless, the Court, in its discretion, has considered the instant motion. Defendants are hereby advised, however, that any future untimely filing will, in all likelihood, be stricken.

a first amended complaint. On April 6, 2010, Plaintiffs filed their FAC, alleging the following ten causes of action: (1) "Trademark Infringement Under Lanham Act § 32" ("First Claim for Relief"); (2) "Unfair Competition Under Lanham Act § 43" ("Second Claim for Relief"); (3) "False Description And Designation Of Origin Under Lanham Act § 43" ("Third Claim for Relief"); (4) "Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq." ("Fourth Claim for Relief"); (5) "False Advertising Under Cal. Bus. & Prof. Code § 17200 et seq." ("Fifth Claim for Relief"); (6) "Trade Libel And Product Disparagement" ("Sixth Claim for Relief"); (7) "Intentional Interference with Prospective Business Advantage" ("Seventh Claim for Relief"); (8) "Breach of Contract" ("Eighth Claim for Relief"); (9) "Declaratory Relief Under Contract" ("Ninth Claim for Relief"); and (10) "Declaratory Relief Concerning Copyright Rights And Infringement" ("Tenth Claim for Relief"). Plaintiffs seek both damages and injunctive relief.

Defendants bring the instant motion to dismiss the FAC in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a court must accept as true all material allegations

---

[2] Defendants also noticed their the motion under Rule 9(b), but do not advance such additional ground in their briefing.

2

in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

**DISCUSSION**

**A.   Trademark Infringement Under Lanham Act § 32 (First Claim for Relief)**

In their First Claim for Relief, plaintiffs allege that "Defendants' use of the Visualize-IT name on their website and other promotional materials to promote their new EnergyProbe™ product constitutes the use in commerce of a colorable imitation, copy and reproduction of RLW's Visualize-IT trademark." (FAC ¶ 38.) Plaintiffs further allege that "EnergyProbe™ is being distributed and licensed to the same types of customers as Plaintiffs' Visualize-IT products and services" (FAC ¶ 38), and that "Defendants' use of RLW's mark is likely to cause confusion, mistake or deception in the minds of the public" (FAC ¶ 39).

In order to make out a prima facie case of trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must show it has a "protectable trademark interest," Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir. 1999), that the defendant used such trademark "in commerce" and "that the use was likely to confuse customers as to the source of the product." See Karl Storz Endoscopy-Amer., Inc. v. Surgical Technologies, Inc., 285 F.3d 848, 853-854 (9th Cir. 2002) (noting "[l]ikelihood of confusion is the basic test for trademark infringement"); see also Kassbaum v. Steppenwolf Productions, Inc., 236 F.3d 487, 492 (9th Cir. 2000) (noting "[t]he purpose of a trademark is to allow customers to identify the manufacturer or sponsor of a good or the provider of a service").

At the outset, defendants argue that plaintiffs fail to allege sufficient facts to plead each of the necessary elements of a trademark infringement claim.  In particular, defendants argue, plaintiffs fail to "allege[] any facts that suggest that the mark Visualize-IT is inherently distinctive or has acquired secondary meaning, or that the public is likely to confuse Plaintiffs' products with those of Koperwhats."  (Mot. at 13:28-14:2.)  The Court disagrees.[3]

First, plaintiffs have pleaded a protectable trademark interest.  In that regard, the FAC alleges that Visualize-IT is a registered trademark.  (See FAC ¶¶ 12, 38 & Ex. A); see also Qualitex Co. v. Jacobson Products Co., Inc., 13 F.3d 1297, 1301 (9th Cir. 1994) ("A certificate of registration is prima facie evidence of the validity of the mark and relieves the holder . . . of the burden of proving nonfunctionality and secondary meaning") rev'd on other grounds, 514 U.S. 159 (1995); Brookfield Communications, 174 F.3d at 1047 (holding, "registration of the mark . . . constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark" in commerce).

Second, the FAC alleges facts sufficient to plead a likelihood of confusion on the part of consumers.  Plaintiffs allege that defendants, on their website, stated EnergyProbe "was a new version of Visualize-IT" (FAC ¶ 22), that "MiloSlick was the developer of Visualize-IT[,] that [Miloslick's] new product was the 'successor' to Visualize-IT" (FAC ¶ 22), and that "'EnergyProbe™ is the evolution and new name for Visualize-IT®'" (FAC ¶ 31).  Plaintiffs also allege that defendants have the "same types of customers" as plaintiffs.  (FAC ¶ 38.)  These factual allegations suffice to allege that defendants' use of the Visualize-IT mark creates a likelihood of confusion that plaintiffs are "affiliated with, endorse, or sponsor" defendant's EnergyProbe product.  See, e.g., Facebook, Inc. v. Power Ventures, Inc., 2009 WL 1299698 (N.D. Cal. May 11, 2009) (finding allegations sufficient where complaint alleged defendants' "unauthorized use of the Facebook mark

---

[3]The Court notes that the FAC, although not challenged on such ground, sufficiently pleads defendants' use of plaintiff's mark was "in commerce."  (See FAC ¶¶ 22, 29, 31 (alleging use on MiloSlick's website to promote sale of defendants' competing EnergyProbe product).)

1  was likely to confuse recipients and lead to the false impression that Facebook is affiliated
2  with, endorses or sponsors [d]efendants' services"); Toyota Motor Sales, U.S.A., Inc. v.
3  Tabari, 610 F.3d 1171, 1175-76 (9th Cir. 2010) (noting false suggestion of sponsorship or
4  endorsement by trademark holder "speaks directly to the risk of [consumer] confusion");
5  Murray v. Cable National Broadcasting Company, 86 F.3d 858, 861 (9th Cir. 1996) (noting,
6  "[a] likelihood of confusion exists when a consumer viewing a service mark is likely to
7  purchase the services under a mistaken belief that the services are, or associated with, the
8  services of another provider"; finding complaint insufficient where the products were
9  "unrelated" and "there [was] no likelihood of confusion" because, inter alia, the parties
10 provided different services and had different customers).

11       Defendants next argue that plaintiffs' allegations make clear that defendants'
12 "minimal use of the mark Visualize-IT was nominative, establishing an absolute defense to
13 trademark infringement." (See Mot. at 16:24-26; see also id. at 14:25-27 (asserting
14 "Koperwhats did not use Plaintiffs' mark to refer to his software products, he used his own
15 mark EnergyProbe™ to sell his software").) "[N]ominative fair use analysis is appropriate
16 where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if
17 the defendant's ultimate goal is to describe his own product." Cairns v. Franklin Mint Co.,
18 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis omitted). "In cases where a nominative fair
19 use defense is raised, [courts] ask whether (1) the product was readily identifiable without
20 use of the mark; (2) defendant used more of the mark than necessary; [and] (3) defendant
21 falsely suggested [it] was sponsored or endorsed by the trademark holder." Toyota, 610
22 F.3d at 1175-76 (internal quotations and citations omitted). This test is "designed to
23 address the risk that nominative use of the mark will inspire a mistaken belief on the part of
24 consumers that the speaker is sponsored or endorsed by the trademark holder." Id. (noting
25 eight-factor test for likelihood of confusion, articulated in AMF, Inc. v. Sleekcraft Boats, 599
26 F.2d 341 (9th Cir. 1979), does not apply "where a defendant uses the mark to refer to the
27 trademarked good itself"). Here, the FAC, as discussed above, contains factual allegations
28 sufficient to plead defendants' use of the Visualize-IT mark falsely suggests sponsorship or

endorsement by plaintiffs.  (See, e.g., FAC ¶¶ 22, 31.)[4]  Under such circumstances, the issue of nominative fair use remains for later resolution.[5]

Defendants' remaining arguments are unavailing, as to accept them would require the Court to accept evidence not appropriate for consideration on a motion to dismiss.  See NL Industries, 792 F.2d at 898 (holding, on motion to dismiss, court must accept as true all material allegations in complaint and construe them in light most favorable to nonmoving party).  Defendants argue, for example, that plaintiffs "cannot allege facts supporting damages, because, Plaintiffs have not suffered any lost sales."  (Mot. at 17:15-16.)  The FAC, however, contains sufficient facts, set forth above, to support plaintiffs' allegation that the likelihood of confusion caused by defendants' infringing conduct is likely to cause damage to plaintiffs.  Cf. Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n. 3 (9th Cir. 1989) (noting, "[i]n trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted"); see also Apple Computer, Inc. v. Formula Intern. Inc., 725 F.2d 521, 526 (9th Cir. 1984) (affirming order granting preliminary injunction; finding, "[o]nce Apple demonstrated a likelihood of success on the merits of its trademark infringement claim, the district court could have reasonably concluded that continuing infringement would result in loss of control over Apple's reputation and loss of goodwill").  Defendants also assert that Koperwhats, before the filing of the instant lawsuit, "added an express disclaimer [to the website] that the mark Visualize IT was owned by

---

[4]To the extent defendants argue that Koperwhats "negotiated for the right to use the Visualize-IT[] mark to refer to Plaintiffs' products" (see Mot. at 14:20), such argument is unavailing in light of the terms of the parties' Settlement and License Agreement as pleaded in the FAC.  (See FAC ¶ 19(g) ("Koperwhats agreed . . . not to 'suggest any sponsorship, endorsement or affiliation of [his] software products with the products of' RLW without the written consent of RLW").)

[5]Indeed, in some instances, district courts have declined to rule on the nominative use defense at the pleading stage due to the factual nature of the inquiry.  See, e.g., Autodesk, Inc. v. Dassault Systems SolidWorks Corp., 2008 WL 6742224, *5 (N.D. Cal. Dec. 18, 2008) (stating, "analysis of nominative fair use is premature on a motion to dismiss, particularly given the factual nature of the inquiry"); see also Apple, Inc. v. Psystar Corp., 673 F. Supp. 2d 931, 942 (N.D. Cal. 2009) (noting, "[w]hile nominative fair use may be asserted as a defense, the defendant has the burden of proof").

6

Plaintiffs, and that there was no affiliation[,] . . . sponsorship[,] or endorsement by Plaintiffs." (Mot. at 15:24-26.) Defendants, however, have provided no judicially noticeable evidence of any such disclaimer.[6]

Accordingly, defendants' motion to dismiss plaintiffs' First Claim for Relief will be denied.

**B.   Unfair Competition Under Lanham Act § 43 (Second Claim for Relief)**

Plaintiffs, in their Second Claim for Relief, allege that "Defendants' use of the Visualize-IT mark to promote, market or sell software products or services in direct competition with Plaintiffs' products or services constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a)." (FAC ¶ 43.) Plaintiffs further allege that "Defendants' unfair competition constitutes a willful and malicious violation of Plaintiffs' rights and is aimed at preventing Plaintiffs from continuing to build a business around the Visualize-IT mark" and that "Defendants' unfair competition is likely to cause confusion, mistake and deception among customers." (FAC ¶¶ 44-45.) Defendants argue that "Plaintiffs' claims for unfair competition under the Lanham Act, rise or fall, along with its [sic] trademark infringement claim." (Mot. at 18.) Defendants further argue such claim should be dismissed because plaintiffs' allegations of likelihood of confusion are "conclusory" and because "confusion is not likely." (Id.)

"The ultimate test for unfair competition is exactly the same as for federal trademark infringement, that is[,] whether the purchaser is likely to be deceived or confused by the similarity of the marks." ACI Int'l. Inc. v. Adidas-Salomon AG, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005) (internal quotation and citation omitted); see Ringcentral, Inc. v. Quimby, 2010 WL 1459736, *9 (N.D. Cal. April 8, 2010) ("Because [p]laintiff holds registered

---

[6] Defendants attach to their Reply a document they assert is "[a] true and correct copy of the present webpage from the MiloSlick website." (See Reply at 4:7-8 & Ex. 1 (emphasis added).) The document is not authenticated, nor did defendants file a request for judicial notice. Moreover, defendants appear to acknowledge that the proffered web page post-dates the filing of the FAC. (See id. at 4:5-6) ("The webpages and quoted language provided by KEMA in support of its FAC are no longer provided on the MiloSlick website.")

trademarks . . . the elements [p]laintiff must meet to state a claim for unfair competition are the same as those required to show trademark infringement: (1) [d]efendants must have used the protected marks in commerce, and (2) that use must be likely to confuse or misrepresent to consumers the characteristics of goods or services.")  Consequently, for the same reasons set forth above, the Court finds plaintiffs' FAC likewise pleads sufficient facts to support their Second Claim for Relief.

Accordingly, defendants' motion to dismiss plaintiffs' Second Claim for Relief will be denied.

## C. False Designation of Origin (Third Claim for Relief)

In the Third Claim for Relief, plaintiffs allege that defendants' "use of the Visualize-IT mark to promote, market or sell software products or services in direct competition with Plaintiffs' products or services, along with their claim to be the 'developer' thereof, comprise false descriptions and designations of origin under 15 U.S.C. § 1125(a)."[7]  (FAC ¶ 47.) Plaintiffs further allege such use of the Visualize-IT mark is likely to cause "confusion, mistake and deception among customers" as to defendants' "role in creating and developing Plaintiffs' products," the "affiliation, connection or association of Defendants' products with Plaintiffs' products," and the "sponsorship or approval of Defendants' products by Plaintiffs."  (See FAC ¶ 48.)  In support of their motion as to the Third Claim for Relief, defendants argue that the statements on their website are not false and constitute nominative fair use, and that the accompanying statements and disclaimer on their website prevent any customer confusion.  (See Mot. at 19.)  Defendants also contend the statement that Koperwhats "was the developer of Visualize-IT" is not false.  (Id.)

The analysis of a claim for false designation of origin is often identical to that for

---

[7]The Third Claim for Relief appears to encompass two separate claims: "false description[] and false designation of origin."  (See FAC ¶ 47.)  In their opposition brief, however, plaintiffs refer to the Third Claim for Relief as a claim for "false designation of origin" and present no argument regarding false description.  (See Opp. at 7-8.)

trademark infringement.[8]  See, e.g., Brookfield Communications, 174 F.3d at 1047 n. 8 (noting that Lanham Act section prohibiting false designation of origin protects both registered and unregistered trademarks and wider range of practices, such as false advertising and product disparagement); Vallavista Corp. v. Amazon.com, Inc., 657 F. Supp. 2d 1132, 1136 (N.D. Cal. 2008) ("To successfully maintain an action for trademark infringement, false designation of origin, and unfair competition under the Lanham Act or California law, plaintiff must show that it has a valid trademark and that defendant's use of the mark is likely to cause confusion").  Here, for the reasons set forth above with respect to the First and Second Causes of Action, the Court finds plaintiffs' have pleaded sufficient facts to support their Third Claim for Relief.

Accordingly, defendants' motion to dismiss Plaintiffs' Third Claim for Relief will be denied.

**D.  Unfair Competition Under Cal. Bus. & Prof. Code § 17200 (Fourth Claim for Relief)**

In their Fourth Claim for Relief, plaintiffs allege that defendants' "actions alleged herein constitute unfair competition within the meaning of California Business and Professions Code § 17200," California's Unfair Competition Law ("UCL").  (FAC ¶ 52.)  Defendants argue, inter alia, that plaintiffs lack standing to bring such claim "because they have not suffered injury in fact or lost money or property as a result of the alleged unfair competition."  (See Mot. at 20.)

An action under the UCL may be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  The FAC, however, does not allege that plaintiffs lost any money or property as a result of defendants' alleged unfair competition.  (See FAC ¶ 53 (alleging only that Plaintiffs "are entitled to preliminary and injunctive relief . . . as well as disgorgement").)

---

[8]Defendants' motion addresses the elements necessary to plead a cause of action for false advertising under the Lanham Act.  (See Mot. at 10-11.)  Plaintiffs Third Claim for Relief, however, does not allege a Lanham Act claim for false advertising.  (See FAC ¶ 47.)

9

Plaintiffs' argument that trademark infringement and interference with customer relationships is sufficient to confer standing under the UCL is not supported by the cases to which they cite.  First, plaintiffs' reliance on <u>Rondberg v. McCoy</u>, 2009 WL 5184053 (S.D. Cal. Dec. 21, 2009), is misplaced because the plaintiffs therein alleged the defendant was "absconding and diverting funds for his personal benefit," and further alleged a "90% loss of subscribers" from their website due to defendant's actions, from which allegations the district court appears to have inferred a loss of money or property.  <u>See</u> <u>id</u>. at *2, *6.  Plaintiffs' citation to <u>Solid Host, NL v. Namecheap, Inc.</u>, 652 F. Supp. 2d 1092, 1120-21 (C.D. Cal. 2009), likewise is unavailing, as the defendant therein did not challenge the plaintiff's standing on the basis of any failure to allege loss of money or property.  <u>See</u> <u>Solid Host</u>, 652 F. Supp. 2d at 1120-21 (quoting and rejecting UCL defendant's argument that plaintiff's claim was "'not adequately brought on behalf of the general public because it [was] unique and necessarily dependent upon the individual facts of plaintiff's own claim'").

Accordingly, defendants' motion to dismiss plaintiffs' Fourth Claim for Relief will be granted, and plaintiffs will be afforded an opportunity to amend the above-noted deficiencies therein.

**E.     False Advertising Under Cal. Bus. & Prof. Code § 17500 (Fifth Claim for Relief)**

In their Fifth Claim for Relief, plaintiffs allege that defendants' "use of the term Visualize-IT, and their claim to be the 'developer' thereof, comprise false advertising under California Business and Professions Code § 17500 <u>et seq</u>."  (FAC ¶ 55.)  Plaintiffs further allege that defendants' "false advertising is likely to cause confusion, mistake and deception among customers" and that defendants' "false descriptions and designations of origin have caused and will continue to cause damage to Plaintiffs."  (FAC ¶ 57.)  Defendants again argue that plaintiffs lack standing.

The standing requirement for a claim under § 17500 is identical to that for § 17200. <u>See</u> Cal. Bus. & Prof. Code § 17535 (providing "[a]ctions . . . under this section may be prosecuted by . . . any person who has suffered injury in fact and has lost money or property"); <u>Californians For Disability Rights v. Mervyn's, LLC</u>, 39 Cal. 4th 223, 228 (2006)

(noting changes to § 17204; further noting "Proposition 64 . . . makes identical changes to the false advertising law (§ 17500 et seq.) concerning standing to sue"). As discussed above, the FAC contains no factual allegation stating, or from which it reasonably can be inferred, that plaintiffs have "lost money or property" as a result of defendants' conduct. Plaintiffs' conclusory allegation that defendants' "false descriptions and designations of origin have caused and will continue to cause damage to Plaintiffs" (FAC ¶ 57) is insufficient. See Iqbal, 129 S. Ct. at 1950 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Accordingly, defendants' motion to dismiss plaintiffs' Fifth Claim for Relief will be granted, and plaintiffs will be afforded an opportunity to amend to cure the above-noted deficiencies therein.

**F.    Trade Libel and Product Disparagement (Sixth Claim for Relief)**

In their Sixth Claim for Relief, plaintiffs allege that defendants "have published, or caused to be published, false and disparaging statements regarding Plaintiffs' products, services and business practices." (FAC ¶ 59.) In particular, plaintiffs allege, defendants' "false statements that [Koperwhats] developed the Visualize-IT product and, on information and belief, that Plaintiffs are infringing Defendants' copyright(s) tend to injure Plaintiffs directly in their business, profession and trade" (FAC ¶ 59), and that defendants' "false and disparaging statements concerning Plaintiffs and their products could result in a material decline in Plaintiffs' business and damage Plaintiffs' reputation" (FAC ¶ 60). Defendants argue that plaintiffs have failed to plead the elements of their Sixth Claim for Relief because plaintiffs have "failed to allege any statements by Koperwhats that relate to the quality of Plaintiffs' products," and that plaintiffs "have not alleged facts suggesting that third parties will not deal with Plaintiffs because of Koperwhats' statements, or that [plaintiffs have] incurred special damages." (See Mot. at 22.)

Trade libel is defined as "an intentional disparagement of the quality of property, which results in pecuniary damage." Erlich v. Etner, 224 Cal. App. 2d 69, 73 (1964). A cause of action for trade libel requires: "(1) a publication; (2) which induces others not to

1 deal with plaintiff; and (3) special damages." See Nichols v. Great American Ins.
2 Companies, 169 Cal. App. 3d 766, 773 (1985). "[T]rade libel must be distinguished from
3 [defamation] . . . . The basic difference between the two torts . . . is that an action for
4 defamation is designed to protect the reputation of the plaintiff, and the judgment vindicates
5 that reputation, whereas the action for disparagement is based on pecuniary damage and
6 lies only where such damage has been suffered." Leonardini v. Shell Oil Co., 216 Cal.
7 App. 3d 547, 573 (1989).

8 Here, the FAC contains no factual allegations that third parties will not deal with
9 plaintiffs as a result of defendants' statements; rather, plaintiffs allege, defendants'
10 statements "could result" in a loss of business and damage to plaintiffs' reputation. (See
11 FAC ¶ 60.) Such allegation is speculative and insufficient to survive a motion to dismiss.
12 See Twombly, 550 U.S. at 555 (noting "[f]actual allegations must be enough to raise a right
13 to relief above the speculative level"). Similarly, plaintiffs fail to allege facts sufficient to
14 plead they have suffered special damages. See Erlich, 224 Cal. App. 2d at 73-74 (noting,
15 "it is not enough to show a general decline in [plaintiff's] business resulting from the
16 falsehood"; further noting, "in the usual case . . . the plaintiff must identify the particular
17 purchasers who have refrained from dealing with him, and specify the transactions of which
18 he claims to have been deprived") (internal quotation and citation omitted). The FAC does
19 not identify "particular purchasers" who will not deal with plaintiffs, or the "transactions of
20 which [plaintiffs] claim[] to have been deprived" (see id.), but, rather, contains only a
21 conclusory allegation that, as a result of defendants' actions, plaintiffs "have suffered
22 damages in the form of, among other things, lost revenue and damage to their business
23 position and reputation." (FAC ¶ 61.)

24 Accordingly, defendants' motion to dismiss plaintiffs' Sixth Claim for Relief will be
25 granted, and plaintiffs will be afforded an opportunity to amend to cure the above-noted
26 deficiencies therein.

27 //
28 //

**G.     Intentional Interference with Prospective Business Advantage (Seventh Claim for Relief)**

In their Seventh Claim for Relief, plaintiffs allege a claim for intentional interference with prospective business advantage.  "The elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant."  Blank v. Kirwan, 39 Cal. 3d 311, 330 (1985).  Plaintiffs allege that defendants have "wrongfully and intentionally interfered with Plaintiffs' relationships with the clients they have served for many years" by "among other things, threatening and coercing Plaintiffs' clients with the purpose and intent of diverting the benefits and profits of such relationships away from Plaintiffs to Defendants."  (See FAC ¶ 65.)  The factual basis for the above-referenced cause of action is a January 15, 2010 letter sent by Kopperwhats' counsel to one of KEMA's clients, CMS Energy.[9]  (See FAC ¶¶ 34-35, 65.)

As defendants argue, plaintiffs' allegations are insufficient.  The FAC contains only conclusory allegations that defendants have "interfered" with plaintiffs' economic relationships with clients who include but are not limited to CMS Energy (see FAC ¶ 65), which allegations are insufficient under Rule 8 to allow for a meaningful response.  See Iqbal, 129 S. Ct. at 1950 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Defendants further contend plaintiffs have not and "cannot allege facts of unprivileged communications by Koperwhats," and consequently "[l]eave to amend would be futile."  (Mot. at 24.)  The Court previously rejected defendants' futility argument.  (See

---

[9] Plaintiffs also identify, as clients with whom defendants interfered, Old Dominion Electric Cooperative ("ODEC"), Puget Sound Energy, and New York Power Authority (see FAC ¶ 65), but make no allegation as to the specific acts of interference therewith other than an ambiguous suggestion that ODEC may have received the same letter as that sent to CMS Energy (see FAC ¶ 36).

13

1 Order filed March 30, 2010 at 6.) Defendants now argue that "letters"[10] to plaintiffs' clients
2 "clearly refer to this litigation and inform the recipients of Koperwhats' concern that the
3 recipient may be committing copyright infringement, subjecting them to litigation." (See
4 Mot. at 23:17-19.) Defendants' argument is unavailing; two of the letters on which it is
5 based post-date the filing of the FAC and the third, a letter dated January 15, 2010,
6 includes no such dispositive reference. (See Mot. Ex. 1; FAC ¶¶ 34-35.) Consequently,
7 based on the record to date, defendants have failed to demonstrate leave to amend would
8 be futile by reason of the litigation privilege.

9 Accordingly, defendants' motion to dismiss the Seventh Claim for Relief will be
10 granted, and plaintiffs will be afforded an opportunity to amend to cure the above-noted
11 deficiencies therein.

**H.     Breach of Contract (Eighth Claim for Relief)**

In their Eighth Claim for Relief, plaintiffs allege that Kopperwhats breached his obligations under the parties' Settlement Agreement by "using the Visualize-IT mark to promote, market or sell software products or services in direct competition with" plaintiffs' products, and by "suggesting that Plaintiffs . . . endorsed or were affiliated with" defendants' products. (See FAC ¶ 69.) Defendants argue that the FAC fails to allege plaintiffs have performed their duties under the Settlement Agreement, a required element of plaintiffs' breach of contract claim. See Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008) ("The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.") Plaintiffs have not responded to defendants' argument, and the Court's review of the FAC confirms that plaintiffs fail to allege performance of their contractual duties or excuse for nonperformance.

Accordingly, defendants' motion to dismiss the Eighth Claim for Relief will be

---

[10] Defendants attach to their motion documents purporting to be letters from defendants' counsel to CMS Energy and WE Energies. The letters are not authenticated, nor did defendants file a request for judicial notice.

14

granted, and plaintiffs will be afforded leave to amend to cure the above-noted deficiencies therein.

**I.     Declaratory Relief (Ninth and Tenth Claims for Relief)**

In their Ninth and Tenth Claims for Relief, plaintiffs plead, respectively, a claim for "Declaratory Relief Under Contract" and a claim for "Declaratory Relief Concerning Copyright Rights and Infringement."  (See FAC ¶¶ 71-76.)  Other than asserting that "[a]ll of Plaintiff's claims should be dismissed" (Mot. at 4), defendants provide no argument as to plaintiffs' causes of action for declaratory relief.

Accordingly, defendants' motion to dismiss the Ninth and Tenth Claims for Relief will be denied.

**CONCLUSION**

For the reasons stated above:

1.     Defendants' motion to dismiss is hereby GRANTED in part, and DENIED in part as follows:

a.     With respect to plaintiffs' First (Trademark Infringement), Second (Unfair Competition under the Lanham Act § 43), Third (False Designation of Origin), Ninth (Declaratory Relief Under Contract), and Tenth (Declaratory Relief Concerning Copyright Rights and Infringement) Claims for Relief, the motion is hereby DENIED.

b.     With respect to plaintiffs' Fourth (Unfair Competition under Cal. Bus. & Prof. Code § 17200), Fifth (False Advertising under Cal. Bus. & Prof. Code § 17500), Sixth (Trade Libel), Seventh (Intentional Interference With Prospective Business Advantage), and Eighth (Breach of Contract) Claims for Relief, the motion is hereby GRANTED, and such claims are hereby DISMISSED with leave to amend to cure the above-noted deficiencies.

//
//
//
//

2. Plaintiffs' Second Amended Complaint, if any, shall be filed no later than October 1, 2010.

**IT IS SO ORDERED.**

Dated: September 1, 2010

*Maxine M. Chesney*
MAXINE M. CHESNEY
United States District Judge